IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

---

RANDEL EDWARD PAGE, JR.,

    Appellant,

v.                                                                 No. 1:26-cv-01037-JDB-jay

APPERSON CRUMP, PLC, and
UNITED STATES TRUSTEE, REGION 8,

    Appellees.

---

ORDER DENYING APPELLANT'S OBJECTION AND APPEAL (D.E. 21), MOTION FOR
RECUSAL (D.E. 14), MOTION TO DISQUALIFY COUNSEL (D.E. 15), AND MOTION TO
STAY BRIEFING SCHEDULE (D.E. 19)

---

This matter is before the Court on an appeal from the United States Bankruptcy Court for the Western District of Tennessee, pursuant to 28 U.S.C. § 158, filed on February 25, 2026. (*See* Docket Entry ("D.E.") 1.) By order dated March 4, 2026, the undersigned referred the case to Magistrate Judge Jon A. York for all matters, including report and recommendation. (D.E. 4.) Since the order of reference, Appellant, Randel Edward Page, Jr., has submitted several filings, including his motion to stay appellate proceedings pending the bankruptcy court's resolution of Federal Rule of Bankruptcy Procedure 9024/Rule 60(b) motion for relief from dismissal, (D.E. 6), and one to stay the briefing schedule pending ruling on motion for mandatory withdrawal of reference and motion for extension of briefing schedule. (D.E. 9.) On March 9, 2026, Judge York granted Page's requested extension of time to file a brief in these two docket entries, but declined to rule on any of the other requested relief. (D.E. 16.)[1] The next day, Page submitted an objection

---

[1] Thereafter, Appellee, United States Trustee, Region 8 ("U.S. Trustee"), likewise moved

to Judge York's order and an appeal to the undersigned.  (D.E. 21.)  The Court now considers the objection and appeal (*id.*), along with the related motions for recusal (D.E. 14), to disqualify counsel (D.E. 15), and to stay the briefing schedule pending ruling on threshold recusal and disqualification motions.  (D.E. 19.)[2]  For the reasons articulated herein, the objection and appeal along with the three related motions are all DENIED.

    I.      OBJECTION AND APPEAL (D.E. 21)

        A.      Standard of Review

Because Page has appealed an order of a magistrate judge determining a non-dispositive, pretrial matter, the presiding district judge's review is limited to whether the order is "clearly erroneous" or "contrary to law."  Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A); L.R. 72.1(g)(1).

        B.      Analysis

In his objection, Appellant contests Judge York's order granting Page's requested extension of time to file a brief.  (*See* D.E. 21.)  Appellant challenges not the order's substance— which secured his desired extension—but rather, Judge York's authority to enter the order in the first place.  (*Id.* at PageID 432-33.)  Page offers four grounds for his proposition that Judge York lacked authority, each of which the Court addresses below.

        1.      Ground One

Appellant initially complains that Judge York failed to rule on other pending motions when he entered the scheduling order.  (*Id.* at PageID 434-35.)  Specifically, he claims that Judge York

---

for an extension of time to file a brief, (D.E. 17), which Judge York granted.  (D.E. 18.)

   [2] On March 12, 2026, the U.S. Trustee filed a consolidated response to Page's filings between March 4 and 9, including opposition to the motions for recusal and disqualification of counsel.  (*See* D.E. 20 at PageID 414-15.)  In this ruling, the Court does not decide all motions addressed in the U.S. Trustee's response, but is limited to the appeal and three motions named above.

2

lacked authority to enter the order while the motion for recusal, questioning his ability to preside over the case, was pending.  (*Id.*)

Under 28 U.S.C. § 144,[3]

> [w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The Sixth Circuit has clarified that under § 144, "[a] legally sufficient affidavit must meet the following requirements: (1) the facts must be material and stated with particularity; (2) the facts must be such that if true they would convince a reasonable man that a bias exists; and (3) the facts must show the bias is personal, as opposed to judicial, in nature."  *Henderson v. Dep't of Pub. Safety and Corrs.*, 901 F.2d 1288, 1296 (6th Cir. 1990) (citing *Parrish v. Bd. of Comm'rs of Ala. State Bar*, 524 F.2d 98, 100 (5th Cir. 1975)).

Before reaching the merits of Appellant's recusal argument, the Court notes that he has failed to submit a notarized affidavit in support of his contention,[4] which by itself "violat[es] a well-established criterion for the legal sufficiency of an affidavit."  *LeVay v. Morken*, 590 F. Supp. 3d 1037, 1042 (E.D. Mich. 2022) (citing *Granada v. United States*, 51 F.3d 82, 84 (7th Cir. 1995) (stating that an affidavit must be "notarized" before "a person having authority to administer such

---

[3] As an initial matter, Appellant based his motion for recusal on 28 U.S.C. § 455, (*see* D.E. 14), which provides that "[a]ny . . . judge[] or magistrate judge . . . shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  28 U.S.C. § 455(a). However, § 144 permits a party to call for the presiding judge's recusal, so it is the proper basis for Appellant's motion for recusal and objection and appeal.  *See United States v. Story*, 716 F.2d 1088, 1091 (6th Cir. 1983) ("The difference between sections 144 and 455 is that section 455 is self-executing, requiring the judge to disqualify himself for personal bias even in the absence of a party complaint.")  Thus, the Court construes Page's challenges under § 144.

[4] Page later filed an affidavit, but it does not discuss recusal; it instead concerns allegations of fraud and disclosure of his use of artificial intelligence ("AI") in his filings.  (*See* D.E. 26.)

oath or affirmation" (citing Black's Law Dictionary 58 (6th ed. 1990)))).[5]  Even if Page could

satisfy the notarization requirement, the merits of his motion and objection do not clear § 144's

hurdle for legal sufficiency, which will be analyzed in the next subsection.  *See infra* Section I.B.2.

"Because the affidavit was legally insufficient under § 144, there was no need for referral

of the matter to another judge." *Henderson*, 901 F.2d at 1296.  In other words, Appellant's motion

and objection failed to comply with § 144, so Judge York had no duty under the statute to halt the

proceedings while the insufficient motion was pending.  Thus, Judge York was permitted to issue

the scheduling order that granted Page's extension.

2.      Ground Two

In his second basis, Appellant maintains that an organizational conflict necessitates Judge

York's recusal and that the magistrate judge's conduct in one instance proves that conflict.  (D.E.

21 at PageID 435.)  First, he points to the fact that Judge York, the magistrate judge presiding over

his case; Carrie Ann Rohrscheib, counsel for the U.S. Trustee opposite Page in this matter; and

Wendy Oliver, the Clerk of Court whose office entered the scheduling orders in dispute (*see* D.E.

3; D.E. 5), are all officers in the Federal Bar Association Memphis Mid-South Chapter.  (D.E. 21

at PageID 435; D.E. 14 at PageID 371.)  Judge York is the Chapter Judicial Representative,

Rohrscheib is the Chapter President-Elect, and Oliver is the Federal Court Liaison.  (D.E. 21 at

PageID 435; D.E. 14 at PageID 371.)  Page claims that "[t]his is not a casual acquaintance among

bar members. . . .  The three officers . . . form a closed organizational triangle in which every

administrative and judicial act challenged in this proceeding touches at least one vertex."  (D.E.

21 at PageID 435.)[6]  This issue was confirmed, Page says, when Rohrscheib sent him a proposed

---

[5] Page's pro se status does not excuse his failure to file an affidavit.  *See LeVay*, F. Supp.
3d at 1042 (denying a pro se plaintiff's motion to recuse because his affidavit was not notarized).
    [6] This alleged conflict of interest forms part of the basis for Appellant's motion to

scheduling order—apparently pre-signed by Judge York—on the same day the order of reference (D.E. 5) was entered by the undersigned. (D.E. 21 at PageID 435-36.) Appellant alleges that because he received the pre-signed order from Rohrscheib before he learned of the referral and before the referral was reflected in the case caption, "its existence as a pre-signed document transmitted by Rohrscheib on the day of the referral is physical evidence of a coordination between York's chambers and Rohrscheib's office." (D.E. 14 at PageID 373.) Although the magistrate judge did not sign the order, he characterized it as a "consent entrapment mechanism." (*Id.* at PageID 373-74 (emphasis omitted).)

Page insists that the organizational conflict paired with the pre-signed order justifies Judge York's recusal, and he concludes that a reasonable person would question Judge York's impartiality in these circumstances. (D.E. 21 at PageID 436; D.E. 14 at PageID 373.) The Court disagrees. Page correctly states the standard: A judge's recusal requires a party to "allege 'facts which a reasonable person would believe would indicate a judge has a personal bias' against the party." *Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 F. App'x 826, 838 (6th Cir. 2009) (quoting *Ullmo ex rel. Ullmo v. Gilmour Acad.*, 273 F.3d 671, 681 (6th Cir. 2001)). However, the Court finds that these facts would not lead a reasonable person to believe Judge York has personal bias against Appellant.

Serving as a bar association officer with the Clerk of Court and counsel in this case is plainly not a conflict of interest. Participation in a bar association neither creates a conflict of interest nor requires recusal. *See Gentry v. Tenn. Bd. of Jud. Conduct*, No. 3:17-0020, 2017 WL 6521333, at *2 (M.D. Tenn. Sept. 18, 2017); *Lawrence v. Chabot*, 182 F. App'x 442, 449 (6th Cir.

_____

disqualify Rohrscheib as counsel. (*See* D.E. 15 at PageID 394-95.) The Court assesses this motion below. *See infra* Section III.

2006); *Moran v. Clarke*, 213 F. Supp. 2d 1067, 1073 (E.D. Mo. 2002) ("A judge's involvement with other attorneys in bar association activities is not a basis for recusal."). In fact, the commentary to Canon 4 of the Code of Conduct for United States Judges (2019) "encourage[s]" judges "to contribute to the law, the legal system, and the administration of justice," "either independently or through a bar association, judicial conference, or other organization dedicated to the law." *See Moran*, 213 F. Supp. 2d at 1073. Thus, Judge York's mere involvement as an officer with Rohrscheib and Oliver does not implicate bias towards the U.S. Trustee or against Page.

His pre-signed order allegation also shows no bias. Rohrscheib clarifies that she, not Judge York, drafted the proposed order, so despite Appellant's contention, it was not pre-signed. (D.E. 20 at PageID 426.) She attests that she emailed Page asking him to join her motion for an extension to file briefs. (D.E. 20 at PageID 418 (citing D.E. 10 at PageID 333-34).) She accompanied her email with (1) a draft joint motion that left his signature blank and (2) a proposed order for the draft joint motion that bears Judge York's name in all capital letters. (*Id.* at PageID 418-19 (citing D.E. 10 at PageID 335-40).) The exhibit included in Page's own filing to the Court (D.E. 10 at PageID 339-40) reveals his misunderstanding: Judge York's name in all capital letters is not his signature—it is his signature block, where he would sign if he endorsed the parties' joint motion and proposed order.[7] Rohrscheib's failure to place a line above Judge York's signature block in her proposed order may have contributed to Page's confusion, but it is clear that this order was not drafted by Judge York or his chambers. As a result, it was not pre-signed and does not display any prejudice.

---

[7] As Rohrscheib indicated (*see* D.E. 20 at PageID 426), this practice is standard, demonstrated by a form order posted on the Court's website with the undersigned's signature block in all capital letters. *See* Rule 16(b) Scheduling Order, https://www.tnwd.uscourts.gov/sites/tnwd/files/BreenRule16bOrder.pdf (last visited March 18, 2026).

In sum, a judge "is presumed to be impartial," *PNC Equip. Fin. v. Mariani*, 758 F. App'x 384, 391 (6th Cir. 2018) (quoting *Scott v. Metro. Health Corp.*, 234 F. App'x 341, 352 (6th Cir. 2007)), and the Court "will not ascribe bias to a . . . judge in the absence of evidence that he has abandoned his role as an impartial arbiter." *Taylor*, 313 F. App'x at 838 (internal quotation marks omitted) (quoting *Lilley v. BTM Corp.*, 958 F.2d 746, 753 (6th Cir. 1992)).  Appellant has presented no evidence that Judge York has shown bias towards any party in this case.  Therefore, his second ground is baseless.

### 3.    Ground Three

Third, Appellant asserts that Judge York lacks authority to enter the order because the undersigned's order of reference (D.E. 4) was administrative, "not a deliberate judicial decision made after review of the appeal."  (D.E. 21 at PageID 436 (stating that "[t]he referral to [Judge] York preceded any Article III engagement with this appeal by anyone").)  This allegation is false, as the undersigned reviewed the notice of appeal after its entry on February 27, 2026, (D.E. 1), and then decided to refer the matter to Judge York with the order dated March 4, 2026.  (D.E. 4.) Page rightly cites to 28 U.S.C. § 636(b)(1), which provides the undersigned with discretion to designate any pretrial matter[8] to the assigned magistrate judge.  This power is precisely what the undersigned utilized when referring the case "for all matters, including report and recommendation."  (D.E. 4.)  When issuing the order granting Appellant's motion to extend the deadline (D.E. 16), Judge York acted within his authority conferred to him through the undersigned pursuant to § 636(b)(1) and Local Rules 72.1(b) and (f).  Because the undersigned referred the case to Judge York, and the magistrate judge appropriately ruled on a non-dispositive, pretrial

---

[8] This statute carves out eight exceptions to "any pretrial matter," *see* 28 U.S.C. § 636(b)(1)(A), but none are present here because Judge York's order granting the extension decided a "non-dispositive motion[]."  *See* L.R. 72.1(f).

motion, the Court declines Appellant's request to reissue the scheduling order bearing the undersigned's name.

### 4.     Ground Four

Fourth, Appellant contests Judge York's authority to enter the scheduling order because the clerk never notified the parties that a magistrate judge may exercise jurisdiction only upon their voluntary consent, in violation of Local Rule 72.1(c)(1) and 28 U.S.C. § 636(c)(2). (D.E. 21 at PageID 437.)   This rule and statute permit the magistrate judge to "conduct any or all proceedings . . . and order entry of judgment in the case," but only upon the consent of the parties. L.R. 72.1(c); 28 U.S.C. § 636(c)(1).  These two provisions do not govern this case for two reasons.

First, the undersigned's referral does not allow Judge York to "order entry of judgment in the case." L.R. 72.1(c); 28 U.S.C. § 636(c)(1).  That authority belongs to the undersigned, who referred to Judge York the power to decide all non-dispositive, pretrial matters in this proceeding. (D.E. 4); *see* L.R. 72.1(b); L.R. 72.1(f); 28 U.S.C. § 636(b)(1).  When Judge York has concluded his review of the merits of Page's appeal, he will issue a report and recommendation to the undersigned, who will adopt or reject it, as well as rule on any objections that the parties may have, and then enter judgment.  Until then, Judge York's authority to rule on non-dispositive, pretrial motions, like the scheduling order at issue (D.E. 16), is grounded in § 636(b) and Local Rules 72.1(b) and (f).

Second, Local Rule 72.1(c) and § 636(c) only apply when the parties consent to the magistrate judge's jurisdiction over the entire case, and it is well documented in this appeal that Page did not consent. (*See* D.E. 21.)  However, Appellant need not consent for a district judge to refer pretrial matters to the magistrate judge.  As established above, the order granting Appellant's extension of time (D.E. 16) was a non-dispositive, pretrial matter within Judge York's jurisdiction

8

granted by the undersigned pursuant to § 636(b) and Local Rules 72.1(b) and (f). *See supra* Section I.B.3.

In addition, Local Rule 72.1(h) provides that "[n]othing in [Local Rule 72.1] shall be construed to limit or affect the right of any judge or judges of the court to assign judicial duties or responsibilities to a United States Magistrate Judge with or without the consent of the parties." Therefore, the Court finds no issue with the fact that Appellant did not consent to Judge York's authority to enter the scheduling order.

In conclusion, Page has stated no valid ground to support his objection and appeal of Judge York's authority to enter the order granting his extension of time. As a result, his objection and appeal (D.E. 21) is DENIED.

II.      MOTION FOR RECUSAL (D.E. 14)

Under the analysis above, Page's motion for recusal (D.E. 14) is DENIED, due to the motion's legal insufficiency under 28 U.S.C. § 144 and his failure to offer evidence of Judge York's bias. *See supra* Section I.B.1.; Section I.B.2.

III.     MOTION TO DISQUALIFY (D.E. 15)

"A motion to disqualify counsel may be a legitimate tool to protect the integrity of judicial proceedings. Because the 'ability to deny one's opponent the services of capable counsel is a potent weapon,' however, courts must be vigilant in reviewing disqualification motions." *MJK Fam. LLC v. Corp. Eagle Mgmt. Servs., Inc.*, 676 F. Supp. 2d 584, 592 (E.D. Mich. 2009) (quoting *Manning v. Waring, Cox, James, Sklar & Allen*, 849 F.2d 222, 224 (6th Cir. 1988)). As a result, "[m]otions to disqualify are viewed with disfavor and disqualification is considered a drastic measure which courts should hesitate to impose except when absolutely necessary." *Wyndham Vacation Ownership, Inc. v. Vacation Transfers Unlimited, LLC*, No. 3:18-cv-01399, 2019 WL

9

13131176, at *3 (M.D. Tenn. Oct. 21, 2019) (internal quotation marks and citations omitted).

When considering motions to disqualify, the Sixth Circuit employs a three-part test: "the movant must show (1) a past attorney-client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; (2) the subject matter of those relationships was substantially related; and (3) the attorney acquired confidential information from the parties seeking disqualification." *Budrow v. State Farm Fire and Cas. Co.*, No. 12-cv-2635-TMP, 2014 WL 12754936, at *2 (W.D. Tenn. Mar. 19, 2014) (citing *Dana Corp. v. Blue Cross & Blue Shield*, 900 F.2d 882, 889 (6th Cir. 1990)).

Appellant does not assert that he has ever had an attorney-client relationship with Rohrscheib, so his motion fails on the test's first part. *See id.*; (D.E. 15.) As termed in Rohrscheib's response, Page "lacks standing" for his motion because he has no relationship with opposing counsel. (D.E. 20 at PageID 429 (citing *Home Fed. Bank of Tenn. v. Home Fed. Bank Corp.*, No. 3:18-CV-379-JRG-DCP, 2020 WL 6038054, at *15 (E.D. Tenn. Mar. 19, 2020), *report and recommendation adopted*, 2020 WL 3568316 (E.D. Tenn. July 1, 2020)).)

The outcome would be the same if the analysis proceeded under the Tennessee Rules of Professional Conduct. *See* 6th Cir. R. 46(b) (subjecting attorneys "to the rules of professional conduct . . . of the state where the attorney's principal office is located"); *Bowers v. Ophthalmology Grp.*, 733 F.3d 647, 651 (6th Cir. 2013) ("Our decisions have not made clear how the *Dana* [three-part] analysis operates in conjunction with [6th Cir. R. 46(b)]. . . . Regardless, the effect of using the [Tennessee] Rules of Professional Conduct in place of or in conjunction with our *Dana* analysis is minimal at best because the relevant [Tennessee] Rule is essentially the same.") Tennessee Rule of Professional Conduct 1.7(a)(2) prohibits a lawyer from representing a client if the representation involves "a concurrent conflict of interest," defined as "a significant risk that the representation of

one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." Because Appellant has presented no evidence of a concurrent conflict of interest, Rule 1.7 cannot justify Rohrscheib's disqualification. *See Home Fed.*, 2020 WL 6038054, at *15 (applying the *Bowers* analysis to Tennessee Rule of Professional Conduct 1.7 and holding that the defendant lacked standing for its motion to disqualify opposing counsel under Rule 1.7). For these reasons, Page's motion to disqualify Rohrscheib as opposing counsel (D.E. 15) is DENIED.

> IV.   MOTION TO STAY (D.E. 19)

As the Court has denied Appellant's motions for recusal (D.E. 15) and to disqualify Rohrscheib (D.E. 15), his motion to stay the briefing schedule pending ruling on the recusal and disqualification motions (D.E. 19) is DENIED AS MOOT.

> V.   CONCLUSION

In summary, Appellant's objection and appeal (D.E. 21), his motions for recusal (D.E. 14), to disqualify counsel (D.E. 15), and to stay the briefing schedule pending ruling on threshold recusal and disqualification motions (D.E. 19) are DENIED.

Lastly, Appellee's response raises its discovery that Page relied on three nonexistent, erroneous or misrepresentative case citations in his motion for summary reversal. (D.E. 20 at PageID 423 (citing D.E. 11 at PageID 345-46).) The Court's research confirms Appellee's report about these citations. In his affidavit, Page addresses these "citation errors," after admitting that he used "an artificial intelligence tool" to draft "a substantial portion of the legal documents" filed in this appeal. (D.E. 26 at PageID 517.) He states, "I disclose the AI assistance not to excuse the citation errors but to be transparent with this Court about how they occurred and to ensure the record reflects the truth. Every factual assertion in every document I have filed is true to the best

11

of my knowledge." (*Id.*)  The Court warns Appellant that it may impose sanctions if he continues to submit nonexistent or misrepresentative citations.  *See* Fed. R. Civ. P. 11(b)(2) ("By presenting to the court a pleading, written motion, or other paper . . . an attorney *or unrepresented party* certifies . . . the claims, defenses, and other legal contentions are warranted by existing law . . . ." (emphasis added)); *Davis v. Marion Cnty. Superior Ct. Juv. Det. Ctr.*, No. 1:24-cv-01918-JRS-MJD, 2025 WL 2502308, at *3 (S.D. Ind. Sept. 2, 2025) ("Courts have consistently held for decades that failing to check the treatment and soundness—let alone the existence—of a cited case warrants sanctions." (collecting cases)); *Safe Choice, LLC v. City of Cleveland*, No. 1:24-cv-02033-PAB, 2025 WL 3029553, at *2 (N.D. Ohio Oct. 30, 2025) ("[C]itation to non-existent authority violates Rule 11 regardless of intent." (citations omitted)).

IT IS SO ORDERED this 30th day of March 2026.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

12