No. 1:26-cv-01037-JDB-jay

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TENNESSEE

In re APPERSON CRUMP, PLC,
Debtor.

RANDEL EDWARD PAGE, JR.,
Appellant,

v.

APPERSON CRUMP, PLC and
PAUL A. RANDOLPH, ACTING UNITED STATES TRUSTEE,
Appellees.

On Appeal from the United States Bankruptcy Court
for the Western District of Tennessee

## APPENDIX OF APPELLEE PAUL A. RANDOLPH, ACTING UNITED STATES TRUSTEE

LISA A. TRACY
Deputy General Counsel
BETH A. LEVENE
Associate General Counsel
FREDERICK GASTON HALL
Trial Attorney

Department of Justice
Executive Office for
United States Trustees
441 G Street, N.W., Suite 6150
Washington, D.C. 20530
Tel.: (202) 307-1399
Email: frederick.g.hall@usdoj.gov

PAUL A. RANDOLPH
Acting United States Trustee, Region 8
TIM NIARHOS
Acting Assistant United States Trustee
CARRIE ANN ROHRSCHEIB
Trial Attorney

Department of Justice
Office of the U.S. Trustee, Region 8
200 Jefferson Ave., Suite 400
Memphis, TN 38103
Tel.: (901) 544-3303
Email: carrie.a.rohrscheib@usdoj.gov

## TABLE OF CONTENTS

**DOCKET NO. 1** CHAPTER 11 VOLUNTARY PETITION, SCHEDULES AND STATEMENTS……………………………………………….………………1

**DOCKET NO. 47** MOTION FOR RELIEF FROM STAY AND ABANDONMENT…………………………………………………………..54

**DOCKET NO. 53** UNITED STATES TRUSTEE'S MOTION TO DISMISS OR CONVERT CASE PURSUANT TO 11 U.S.C. § 1112(b)………………….....126

**DOCKET NO. 55** NOTICE OF HEARING………………………….………...131

**DOCKET NO. 60** FINAL ORDER AUTHORIZING THE USE OF CASH COLLATERAL……………………………………………,,,,……………….…..132

**DOCKET NO. 65** ORDER GRANTING RELIEF AND ABANDONMENT....134

**DOCKET NO. 66** CERTIFICATE OF COMPLIANCE.….………………....136

**DOCKET NO. 68** RANDEL EDWARD PAGE, JR.'S RESPONSE…………..137

**DOCKET NO. 69** ORDER GRANTING MOTION AND DISMISSING CASE……………………………………………..………………………....142

**DOCKET NO. 73** NOTICE OF APPEAL……………...……….…………145

| Fill in this information to identify the case: | |
| --- | --- |

United States Bankruptcy Court for the:

WESTERN DISTRICT OF TENNESSEE

Case number *(if known)* _____  Chapter **11**

☐ Check if this is an
   amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy
**04/25**

**If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.**

| 1. | **Debtor's name** | *Apperson Crump PLC* |
| --- | --- | --- |
| 2. | **All other names debtor used in the last 8 years**<br><br>Include any assumed names, trade names and *doing business as* names | |
| 3. | **Debtor's federal Employer Identification Number** (EIN) | *62-0292839* |

4. **Debtor's address**

| Principal place of business | Mailing address, if different from principal place of business |
| --- | --- |
| *6000 Poplar Ave*<br>*Suite 150*<br>*Memphis, TN 38119*<br>Number, Street, City, State & ZIP Code | P.O. Box, Number, Street, City, State & ZIP Code |
| *Shelby*<br>County | **Location of principal assets, if different from principal place of business** |
| | Number, Street, City, State & ZIP Code |

5. **Debtor's website** (URL)   *www.appersoncrump.com*

6. **Type of debtor**

■ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))

☐ Partnership (excluding LLP)

☐ Other. Specify: _____

UST APX 0001

Debtor **Apperson Crump PLC**

Name

Case number (*if known*) _____

**7. Describe debtor's business**

A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☒ None of the above

B. *Check all that apply*

☐ Tax-exempt entity (as described in 26 U.S.C. §501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. §80a-3)

☐ Investment advisor (as defined in 15 U.S.C. §80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes.

_____5411_____

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

*Check one:*

☐ Chapter 7

☐ Chapter 9

☒ Chapter 11. *Check **all** that apply*:

☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,424,000 (amount subject to adjustment on 4/01/28 and every 3 years after that).

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). If the debtor is a small business debtor, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if all of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and it chooses to proceed under Subchapter V of Chapter 11.

☐ A plan is being filed with this petition.

☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☒ No.

☐ Yes.

| District | | When | | Case number | |
|---|---|---|---|---|---|
| District | | When | | Case number | |

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

☒ No

☐ Yes.

Official Form 201        Voluntary Petition for Non-Individuals Filing for Bankruptcy

UST APX 0002

page 2

Debtor    *Apperson Crump PLC*          Case number (*if known*) _____
          Name

List all cases. If more than 1,
attach a separate list

|  | Debtor | | Relationship | |
|---|---|---|---|---|
|  | District | When | Case number, if known | |

---

**11. Why is the case filed in this district?**    *Check all that apply:*

■ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

---

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

■ No

☐ Yes.    Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.
   What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?** _____
                          Number, Street, City, State & ZIP Code

**Is the property insured?**

☐ No

☐ Yes.    Insurance agency  _____
          Contact name      _____
          Phone             _____

---

■ **Statistical and administrative information**

**13. Debtor's estimation of available funds**    .    *Check one:*

■ Funds will be available for distribution to unsecured creditors.

☐ After any administrative expenses are paid, no funds will be available to unsecured creditors.

---

**14. Estimated number of creditors**

| | | |
|---|---|---|
| ☐ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ■ 50-99 | ☐ 5001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than100,000 |
| ☐ 200-999 | | |

---

**15. Estimated Assets**

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ■ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50 million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

---

**16. Estimated liabilities**

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ■ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50 million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

---

UST APX 0003

| Debtor | **Apperson Crump PLC** | Case number (*if known*) | |
|---|---|---|---|
| | Name | | |

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    **December  1, 2025**
MM / DD / YYYY

X **/s/ Jon Smith**
Signature of authorized representative of debtor

**Jon Smith**
Printed name

Title    **Managing partner**

**18. Signature of attorney**

X **/s/ C. Jerome Teel Jr.**
Signature of attorney for debtor

Date **December  1, 2025**
MM / DD / YYYY

**C. Jerome Teel Jr. 016310**
Printed name

**Teel & Gay, PLC**
Firm name

**79 Stonebridge Blvd.**
**Suite B**
**Jackson, TN 38305**
Number, Street, City, State & ZIP Code

Contact phone    **(731)424-3315**    Email address    **jerome@tennesseefirm.com**

**016310 TN**
Bar number and State

| Official Form 201 | **Voluntary Petition for Non-Individuals Filing for Bankruptcy** | <span style="color:red">UST APX 0004</span> page 4 |
|---|---|---|

**Fill in this information to identify the case:**

Debtor name    *Apperson Crump PLC*

United States Bankruptcy Court for the:    WESTERN DISTRICT OF TENNESSEE

Case number (if known)    _____

☐ Check if this is an amended filing

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors    **12/15**

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date.  Bankruptcy Rules 1008 and 9011.

**WARNING -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.**

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

■    *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)

■    *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)

■    *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

■    *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)

■    *Schedule H: Codebtors* (Official Form 206H)

■    *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)

☐    Amended *Schedule* _____

■    *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)

☐    Other document that requires a declaration _____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    *December  1, 2025*        X */s/ Jon Smith*
                                          Signature of individual signing on behalf of debtor

                                          *Jon Smith*
                                          Printed name

                                          *Managing partner*
                                          Position or relationship to debtor

Official Form 202                **Declaration Under Penalty of Perjury for Non-Individual Debtors**

<span style="color:red">UST APX 0005</span>

Fill in this information to identify the case:

Debtor name **Apperson Crump PLC**

United States Bankruptcy Court for the: **WESTERN DISTRICT OF TENNESSEE**

Case number (if known): _____

☐ Check if this is an amended filing

# Official Form 204

## Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders

**12/15**

A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31).  Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim  If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | **Total claim, if partially secured** | **Deduction for value of collateral or setoff** | **Unsecured claim** |
| *Adan Technologies 9057 Valley Crest Lane #102 Germantown, TN 38138* | | *IT Services* | | | | *$37,255.84* |
| *Apperson Crump Profit Sharing Plan Bruce M. Smith, Trustee Thomas R. Buckner, Trustee 6000 Poplar Ave Suite 150 Memphis, TN 38119* | | *2024 Safe Harbor contribution* | | | | *$40,728.48* |
| *BankTennessee Downtown Memphis 30 North Second Street Memphis, TN 38103* | | | | | | *$54,648.00* |
| *Boyle Insurance Agency P.O. Box 17800 Memphis, TN 38187* | | | | | | *$12,113.08* |
| *CCH Prosystem FX P.O. Box 4307 Carol Stream, IL 60197-4307* | | | | | | *$27,235.62* |
| *CNA Deductible Recovery Group P.O. Box 6065-02 Hermitage, PA 16148-1065* | | | | | | *$175,000.00* |
| *Connie Cook 5430 Hayes Rd. Arlington, TN 38002* | | *Unpaid PTO* | | | | *$21,155.06* |

Official form 204          Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured claims          page 1

UST APX 0006

| Debtor | Apperson Crump PLC | Case number (if known) | |
|---|---|---|---|
| | Name | | |

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| Continental Insurance Company CNA Cashier Team P.O. Box 8317 Chicago, IL 60680-8317 | | Malpractice claim Deductibles | | | | $50,000.00 |
| FedEx ERS P.O. Box 371741 Pittsburgh, PA 15250-7741 | | | | | | $14,277.09 |
| Fidelity National Title 6060 Poplar Avenue Suite LL-37 Memphis, TN 38119 | | | | | | $34,496.53 |
| Glassman, Wyatt, Tuttle & Cox PC 26 N. 2nd St Memphis, TN 38103 | | | | | | $7,942.50 |
| IPFS Corporation 24722 Network Place Chicago, IL 60673 | | | | | | $27,996.80 |
| Level 3 Communications Century Link P.O. Box 910182 Denver, CO 80291-0182 | | | | | | $7,377.73 |
| Matthew Bradsher 9393 Laurel Hill Dr. Lakeland, TN 38002 | | Unpaid PTO | Disputed | | | $7,838.10 |
| Melissa Jaynes 2286 Glencliff Dr Memphis, TN 38119 | | unpaid PTO | | | | $12,188.00 |
| Poplar Corridor Investments, LLC 5900 Poplar Ave. Suite 100 Memphis, TN 38119 | | | | | | $209,261.27 |
| The Security Title Guarantee Corporation Attn: John Kosogof 1099 Winterson Rd. Suite 290 Linthicum Heights, MD 21090 | | | | | | $68,372.33 |
| Thomas R. Buckner 1719 Harbert Avenue Memphis, TN 38104 | | | | | | $15,000.00 |

Official form 204          Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured claims          page 2

UST APX 0007

Debtor __*Apperson Crump PLC*_____     Case number *(if known)* _____
    Name

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim<br>If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| *Thomson Reuters West Payment Center P.O. Box 6292 Carol Stream, IL 60197-6292* | | | | | | *$25,830.68* |
| *Veritext P.O. Box 71303 Chicago, IL 60694-1303* | | | | | | *$8,980.71* |

UST APX 0008

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor name | *Apperson Crump PLC* |
| United States Bankruptcy Court for the: | WESTERN DISTRICT OF TENNESSEE |
| Case number (if known) | |

☐ Check if this is an amended filing

## Official Form 206Sum
### Summary of Assets and Liabilities for Non-Individuals
**12/15**

---

| Part 1: | Summary of Assets |
|---|---|

1. ***Schedule A/B: Assets-Real and Personal Property*** (Official Form 206A/B)

   1a. **Real property:**
   Copy line 88 from *Schedule A/B*.............................................................................................. $     *0.00*

   1b. **Total personal property:**
   Copy line 91A from *Schedule A/B*.............................................................................................. $     *1,391,261.91*

   1c. **Total of all property:**
   Copy line 92 from *Schedule A/B*.............................................................................................. $     *1,391,261.91*

---

| Part 2: | Summary of Liabilities |
|---|---|

2. ***Schedule D: Creditors Who Have Claims Secured by Property*** (Official Form 206D)
   Copy the total dollar amount listed in Column A, *Amount of claim,* from line 3 of *Schedule D*................................... $     *1,746,787.59*

3. ***Schedule E/F: Creditors Who Have Unsecured Claims*** (Official Form 206E/F)

   **3a. Total claim amounts of priority unsecured claims:**
   Copy the total claims from Part 1 from line 5a of *Schedule E/F*.......................................................... $     *90,915.52*

   **3b. Total amount of claims of nonpriority amount of unsecured claims:**
   Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F*................................................. +$     *847,938.23*

4. **Total liabilities** ...................................................................................................................................
   Lines 2 + 3a + 3b

$     *2,685,641.34*

---

UST APX 0009

| Fill in this information to identify the case: | |
|---|---|
| Debtor name | **Apperson Crump PLC** |
| United States Bankruptcy Court for the: | WESTERN DISTRICT OF TENNESSEE |
| Case number (if known) | _____ |

☐ Check if this is an amended filing

## Official Form 206A/B
# Schedule A/B: Assets - Real and Personal Property          **12/15**

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

| Part 1: | Cash and cash equivalents |
|---|---|

1. **Does the debtor have any cash or cash equivalents?**

☐ No. Go to Part 2.

■ Yes Fill in the information below.

| **All cash or cash equivalents owned or controlled by the debtor** | | | **Current value of debtor's interest** |
|---|---|---|---|

3. **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*

| | Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
|---|---|---|---|---|
| 3.1. | **Guaranty Bank Trust account** | **Client Trust account** | **1537** | **$520,357.83** |
| 3.2. | **Guaranty Bank operating account** | **checking** | **4814** | **$895.68** |
| 3.3. | **Simmons Bank profit sharing account** | **Profit sharing** | **3087** | **$1,309.14** |
| 3.4. | **First Horizon operating account** | **checking** | **0683** | **$32,748.10** |
| 3.5. | **First Horizon Client Trust Account IOLTA. $215126.74 of balance are client funds.** | **IOLTA Client Trust Account** | **3450** | **$215,126.74** |
| 3.6. | **Community Bank IOLTA account. All funds are client funds.** | **MS Client Trust Account IOLTA** | **6427** | **$3,993.32** |

4. **Other cash equivalents** *(Identify all)*

| Official Form 206A/B | Schedule A/B Assets - Real and Personal Property | page 1 |
|---|---|---|

UST APX 0010

| Debtor | *Apperson Crump PLC* | Case number *(If known)* | |
|---|---|---|---|
| | Name | | |

5. **Total of Part 1.**

Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.

$774,430.81

**Deposits and Prepayments**

6. **Does the debtor have any deposits or prepayments?**

☑ No. Go to Part 3.
☐ Yes Fill in the information below.

**Part 3:** **Accounts receivable**

10. **Does the debtor have any accounts receivable?**

☐ No. Go to Part 4.
☑ Yes Fill in the information below.

11. **Accounts receivable**

| 11b. Over 90 days old: | 136,850.87 | - | 132,489.87 | =.... | $4,361.00 |
|---|---|---|---|---|---|
| | face amount | | doubtful or uncollectible accounts | | |

| 11b. Over 90 days old: | 608,563.19 | - | 372,426.34 | =.... | $236,136.85 |
|---|---|---|---|---|---|
| | face amount | | doubtful or uncollectible accounts | | |

| 11b. Over 90 days old: | 637,915.00 | - | 317,526.75 | =.... | $320,388.25 |
|---|---|---|---|---|---|
| | face amount | | doubtful or uncollectible accounts | | |

12. **Total of Part 3.**

Current value on lines 11a + 11b = line 12. Copy the total to line 82.

$560,886.10

**Part 4:** **Investments**

13. **Does the debtor own any investments?**

☑ No. Go to Part 5.
☐ Yes Fill in the information below.

**Part 5:** **Inventory, excluding agriculture assets**

18. **Does the debtor own any inventory (excluding agriculture assets)?**

☑ No. Go to Part 6.
☐ Yes Fill in the information below.

**Part 6:** **Farming and fishing-related assets (other than titled motor vehicles and land)**

27. **Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

☑ No. Go to Part 7.
☐ Yes Fill in the information below.

**Part 7:** **Office furniture, fixtures, and equipment; and collectibles**

38. **Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

☐ No. Go to Part 8.
☑ Yes Fill in the information below.

Official Form 206A/B                  Schedule A/B Assets - Real and Personal Property                  page 2

UST APX 0011

| Debtor | **Apperson Crump PLC** | Case number *(If known)* | |
| | Name | | |

| | General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 39. | **Office furniture** *Office furniture, fixtures, books, filing cabinets, etc. Itemization available upon request* | **$0.00** | | **$50,945.00** |

| | | |
|---|---|---|
| 40. | **Office fixtures** | |
| 41. | **Office equipment, including all computer equipment and communication systems equipment and software** | |
| 42. | **Collectibles** *Examples*: Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles | |
| 43. | **Total of Part 7.** Add lines 39 through 42. Copy the total to line 86. | **$50,945.00** |

44. **Is a depreciation schedule available for any of the property listed in Part 7?**
 ■ No
 ☐ Yes

45. **Has any of the property listed in Part 7 been appraised by a professional within the last year?**
 ■ No
 ☐ Yes

| Part 8: | Machinery, equipment, and vehicles |
|---|---|

46. **Does the debtor own or lease any machinery, equipment, or vehicles?**

 ■ No. Go to Part 9.
 ☐ Yes Fill in the information below.

| Part 9: | Real property |
|---|---|

54. **Does the debtor own or lease any real property?**

 ■ No. Go to Part 10.
 ☐ Yes Fill in the information below.

| Part 10: | Intangibles and intellectual property |
|---|---|

59. **Does the debtor have any interests in intangibles or intellectual property?**

 ■ No. Go to Part 11.
 ☐ Yes Fill in the information below.

| Part 11: | All other assets |
|---|---|

70. **Does the debtor own any other assets that have not yet been reported on this form?**
 Include all interests in executory contracts and unexpired leases not previously reported on this form.

 ☐ No. Go to Part 12.
 ■ Yes Fill in the information below.

Current value of debtor's interest

UST APX 0012

Debtor     **_Apperson Crump PLC_**                                        Case number *(If known)* _____
               Name

71.  **Notes receivable**
     Description (include name of obligor)

| | | | | |
|---|---|---|---|---|
| **_Due from BSK $71,854.88_** | **71,854.88** Total face amount | - | **71,854.88** doubtful or uncollectible amount | = **_$0.00_** |
| **_REP note dated 2/17/16 $3,000.00_** | **3,000.00** Total face amount | - | **3,000.00** doubtful or uncollectible amount | = **_$0.00_** |
| **_BMS Note 12/31/17 $120,191.77_** | **120,191.77** Total face amount | - | **120,191.77** doubtful or uncollectible amount | = **_$0.00_** |
| **_BSK Note 12/31/17 $158,041.07_** | **158,041.07** Total face amount | - | **158,041.07** doubtful or uncollectible amount | = **_$0.00_** |
| **_REP note October 2017_** | **10,000.00** Total face amount | - | **5,000.00** doubtful or uncollectible amount | = **_$5,000.00_** |
| **_JWS note 12/31/17 $66,975.98_** | **66,975.98** Total face amount | - | **66,975.98** doubtful or uncollectible amount | = **_$0.00_** |
| **_BMS Note 12/31/18 $132,689.53_** | **132,689.53** Total face amount | - | **132,689.53** doubtful or uncollectible amount | = **_$0.00_** |
| **_BSK NOte 12/31/18 $143,318.74_** | **143,318.74** Total face amount | - | **143,318.74** doubtful or uncollectible amount | = **_$0.00_** |
| **_JWS Note 12/31/18 $159,390.92_** | **159,390.92** Total face amount | - | **159,390.92** doubtful or uncollectible amount | = **_$0.00_** |
| **_JWB Note $169,561.05_** | **169,561.05** Total face amount | - | **169,561.05** doubtful or uncollectible amount | = **_$0.00_** |

72.  **Tax refunds and unused net operating losses (NOLs)**
     Description (for example, federal, state, local)

73.  **Interests in insurance policies or annuities**

74.  **Causes of action against third parties (whether or not a lawsuit has been filed)**

75.  **Other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to set off claims**

76.  **Trusts, equitable or future interests in property**

77.  **Other property of any kind not already listed** *Examples:* Season tickets, country club membership

78.  **Total of Part 11.**

     Add lines 71 through 77. Copy the total to line 90.

     **_$5,000.00_**

79.  **Has any of the property listed in Part 11 been appraised by a professional within the last year?**
     ■ No

Official Form 206A/B                  Schedule A/B Assets - Real and Personal Property                    page 4

UST APX 0013

Debtor  **_Apperson Crump PLC_**
Name

Case number *(If known)* _____

☐ Yes

UST APX 0014

Debtor     **Apperson Crump PLC**                                    Case number *(If known)* _____
           Name

<table>
<tr><td colspan="3" style="background-color:black;color:white">Part 12:</td><td><b>Summary</b></td></tr>
</table>

**In Part 12 copy all of the totals from the earlier parts of the form**

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1* | $774,430.81 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $0.00 | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $560,886.10 | |
| 83. **Investments.** *Copy line 17, Part 4.* | $0.00 | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $0.00 | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $0.00 | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $50,945.00 | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $0.00 | |
| 88. **Real property.** *Copy line 56, Part 9.*......................................................> | | $0.00 |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $0.00 | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + $5,000.00 | |
| 91. **Total.** Add lines 80 through 90 for each column | $1,391,261.91 | + 91b. $0.00 |

92. **Total of all property on Schedule A/B**. Add lines 91a+91b=92                                   $1,391,261.91

Official Form 206A/B                    Schedule A/B Assets - Real and Personal Property                    page 6

UST APX 0015

<table>
<tr><td colspan="2"><strong>Fill in this information to identify the case:</strong></td></tr>
<tr><td>Debtor name</td><td><strong><em>Apperson Crump PLC</em></strong></td></tr>
<tr><td>United States Bankruptcy Court for the:</td><td>WESTERN DISTRICT OF TENNESSEE</td></tr>
<tr><td>Case number (if known)</td><td></td></tr>
</table>

☐ Check if this is an amended filing

Official Form 206D

# Schedule D: Creditors Who Have Claims Secured by Property   12/15

**Be as complete and accurate as possible.**

**1. Do any creditors have claims secured by debtor's property?**

☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

■ Yes. Fill in all of the information below.

**Part 1:   List Creditors Who Have Secured Claims**

2. **List in alphabetical order all creditors who have secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim.

| | | Column A<br>**Amount of claim**<br>Do not deduct the value of collateral. | Column B<br>**Value of collateral that supports this claim** |
|---|---|---|---|
| **2.1 Advocate Capital**<br>Creditor's Name<br><br>**P.O. Box 306370**<br>**Nashville, TN 37230**<br>Creditor's mailing address<br><br><br>Creditor's email address, if known<br><br>**Date debt was incurred**<br><br>**Last 4 digits of account number**<br>**D505**<br>**Do multiple creditors have an interest in the same property?**<br>■ No<br>☐ Yes. Specify each creditor, including this creditor and its relative priority. | **Describe debtor's property that is subject to a lien**<br>**_All accounts, instruments, Client Matters, etc and personal guaranties_**<br><br>**Describe the lien**<br>**_UCC_**<br>**Is the creditor an insider or related party?**<br>■ No<br>☐ Yes<br>**Is anyone else liable on this claim?**<br>■ No<br>☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)<br><br>**As of the petition filing date, the claim is:**<br>Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | _$1,167,207.77_ | _Unknown_ |
| **2.2 Guaranty Bank and Trust**<br>Creditor's Name<br>**210 Hayden St**<br>**PO Drawer 657**<br>**Belzoni, MS 39038**<br>Creditor's mailing address<br><br><br>Creditor's email address, if known<br><br>**Date debt was incurred**<br><br>**Last 4 digits of account number**<br><br>**Do multiple creditors have an interest in the same property?** | **Describe debtor's property that is subject to a lien**<br>**_partners' pledge notes, capital notes and personal guaranties_**<br><br>**Describe the lien**<br>**_UCC_**<br>**Is the creditor an insider or related party?**<br>■ No<br>☐ Yes<br>**Is anyone else liable on this claim?**<br>■ No<br>☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)<br><br>**As of the petition filing date, the claim is:**<br>Check all that apply | _$392,249.82_ | _Unknown_ |

Official Form 206D   **Schedule D: Creditors Who Have Claims Secured by Property**   page 1 of 3

UST APX 0016

Debtor **Apperson Crump PLC**
Name

Case number (if known) _____

- ■ No
- ☐ Yes. Specify each creditor, including this creditor and its relative priority.

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

_____

| 2.3 | **Simmons Bank** | Describe debtor's property that is subject to a lien | **$187,330.00** | **Unknown** |
|---|---|---|---|---|

Creditor's Name

**UCC and personal guaranties**

**Central Loan
Administration
P.O. Box 7009
Pine Bluff, AR 71611**

Creditor's mailing address

**Describe the lien**
**UCC**

**Is the creditor an insider or related party?**

- ■ No
- ☐ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**

- ■ No
- ☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**

**Last 4 digits of account number**
**6370**

**Do multiple creditors have an interest in the same property?**

- ■ No
- ☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

3. **Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any.**   | **$1,746,787.59** |

**Part 2:   List Others to Be Notified for a Debt Already Listed in Part 1**

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

If no others need to notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.

| Name  and address | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
|---|---|---|
| **Advocate Capital, Inc.
ACF 2006 Corp
29629 Network Place
Chicago, IL 60673** | Line __2.1__ | |
| **R. Lee Webber
Martin Tate Morrow & Marston, P.C.
International Place, Tower II
6410 Poplar Ave, Suite 900
Memphis, TN 38119** | Line __2.2__ | |
| **Roger G. Jones
Bradley Arant Boult Cummings LLP
1221 Broadway
Suite 2400
Nashville, TN 37203** | Line __2.1__ | |

UST APX 0017

| Debtor | **_Apperson Crump PLC_** | | Case number (if known) | |
|---|---|---|---|---|
| | Name | | | |

**_Ronald G. Steen_**
**_Thompson Burton PLLC_**
**_6100 Tower Circle_**
**_Suite 200_**
**_Franklin, TN 37067_**

Line ___2.3___

UST APX 0018

| Fill in this information to identify the case: |
|---|

Debtor name    **Apperson Crump PLC**

United States Bankruptcy Court for the:    WESTERN DISTRICT OF TENNESSEE

Case number (if known)    _____

☐ Check if this is an amended filing

---

Official Form 206E/F

# Schedule E/F: Creditors Who Have Unsecured Claims                    12/15

**Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims. List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B) and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G). Number the entries in Parts 1 and 2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.**

| **Part 1:** | **List All Creditors with PRIORITY Unsecured Claims** |
|---|---|

1. **Do any creditors have priority unsecured claims?** (See 11 U.S.C. § 507).

   ☐ No. Go to Part 2.

   ■ Yes. Go to line 2.

2. **List in alphabetical order all creditors who have unsecured claims that are entitled to priority in whole or in part.** If the debtor has more than 3 creditors with priority unsecured claims, fill out and attach the Additional Page of Part 1.

|  |  |  | Total claim | Priority amount |
|---|---|---|---|---|
| **2.1** | Priority creditor's name and mailing address<br>***Apperson Crump Profit Sharing Plan***<br>***Bruce M. Smith, Trustee***<br>***Thomas R. Buckner, Trustee***<br>***6000 Poplar Ave Suite 150***<br>***Memphis, TN 38119*** | As of the petition filing date, the claim is:<br>*Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | **$40,728.48** | **$17,150.00** |
|  | Date or dates debt was incurred<br>***2024*** | Basis for the claim:<br>***2024 Safe Harbor contribution*** | | |
|  | Last 4 digits of account number<br>Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (5) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |
| **2.2** | Priority creditor's name and mailing address<br>***Connie Cook***<br>***5430 Hayes Rd.***<br>***Arlington, TN 38002*** | As of the petition filing date, the claim is:<br>*Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | **$21,155.06** | **$0.00** |
|  | Date or dates debt was incurred | Basis for the claim:<br>***Unpaid PTO*** | | |
|  | Last 4 digits of account number<br>Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

20933

UST APX 0019

| Debtor | **Apperson Crump PLC** | Case number (if known) | |
|---|---|---|---|
| | Name | | |

| 2.3 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $3,865.21 | $3,865.21 |
|---|---|---|---|---|

**Internal Revenue Service**
**Insolvency Section**
**801 Broadway, MDP 146**
**Nashville, TN 37203**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (8)

■ No
☐ Yes

---

| 2.4 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $4,640.67 | $4,640.67 |
|---|---|---|---|---|

**IRS**
**P.O. Box 7346**
**Philadelphia, PA 19101-7346**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (8)

■ No
☐ Yes

---

| 2.5 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $7,838.10 | $0.00 |
|---|---|---|---|---|

**Matthew Bradsher**
**9393 Laurel Hill Dr.**
**Lakeland, TN 38002**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
■ Disputed

Date or dates debt was incurred

Basis for the claim:
**Unpaid PTO**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.6 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $12,188.00 | $0.00 |
|---|---|---|---|---|

**Melissa Jaynes**
**2286 Glencliff Dr**
**Memphis, TN 38119**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**unpaid PTO**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

UST APX 0020

| Debtor | *Apperson Crump PLC* | Case number (if known) |
|---|---|---|
| | Name | |

**2.7** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $500.00 | $500.00

*State of Tennessee*
*Office of the Attorney General*
*PO Box 20207*
*Nashville, TN 37202-0207*

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
*500.00*

Basis for the claim:

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (8)

Is the claim subject to offset?
■ No
☐ Yes

---

**Part 2:** **List All Creditors with NONPRIORITY Unsecured Claims**

**3.** **List in alphabetical order all of the creditors with nonpriority unsecured claims**. If the debtor has more than 6 creditors with nonpriority unsecured claims, fill out and attach the Additional Page of Part 2.

| | | **Amount of claim** |
|---|---|---|

**3.1** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$2,760.00**

*Adams and Reese LLP*
*Dept 5208*
*P.O. Box 2153*
*Birmingham, AL 35287*

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Basis for the claim:** _

**Last 4 digits of account number** _

Is the claim subject to offset? ■ No ☐ Yes

---

**3.2** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$37,255.84**

*Adan Technologies*
*9057 Valley Crest Lane*
*#102*
*Germantown, TN 38138*

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Basis for the claim:** *IT Services*

**Last 4 digits of account number** _

Is the claim subject to offset? ■ No ☐ Yes

---

**3.3** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$79.26**

*Alpha Reporting Corporation*
*236 Adams Avenue*
*Memphis, TN 38103*

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Basis for the claim:** _

**Last 4 digits of account number** _

Is the claim subject to offset? ■ No ☐ Yes

---

**3.4** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$250.00**

*Attila Kerner M.C.*
*9449 Dennis Grove Court*
*Saint Louis, MO 63126*

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Basis for the claim:** _

**Last 4 digits of account number** _

Is the claim subject to offset? ■ No ☐ Yes

---

**3.5** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$2,387.15**

*Bank of America*
*P.O. Box 660441*
*Dallas, TX 75266-0441*

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Basis for the claim:** _

**Last 4 digits of account number** *6055*

Is the claim subject to offset? ■ No ☐ Yes

---

UST APX 0021

| Debtor | **Apperson Crump PLC** | Case number (if known) | |
|---|---|---|---|
| | Name | | |

| 3.6 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$54,648.00** |
|---|---|---|---|

**BankTennessee**
**Downtown Memphis**
**30 North Second Street**
**Memphis, TN 38103**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

**Basis for the claim:** _

Last 4 digits of account number  **1400**

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.7 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$934.35** |
|---|---|---|---|

**Blue Sky Couriers**
**830 S. Bellevue Blvd**
**Memphis, TN 38104**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

**Basis for the claim:** _

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.8 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$12,113.08** |
|---|---|---|---|

**Boyle Insurance Agency**
**P.O. Box 17800**
**Memphis, TN 38187**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

**Basis for the claim:** _

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.9 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$6,000.00** |
|---|---|---|---|

**Brian Drolet MD**
**1611 18th Avenue**
**Nashville, TN 37212**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

**Basis for the claim:** _

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.10 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$82.50** |
|---|---|---|---|

**Brooks Court Reporting Inc.**
**402 BNA Dr.**
**Suite 108**
**Nashville, TN 37217**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

**Basis for the claim:** _

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.11 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$1,103.17** |
|---|---|---|---|

**Bruce M. Smith**
**396 Wellington Cove**
**Memphis, TN 38117**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

**Basis for the claim:** _

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.12 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$1,079.10** |
|---|---|---|---|

**Bruce S. Kramer**
**4614 Katy Dr.**
**New Smyrna Beach, FL 32169**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

**Basis for the claim:** _

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

UST APX 0022

Debtor  **Apperson Crump PLC**                                    Case number (if known) _____
        Name

| 3.13 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$27,235.62** |

**CCH Prosystem FX**
**P.O. Box 4307**
**Carol Stream, IL 60197-4307**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Basis for the claim:** _

**Last 4 digits of account number** _

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.14 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$1,254.00** |

**Cheri Sullivan, CSR, RPR**
**111 Red Acres Place**
**Memphis, TN 38111**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Basis for the claim:** _

**Last 4 digits of account number** _

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.15 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$355.55** |

**CIOX Health**
**P.O. Box 409740**
**Atlanta, GA 30384**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Basis for the claim:** _

**Last 4 digits of account number** _

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.16 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$175,000.00** |

**CNA**
**Deductible Recovery Group**
**P.O. Box 6065-02**
**Hermitage, PA 16148-1065**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Basis for the claim:** _

**Last 4 digits of account number  7411**

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.17 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$1,557.01** |

**CNA Insurance**
**P.O. Box 74007619**
**Chicago, IL 60674-7619**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Basis for the claim:** _

**Last 4 digits of account number  8519**

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.18 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$50,000.00** |

**Continental Insurance Company**
**CNA Cashier Team**
**P.O. Box 8317**
**Chicago, IL 60680-8317**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Basis for the claim:**  **Malpractice claim Deductibles**

**Last 4 digits of account number** _

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.19 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$25.00** |

**EMG Clinics of Tennessee**
**PO Box 3488 Dept. 05-220**
**Tupelo, MS 38803-3488**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Basis for the claim:** _

**Last 4 digits of account number** _

Is the claim subject to offset? ■ No  ☐ Yes

---

Official Form 206 E/F                Schedule E/F: Creditors Who Have Unsecured Claims                Page  5 of 11

UST APX 0023

Debtor   **Apperson Crump PLC**
      Name
                                                 Case number (if known)

---

**3.20** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$2,894.82**

*Fedex*
*P.O. Box 660481*
*Dallas, TX 75266-0481*

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: _

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

**3.21** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$14,277.09**

*FedEx ERS*
*P.O. Box 371741*
*Pittsburgh, PA 15250-7741*

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: _

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

**3.22** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$34,496.53**

*Fidelity National Title*
*6060 Poplar Avenue*
*Suite LL-37*
*Memphis, TN 38119*

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: _

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

**3.23** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$691.25**

*Flippin Law Firm*
*1302 Main Street*
*P.O. Box 160*
*Humboldt, TN 38343*

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: _

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

**3.24** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$7,942.50**

*Glassman, Wyatt, Tuttle & Cox PC*
*26 N. 2nd St*
*Memphis, TN 38103*

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: _

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

**3.25** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$3,350.00**

*Harry Rein M.D., J.D.*
*1877 Wingfield Dr.*
*Longwood, FL 32779*

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: _

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

**3.26** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$3,686.86**

*Huseby Global Litigation*
*P.O. Box 6180*
*Hermitage, PA 16148-0922*

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: _

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

UST APX 0024

Debtor     **Apperson Crump PLC**                                    Case number (if known) _____
           Name

| 3.27 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$27,996.80** |
|---|---|---|---|

**IPFS Corporation**
**24722 Network Place**
**Chicago, IL 60673**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Last 4 digits of account number** _

**Basis for the claim:** _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.28 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$364.50** |
|---|---|---|---|

**Jennifer Mason**
**8193 Newell Road**
**Lake Cormorant, MS 38641**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Last 4 digits of account number** _

**Basis for the claim:** _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.29 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$4,056.00** |
|---|---|---|---|

**Konica Minolta**
**P.O. Box 550599**
**Jacksonville, FL 32255-0599**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Last 4 digits of account number** _**3000**_

**Basis for the claim:** _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.30 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$6,862.44** |
|---|---|---|---|

**Konica Minolta Premier Finance**
**P.O. Box 105743**
**Atlanta, GA 30348-5743**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Last 4 digits of account number** _

**Basis for the claim:** _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.31 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$7,377.73** |
|---|---|---|---|

**Level 3 Communications**
**Century Link**
**P.O. Box 910182**
**Denver, CO 80291-0182**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Last 4 digits of account number** _

**Basis for the claim:** _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.32 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$2,008.76** |
|---|---|---|---|

**Lexis Nexis Matthew Bender**
**P.O. Box 733106**
**Dallas, TX 75373-3106**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Last 4 digits of account number** _

**Basis for the claim:** _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.33 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$1,543.05** |
|---|---|---|---|

**Lexitas**
**P.O. Box 734298**
**Dept 2038**
**Dallas, TX 75373-4298**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Last 4 digits of account number** _

**Basis for the claim:** _

Is the claim subject to offset? ■ No ☐ Yes

---

Official Form 206 E/F            **Schedule E/F: Creditors Who Have Unsecured Claims**            Page **7** of **11**

UST APX 0025

| Debtor | **Apperson Crump PLC** | Case number (if known) | |
|---|---|---|---|
| | Name | | |

| | | | |
|---|---|---|---|
| 3.34 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$980.00** |
| | **Lisa C. Vaughn, RPR, CSR** | ☐ Contingent | |
| | **4570 Sequoia Road** | ☐ Unliquidated | |
| | **Memphis, TN 38117** | ☐ Disputed | |
| | Date(s) debt was incurred _ | | |
| | Last 4 digits of account number _ | **Basis for the claim:** _ | |
| | | Is the claim subject to offset? ■ No ☐ Yes | |

| | | | |
|---|---|---|---|
| 3.35 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$225.00** |
| | **Lu Anne Dudley, CSR, RPR** | ☐ Contingent | |
| | **P.O. Box 1631** | ☐ Unliquidated | |
| | **Cordova, TN 38018** | ☐ Disputed | |
| | Date(s) debt was incurred _ | | |
| | Last 4 digits of account number _ | **Basis for the claim:** _ | |
| | | Is the claim subject to offset? ■ No ☐ Yes | |

| | | | |
|---|---|---|---|
| 3.36 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$258.89** |
| | **MEMPHIS COMMUNICATIONS CORPORATION** | ☐ Contingent | |
| | **PO BOX 770389** | ☐ Unliquidated | |
| | **Memphis, TN 38177** | ☐ Disputed | |
| | Date(s) debt was incurred _ | | |
| | Last 4 digits of account number _ | **Basis for the claim:** _ | |
| | | Is the claim subject to offset? ■ No ☐ Yes | |

| | | | |
|---|---|---|---|
| 3.37 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$209,261.27** |
| | **Poplar Corridor Investments, LLC** | ☐ Contingent | |
| | **5900 Poplar Ave.** | ☐ Unliquidated | |
| | **Suite 100** | ☐ Disputed | |
| | **Memphis, TN 38119** | | |
| | Date(s) debt was incurred _ | **Basis for the claim:** _ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| | | | |
|---|---|---|---|
| 3.38 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$7,177.50** |
| | **Positively Balanced LLC** | ☐ Contingent | |
| | **3662 Cedarcrest Road** | ☐ Unliquidated | |
| | **Suite 200** | ☐ Disputed | |
| | **Acworth, GA 30101** | | |
| | Date(s) debt was incurred _ | **Basis for the claim:** _ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| | | | |
|---|---|---|---|
| 3.39 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$233.00** |
| | **Professional Process Servers, Inc.** | ☐ Contingent | |
| | **5240 Mendenhall Park Place** | ☐ Unliquidated | |
| | **Memphis, TN 38115** | ☐ Disputed | |
| | Date(s) debt was incurred _ | | |
| | Last 4 digits of account number _ | **Basis for the claim:** _ | |
| | | Is the claim subject to offset? ■ No ☐ Yes | |

| | | | |
|---|---|---|---|
| 3.40 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$330.00** |
| | **Progressive Private Process** | ☐ Contingent | |
| | **P.O. Box 343058** | ☐ Unliquidated | |
| | **Memphis, TN 38184** | ☐ Disputed | |
| | Date(s) debt was incurred _ | | |
| | Last 4 digits of account number _ | **Basis for the claim:** _ | |
| | | Is the claim subject to offset? ■ No ☐ Yes | |

Official Form 206 E/F       Schedule E/F: Creditors Who Have Unsecured Claims       Page 8 of 11

UST APX 0026

| Debtor | **Apperson Crump PLC** | | | Case number (if known) | |
|---|---|---|---|---|---|
| | Name | | | | |

**3.41** | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$7,268.36**

*Relx Inc*
*D/B/A Lexis Nexis*
*P.O. Box 733106*
*Dallas, TX 75373-3106*

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Basis for the claim:** _

**Last 4 digits of account number** _

Is the claim subject to offset? ■ No ☐ Yes

---

**3.42** | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$66.50**

*Samantha E. Cohen, RPR*
*239 South Barksdale Street*
*Memphis, TN 38104*

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Basis for the claim:** _

**Last 4 digits of account number** _

Is the claim subject to offset? ■ No ☐ Yes

---

**3.43** | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$68,372.33**

*The Security Title Guarantee Corporation*
*Attn: John Kosogof*
*1099 Winterson Rd.*
*Suite 290*
*Linthicum Heights, MD 21090*

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** *1/21/25*

**Basis for the claim:** _

**Last 4 digits of account number** *5598*

Is the claim subject to offset? ■ No ☐ Yes

---

**3.44** | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$15,000.00**

*Thomas R. Buckner*
*1719 Harbert Avenue*
*Memphis, TN 38104*

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Basis for the claim:** _

**Last 4 digits of account number** _

Is the claim subject to offset? ■ No ☐ Yes

---

**3.45** | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$25,830.68**

*Thomson Reuters*
*West Payment Center*
*P.O. Box 6292*
*Carol Stream, IL 60197-6292*

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Basis for the claim:** _

**Last 4 digits of account number** _

Is the claim subject to offset? ■ No ☐ Yes

---

**3.46** | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$485.00**

*Track & Trace Legal Services*
*P.O. Box 343058*
*Bartlett, TN 38184*

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Basis for the claim:** _

**Last 4 digits of account number** _

Is the claim subject to offset? ■ No ☐ Yes

---

**3.47** | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$3,920.24**

*Vanderbilt Mortgage and Finance, Inc*
*500 Alcoa Trail*
*Maryville, TN 37804*

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Basis for the claim:** _

**Last 4 digits of account number** _

Is the claim subject to offset? ■ No ☐ Yes

---

Official Form 206 E/F | Schedule E/F: Creditors Who Have Unsecured Claims | Page **9** of 11

UST APX 0027

Debtor **Apperson Crump PLC**
_____
Name

Case number (if known) _____

| 3.48 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** _Check all that apply._ | **$599.75** |
|---|---|---|---|

**Verisma**
**P.O. Box 201327**
**Dallas, TX 75320-1327**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Last 4 digits of account number** _

**Basis for the claim:** _

Is the claim subject to offset? ☒ No  ☐ Yes

---

| 3.49 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** _Check all that apply._ | **$8,980.71** |
|---|---|---|---|

**Veritext**
**P.O. Box 71303**
**Chicago, IL 60694-1303**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Last 4 digits of account number** _

**Basis for the claim:** _

Is the claim subject to offset? ☒ No  ☐ Yes

---

| 3.50 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** _Check all that apply._ | **$419.60** |
|---|---|---|---|

**Virgina Dodge, RDR, CRR, LCR**
**3046 Elliott Drive**
**Mount Juliet, TN 37122-0606**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Last 4 digits of account number** _

**Basis for the claim:** _

Is the claim subject to offset? ☒ No  ☐ Yes

---

| 3.51 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** _Check all that apply._ | **$6,861.44** |
|---|---|---|---|

**Wells Fargo Vendo Fin Serv**
**PO Box 105743**
**Atlanta, GA 30348-5710**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Last 4 digits of account number** _0000_

**Basis for the claim:** _

Is the claim subject to offset? ☒ No  ☐ Yes

---

| **Part 3:** | **List Others to Be Notified About Unsecured Claims** |
|---|---|

**4. List in alphabetical order any others who must be notified for claims listed in Parts 1 and 2.** Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for unsecured creditors.

If no others need to be notified for the debts listed in Parts 1 and 2, do not fill out or submit this page. If additional pages are needed, copy the next page.

| | **Name and mailing address** | **On which line in Part1 or Part 2 is the related creditor (if any) listed?** | **Last 4 digits of account number, if any** |
|---|---|---|---|
| 4.1 | **Business Card**<br>**Bank of America**<br>**P.O. Box 15796**<br>**Wilmington, DE 19850-5184** | Line _3.5_<br><br>☐ Not listed. Explain ____ | _ |
| 4.2 | **CNA**<br>**P.O. Box 8317**<br>**Chicago, IL 60680-8317** | Line _3.16_<br><br>☐ Not listed. Explain ____ | _ |
| 4.3 | **Internal Revenue Service**<br>**P.O. Box 9941, Stop 6552**<br>**Ogden, UT 84409** | Line _2.3_<br><br>☐ Not listed. Explain ____ | _ |
| 4.4 | **Internal Revenue Service**<br>**P.O Box 219690**<br>**Kansas City, MO 64121-9890** | Line _2.4_<br><br>☐ Not listed. Explain ____ | _ |

Official Form 206 E/F          Schedule E/F: Creditors Who Have Unsecured Claims          Page 10 of 11

UST APX 0028

Debtor **Apperson Crump PLC**
_____
Name

Case number (if known) _____

| | Name and mailing address | On which line in Part1 or Part 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
|---|---|---|---|
| 4.5 | **Internal Revenue Service** **Insolvency Section** **801 Broadway, MDP 146** **Nashville, TN 37203** | Line **2.4**  ☐ Not listed. Explain ____ | _ |
| 4.6 | **IRS** **P.O. Box 7346** **Philadelphia, PA 19101-7346** | Line **2.3**  ☐ Not listed. Explain ____ | _ |
| 4.7 | **JP Morgan Chase Bank** **300 S. Riverside Plaza** **IL-I-0196** **Chicago, IL 60606** | Line **3.29**  ☐ Not listed. Explain ____ | _ |
| 4.8 | **Konica Minolta** **21146 Network Place** **Chicago, IL 60673-1211** | Line **3.29**  ☐ Not listed. Explain ____ | **3000** |
| 4.9 | **L. Clayton Culpepper III** **Evans Petree, P.C.** **1715 Aaron Brenner Dr.** **Suite 800** **Memphis, TN 38120** | Line **3.37**  ☐ Not listed. Explain ____ | _ |
| 4.10 | **State of Tennessee** **Department of Labor and Workforce Dev** **220 French Landing Drive** **Nashville, TN 37241** | Line **2.7**  ☐ Not listed. Explain ____ | _ |

| Part 4: | Total Amounts of the Priority and Nonpriority Unsecured Claims |
|---|---|

5. Add the amounts of priority and nonpriority unsecured claims.

| | | **Total of claim amounts** |
|---|---|---|
| 5a. Total claims from Part 1 | 5a. $ | **90,915.52** |
| 5b. Total claims from Part 2 | 5b. **+** $ | **847,938.23** |
| 5c. Total of Parts 1 and 2 Lines 5a + 5b = 5c. | 5c. $ | **938,853.75** |

Official Form 206 E/F          Schedule E/F: Creditors Who Have Unsecured Claims          Page 11 of 11

UST APX 0029

Fill in this information to identify the case:

Debtor name __*Apperson Crump PLC*__

United States Bankruptcy Court for the: WESTERN DISTRICT OF TENNESSEE

Case number (if known) _____

☐ Check if this is an
amended filing

## Official Form 206G

## Schedule G: Executory Contracts and Unexpired Leases                   **12/15**

**Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, number the entries consecutively.**

1.  **Does the debtor have any executory contracts or unexpired leases?**

   ☐ No. Check this box and file this form with the debtor's other schedules.  There is nothing else to report on this form.

   ■ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B: Assets - Real and Personal*          *Property*
(Official Form 206A/B).

| **2. List all contracts and unexpired leases** | | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|---|
| 2.1. State what the contract or lease is for and the nature of the debtor's interest | *Copier lease* | |
| State the term remaining | *36 months* | *Konica Minolta* |
| List the contract number of any government contract | | *P.O. Box 550599* *Jacksonville, FL 32255-0599* |
| 2.2. State what the contract or lease is for and the nature of the debtor's interest | *Quadient IX7 Digital Postage Equipment* | |
| State the term remaining | *12 months* | *MEMPHIS COMMUNICATIONS CORPORATION* |
| List the contract number of any government contract | | *PO BOX 770389* *Memphis, TN 38177* |
| 2.3. State what the contract or lease is for and the nature of the debtor's interest | *Office space* | |
| State the term remaining | *6 months* | *Poplar Corridor Investments, LLC* *5900 Poplar Ave.* |
| List the contract number of any government contract | | *Suite 100* *Memphis, TN 38119* |

Official Form 206G          **Schedule G: Executory Contracts and Unexpired Leases**                   Page 1 of 2

UST APX 0030

Debtor 1     **Apperson Crump PLC**

First Name        Middle Name        Last Name

Case number *(if known)* _____

---

#### ▮ Additional Page if You Have More Contracts or Leases

| **2. List all contracts and unexpired leases** | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|

| 2.4. | State what the contract or lease is for and the nature of the debtor's interest | *Debtor may have engagement agreements or fee agreements with various clients. The names of the clients are being withheld for privilege purposes.* | |
|---|---|---|---|
| | State the term remaining | | |
| | List the contract number of any government contract | _____ | *Various clients* _____ |

---

Official Form 206G      **Schedule G: Executory Contracts and Unexpired Leases**      Page 2 of 2

UST APX 0031

**Fill in this information to identify the case:**

Debtor name **Apperson Crump PLC**

United States Bankruptcy Court for the: WESTERN DISTRICT OF TENNESSEE

Case number (if known) _____

☐ Check if this is an amended filing

## Official Form 206H
## Schedule H: Your Codebtors

**12/15**

Be as complete and accurate as possible. If more space is needed, copy the Additional Page, numbering the entries consecutively. Attach the Additional Page to this page.

**1. Do you have any codebtors?**

☐ No. Check this box and submit this form to the court with the debtor's other schedules. Nothing else needs to be reported on this form.

■ Yes

**2. In Column 1, list as codebtors all of the people or entities who are also liable for any debts listed by the debtor in the schedules of creditors, Schedules D-G.** Include all guarantors and co-obligors. In Column 2, identify the creditor to whom the debt is owed and each schedule on which the creditor is listed. If the codebtor is liable on a debt to more than one creditor, list each creditor separately in Column 2.

| | *Column 1:* **Codebtor** | | *Column 2:* **Creditor** | |
|---|---|---|---|---|
| | **Name** | **Mailing Address** | **Name** | *Check all schedules that apply:* |
| 2.1 | **Bruce M. Smith** | **396 Wellington Cv Memphis, TN 38117** | **Various** | ☐ D _____ ☐ E/F _____ ☐ G _____ |
| 2.2 | **Bruce S. Kramer** | **4614 Katy Dr. New Smyrna Beach, FL 32169** | **Various** | ☐ D _____ ☐ E/F _____ ☐ G _____ |
| 2.3 | **Jon W. Smith** | **54 Robert Dell Cv Memphis, TN 38117** | **Various** | ☐ D _____ ☐ E/F _____ ☐ G _____ |
| 2.4 | **Thomas R. Buckner** | **1719 Harbert Ave. Memphis, TN 38104** | **Various** | ☐ D _____ ☐ E/F _____ ☐ G _____ |

Official Form 206H                    Schedule H: Your Codebtors                    Page 1 of 1

UST APX 0032

**Fill in this information to identify the case:**

Debtor name    *Apperson Crump PLC*

United States Bankruptcy Court for the:    WESTERN DISTRICT OF TENNESSEE

Case number (if known): _____

☐ Check if this is an amended filing

## Official Form 207
## Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy    **04/25**

**The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).**

| Part 1: | Income |
|---|---|

1. **Gross revenue from business**

☐ None.

| Identify the beginning and ending dates of the debtor's fiscal year, which may be a calendar year | Sources of revenue<br>Check all that apply | Gross revenue<br>(before deductions and exclusions) |
|---|---|---|
| **From the beginning of the fiscal year to filing date:**<br>From **1/01/2025** to **Filing Date** | ■ Operating a business<br>☐ Other _____ | **$2,012,333.59** |
| **For prior year:**<br>From **1/01/2024** to **12/31/2024** | ■ Operating a business<br>☐ Other _____ | **$4,453,157.00** |

2. **Non-business revenue**
Include revenue regardless of whether that revenue is taxable. *Non-business income* may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

■ None.

| | Description of sources of revenue | Gross revenue from each source<br>(before deductions and exclusions) |
|---|---|---|

| Part 2: | List Certain Transfers Made Before Filing for Bankruptcy |
|---|---|

3. **Certain payments or transfers to creditors within 90 days before filing this case**
List payments or transfers--including expense reimbursements--to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $8,575. (This amount may be adjusted on 4/01/28 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

■ None.

| Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>*Check all that apply* |
|---|---|---|---|

---

Official Form 207     **Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**     page **1**

Software Copyright (c) 1996-2025 Best Case, LLC - www.bestcase.com

UST APX 0033

| Debtor | **Apperson Crump PLC** | Case number *(if known)* |
|---|---|---|

**4. Payments or other transfers of property made within 1 year before filing this case that benefited any insider**
List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $8,575. (This amount may be adjusted on 4/01/28 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. *Insiders* include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

■ None.

| Insider's name and address<br>Relationship to debtor | Dates | Total amount of value | Reasons for payment or transfer |
|---|---|---|---|

**5. Repossessions, foreclosures, and returns**
List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller. Do not include property listed in line 6.

■ None

| Creditor's name and address | Describe of the Property | Date | Value of property |
|---|---|---|---|

**6. Setoffs**
List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

■ None

| Creditor's name and address | Description of the action creditor took | Date action was taken | Amount |
|---|---|---|---|

| **Part 3:** | **Legal Actions or Assignments** |
|---|---|

**7. Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits**
List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity—within 1 year before filing this case**.**

☐ None.

| | Case title<br>Case number | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|---|
| 7.1. | **Poplar Corridor Investments, LLC**<br>**v.**<br>**Apperson Crump PLC**<br>**2340106** | **FED** | **Shelby Co. General Sessions Court**<br>**P.O. Box 3824**<br>**Memphis, TN 38173** | ■ Pending<br>☐ On appeal<br>☐ Concluded |
| 7.2. | **Apperson Crump, PLC**<br>**v.**<br>**Michelle Wilson, Diane Wilson and**<br>**Battery Alliance, Inc.**<br>**CT-4177-21** | **Collection and counterclaim** | **Shelby County Circuit Court**<br>**140 Adams Ave**<br>**Rm 224**<br>**Memphis, TN 38103** | ■ Pending<br>☐ On appeal<br>☐ Concluded |
| 7.3. | **Simmons Bank**<br>**v.**<br>**Apperson Crump, PLC et al**<br>**25-1574** | **Collection** | **Shelby County Chancery Court** | ■ Pending<br>☐ On appeal<br>☐ Concluded |
| 7.4. | **Lawrence Properties and Investment, LLC**<br>**v.**<br>**Apperson Crump PLC et al**<br>**CT-2082-23** | **Forged deed utilized in real estate closing** | **Shelby County Circuit Court**<br>**140 Adams Ave**<br>**Rm 224**<br>**Memphis, TN 38103** | ■ Pending<br>☐ On appeal<br>☐ Concluded |

Official Form 207  **Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**  page **2**

Software Copyright (c) 1996-2025 Best Case, LLC - www.bestcase.com

UST APX 0034

Debtor  **Apperson Crump PLC**                                    Case number *(if known)* _____

| | Case title<br>Case number | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|---|
| 7.5. | **Villa et al**<br>**v.**<br>**Apperson Crump PLC et al**<br>**36,320** | **Wrongful distribution of wrongful death lawsuit settlement proceeds** | **Tipton County Chancery Court**<br>**Tipton County Courthouse** | ☐ Pending<br>☐ On appeal<br>■ Concluded |
| 7.6. | **Hailey Davis**<br>**v.**<br>**Jake Brown adn Apperson Crump, PLC** | **Mediation -- No lawsuit filed. Alleged errors and omissions** | **Mediation** | ☐ Pending<br>☐ On appeal<br>■ Concluded |
| 7.7. | **Stephanie Allen**<br>**v.**<br>**Mark Benfield, Steiner Feiger & Greene, PC** | **Mediation. Debtor executed a toling agreement but was not named as defendant in lawsuit. Claim was legal malpractice and resolved at mediation** | | ☐ Pending<br>☐ On appeal<br>■ Concluded |
| 7.8. | **David Villereal Galicia**<br>**v.**<br>**Michael Fearnley and Apperson Crump, PLC**<br>**2229310** | **Client refund of monies paid** | **Shelby Co. General Sessions Court**<br>**P.O. Box 3824**<br>**Memphis, TN 38173** | ☐ Pending<br>☐ On appeal<br>■ Concluded |
| 7.9. | **Apperson Crump PLC**<br>**v.**<br>**Michelle Wilson, Diane Wilson adn**<br>**Battery Alliance, Inc.**<br>**CT-4177-21** | **Suit for collection of unpaid attorney fees and expenses** | **Shelby County Circuit Court**<br>**140 Adams Ave**<br>**Rm 224**<br>**Memphis, TN 38103** | ■ Pending<br>☐ On appeal<br>☐ Concluded |
| 7.10. | **Rheta Negrete-Neal et al**<br>**v.**<br>**Apperson Crump, PLC et al**<br>**24-2285-TLP** | **Family members of Decedent assert claims to real property** | **United States District Court**<br>**Western District of TN** | ■ Pending<br>☐ On appeal<br>☐ Concluded |
| 7.11. | **Advocate Capital, Inc.**<br>**v.**<br>**Apperson Crump, PLC et al**<br>**25-1641-I** | **Injunction** | **Davidson County Chancery Court** | ■ Pending<br>☐ On appeal<br>☐ Concluded |

**8.  Assignments and receivership**

List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

■ None

---

| Part 4: | Certain Gifts and Charitable Contributions |
|---|---|

9.  **List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000**

■ None

| Recipient's name and address | Description of the gifts or contributions | Dates given | Value |
|---|---|---|---|

---

Official Form 207                    **Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**                    page **3**

Software Copyright (c) 1996-2025 Best Case, LLC - www.bestcase.com

UST APX 0035

| Debtor | *Apperson Crump PLC* | Case number *(if known)* | |
|---|---|---|---|

---

**Part 5:**   **Certain Losses**

10. **All losses from fire, theft, or other casualty within 1 year before filing this case.**

   ■ None

| Description of the property lost and how the loss occurred | Amount of payments received for the loss<br><br>If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received.<br><br>List unpaid claims on Official Form 106A/B *(Schedule A/B: Assets – Real and Personal Property)*. | Dates of loss | Value of property lost |
|---|---|---|---|

---

**Part 6:**   **Certain Payments or Transfers**

11. **Payments related to bankruptcy**
   List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

   ☐ None.

| | Who was paid or who received the transfer?<br>Address | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|---|
| 11.1. | *Teel & Gay, PLC*<br>*79 Stonebridge Blvd. Suite B*<br>*Jackson, TN 38305* | *$3750.00 pre-petition fees and $1738.00 court filing fee* | *11/13/25* | *$5,488.00* |
| | **Email or website address**<br>*www.tennesseefirm.com* | | | |
| | **Who made the payment, if not debtor?** | | | |

12. **Self-settled trusts of which the debtor is a beneficiary**
   List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device.
   Do not include transfers already listed on this statement.

   ■ None.

| Name of trust or device | Describe any property transferred | Dates transfers were made | Total amount or value |
|---|---|---|---|

13. **Transfers not already listed on this statement**
   List any transfers of money or other property - by sale, trade, or any other means - made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs. Include both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

   ■ None.

| Who received transfer?<br>Address | Description of property transferred or payments received or debts paid in exchange | Date transfer was made | Total amount or value |
|---|---|---|---|

**Part 7:**   **Previous Locations**

14. **Previous addresses**
   List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

   ■ Does not apply

---

Official Form 207       **Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**       page **4**

Software Copyright (c) 1996-2025 Best Case, LLC - www.bestcase.com

UST APX 0036

| Debtor | **Apperson Crump PLC** | Case number *(if known)* | |
|---|---|---|---|

| Address | Dates of occupancy From-To |
|---|---|

---

**Part 8:**    **Health Care Bankruptcies**

15. **Health Care bankruptcies**
Is the debtor primarily engaged in offering services and facilities for:
- diagnosing or treating injury, deformity, or disease, or
- providing any surgical, psychiatric, drug treatment, or obstetric care?

■   No. Go to Part 9.
☐   Yes. Fill in the information below.

| Facility name and address | Nature of the business operation, including type of services the debtor provides | If debtor provides meals and housing, number of patients in debtor's care |
|---|---|---|

---

**Part 9:**    **Personally Identifiable Information**

16. **Does the debtor collect and retain personally identifiable information of customers?**

■   No.
☐   Yes. State the nature of the information collected and retained.

17. **Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

☐   No. Go to Part 10.
■   Yes. Does the debtor serve as plan administrator?

     ☐ No Go to Part 10.
     ■ Yes. Fill in below:

| Name of plan | Employer identification number of the plan |
|---|---|
| **Apperson Crump PLC Profit Sharing Plan** | EIN:   **62-0292839** |

Has the plan been terminated?
■ No
☐ Yes

---

**Part 10:**    **Certain Financial Accounts, Safe Deposit Boxes, and Storage Units**

18. **Closed financial accounts**
Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold, moved, or transferred?
Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

☐ None

| | Financial Institution name and Address | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|---|
| 18.1. | **Simmons Bank 6075 Poplar Ave. Suite 900 Memphis, TN 38119** | **XXXX-4525** | ■ Checking ☐ Savings ☐ Money Market ☐ Brokerage ☐ Other__ | **Payroll account closed 10/16/25** | **$153.87** |

---

Software Copyright (c) 1996-2025 Best Case, LLC - www.bestcase.com

UST APX 0037

Debtor **Apperson Crump PLC**                                    Case number *(if known)* _____

| | Financial Institution name and Address | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|---|
| 18.2. | **Simmons Bank**<br>**6075 Poplar Ave.**<br>**Suite 900**<br>**Memphis, TN 38119** | **XXXX-3095** | ■ Checking<br>☐ Savings<br>☐ Money Market<br>☐ Brokerage<br>☐ Other__ | **Recording account closed 10/16/25** | **$1,792.48** |
| 18.3. | **Simmons Bank**<br>**6075 Poplar Ave.**<br>**Suite 900**<br>**Memphis, TN 38119** | **XXXX-3319** | ■ Checking<br>☐ Savings<br>☐ Money Market<br>☐ Brokerage<br>☐ Other__ | **Real Estate Trust account -- THDA closed 10/16/25** | **$5.25** |
| 18.4. | **First Community Bank/Story Financial** | **XXXX-5500** | ■ Checking<br>☐ Savings<br>☐ Money Market<br>☐ Brokerage<br>☐ Other__ | **IOLTA Account closed 11/25/25** | **$0.00** |

19. **Safe deposit boxes**

List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

☐ None

| Depository institution name and address | Names of anyone with access to it<br>Address | Description of the contents | Does debtor still have it? |
|---|---|---|---|
| **Regions Bank**<br>**12845 Germantown Rd.**<br>**Germantown, TN 38138** | **All partners of Debtor** | **Client wills and documents.** | ☐ No<br>■ Yes |

20. **Off-premises storage**

List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

☐ None

| Facility name and address | Names of anyone with access to it | Description of the contents | Does debtor still have it? |
|---|---|---|---|
| **Shred Shop of Memphis**<br>**318 Collins St.**<br>**Memphis, TN 38112** | **Bruce S. Kramer** | **Old client files and personal documents** | ☐ No<br>■ Yes |

| Part 11: | Property the Debtor Holds or Controls That the Debtor Does Not Own |
|---|---|

21. **Property held for another**

List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

☐ None

---

Official Form 207                    **Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**                    page **6**

Software Copyright (c) 1996-2025 Best Case, LLC - www.bestcase.com

UST APX 0038

| Debtor | *Apperson Crump PLC* | Case number *(if known)* | |
|---|---|---|---|

| Owner's name and address | Location of the property | Describe the property | Value |
|---|---|---|---|
| *Various clients* | *First Horizon Real Estate Trust IOLTA* | *Client funds in IOLTA account* | *$215,126.74* |

| Owner's name and address | Location of the property | Describe the property | Value |
|---|---|---|---|
| *Client* | *Community Bank IOLTA account* | *Client funds* | *$3,993.32* |

## Part 12: Details About Environment Information

For the purpose of Part 12, the following definitions apply:

*Environmental law* means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

*Site* means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

*Hazardous material* means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

22. **Has the debtor been a party in any judicial or administrative proceeding under any environmental law?** Include settlements and orders.

   ■ No.
   ☐ Yes. Provide details below.

| Case title Case number | Court or agency name and address | Nature of the case | Status of case |
|---|---|---|---|

23. **Has any governmental unit otherwise notified the debtor that the debtor may be liable or potentially liable under or in violation of an environmental law?**

   ■ No.
   ☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|

24. **Has the debtor notified any governmental unit of any release of hazardous material?**

   ■ No.
   ☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|

## Part 13: Details About the Debtor's Business or Connections to Any Business

25. **Other businesses in which the debtor has or has had an interest**
   List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case. Include this information even if already listed in the Schedules.

   ■ None

| Business name address | Describe the nature of the business | Employer Identification number Do not include Social Security number or ITIN. Dates business existed |
|---|---|---|

26. **Books, records, and financial statements**
   26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.
   ☐ None

| Name and address | Date of service From-To |
|---|---|

| Official Form 207 | Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy | page **7** |
|---|---|---|

Software Copyright (c) 1996-2025 Best Case, LLC - www.bestcase.com

UST APX 0039

Debtor **Apperson Crump PLC**                                    Case number *(if known)* _____

| Name and address | Date of service From-To |
|---|---|
| 26a.1. | ***ATA Advisory LLC***<br>***6525 N. Quail Hollow Rd***<br>***Suite 500***<br>***Memphis, TN 38120*** | ***3/6/24 to present*** |
| 26a.2. | ***Whitehorn Tankersley & Davis PLLC***<br>***670 Oakleaf Office Lane***<br>***Memphis, TN 38117*** | ***4/2004 to 3/6/24*** |

26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

☐ None

| Name and address | Date of service From-To |
|---|---|
| 26b.1. | ***Fidelity National Title*** | ***Audited real estate accounts*** |

| Name and address | Date of service From-To |
|---|---|
| 26b.2. | ***Old Republic Title Company*** | ***audited real estate accounts*** |

26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

■ None

| Name and address | If any books of account and records are unavailable, explain why |
|---|---|

26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

☐ None

| Name and address | |
|---|---|
| 26d.1. | ***Simmons Bank***<br>***6075 Poplar Avenue***<br>***Suite 900***<br>***Memphis, TN 38119*** |
| 26d.2. | ***Advocate Capital***<br>***ACF 2006 Corp***<br>***29629 Network Place***<br>***Chicago, IL 60673*** |
| 26d.3. | ***Guaranty Bank***<br>***210 Hayden St.***<br>***P.O. Drawer 657***<br>***Belzoni, MS 39038*** |
| 26d.4. | ***Bank Tennessee***<br>***30 North Second Street***<br>***Memphis, TN 38103*** |

27. **Inventories**

Have any inventories of the debtor's property been taken within 2 years before filing this case?

☐ No

■ Yes. Give the details about the two most recent inventories.

Official Form 207       **Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**       page **8**

Software Copyright (c) 1996-2025 Best Case, LLC - www.bestcase.com

UST APX 0040

Debtor **Apperson Crump PLC**      Case number *(if known)* _____

| | Name of the person who supervised the taking of the inventory | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
|---|---|---|---|
| 27.1. | **Jon Smith** | | **Inventory of office equipment -- $50,945.00** |

| | Name and address of the person who has possession of inventory records |
|---|---|
| | **Debtor** |

28. **List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.**

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| **Jon W. Smith** | **54 Robett Dell Cv<br>Memphis, TN 38117** | **Member and President** | **25** |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| **Bruce M. Smith** | **396 Wellington Cove<br>Memphis, TN 38117** | **Member and Ethics Officer** | **25** |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| **Bruce S. Kramer** | **4614 Katy Dr.<br>New Smyrna Beach, FL 32169** | **Member** | **25** |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| **Thomas R. Buckner** | **1719 Harbert Avenue<br>Memphis, TN 38104** | **Member** | **25** |

29. **Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?**

■ No
☐ Yes. Identify below.

30. **Payments, distributions, or withdrawals credited or given to insiders**
Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

☐ No
■ Yes. Identify below.

| | Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
|---|---|---|---|---|
| 30.1. | **Thomas R. Buckner<br>1719 Harbert Avenue<br>Memphis, TN 38104** | **$63,333.33** | | **Draw** |

| | Relationship to debtor |
|---|---|
| | **Member** |

Official Form 207      **Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**      page **9**

UST APX 0041

Debtor **Apperson Crump PLC**                                      Case number *(if known)* _____

| | Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
|---|---|---|---|---|
| 30.2. | **Jon W. Smith**<br>**54 Robert Dell Cv**<br>**Memphis, TN 38117** | **$90,833,33 draw and $32,082.93 guaranteed payment as President** | | *Draw and guaranteed payment* |
| | **Relationship to debtor**<br>**Member and President** | | | |
| 30.3. | **Bruce M. Smith**<br>**396 Wellington Cove**<br>**Memphis, TN 38117** | **$79,833.33 draw and $25,208.37 guaranteed payment Ethics Officer** | | *Draw and Guaranteed payment* |
| | **Relationship to debtor**<br>**Member and Ethics Officer** | | | |
| 30.4. | **Bruce S. Kramer**<br>**4614 Katy Dr.**<br>**New Smyrna Beach, FL 32169** | **$41,250.00 guaranteed payment** | | *Guaranteed payment* |
| | **Relationship to debtor**<br>**Member** | | | |

31. **Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

■ No
☐ Yes. Identify below.

| Name of the parent corporation | Employer Identification number of the parent corporation |
|---|---|

32. **Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

■ No
☐ Yes. Identify below.

| Name of the pension fund | Employer Identification number of the pension fund |
|---|---|

---

**Part 14:** **Signature and Declaration**

**WARNING** -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.
18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this *Statement of Financial Affairs* and any attachments and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on      **December  1, 2025**

**/s/ Jon Smith**                                          **Jon Smith**
Signature of individual signing on behalf of the debtor      Printed name

Position or relationship to debtor      **Managing partner**

**Are additional pages to Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy (Official Form 207) attached?**
■ No
☐ Yes

Official Form 207                    **Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**                    page **10**

Software Copyright (c) 1996-2025 Best Case, LLC - www.bestcase.com

UST APX 0042

B2030 (Form 2030) (12/25)

# United States Bankruptcy Court
## Western District of Tennessee

In re  **Apperson Crump PLC**

Debtor(s)

Case No.

Chapter  **11**

# DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR(S)

1. Pursuant to 11 U .S.C. § 329(a) and Fed. Bankr. P. 2016(b), I certify that I am the attorney for the above named debtor(s) and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

   For legal services, I have agreed to accept                                                     $  **3,750.00**

   Prior to the filing of this statement I have received                                   $  **3,750.00**

   Balance Due                                                                                                        $  **0.00**

2. The source of the compensation paid to me was:

   ☐ Debtor      ☒ Other (specify):   **Retainer**

3. The source of compensation to be paid to me is:

   ☒ Debtor      ☐ Other (specify):

4. ☒ I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm.

   ☐ I have agreed to share the above-disclosed compensation with a other person or persons who are not members or associates of my law firm. A copy of the agreement, together with a list of the names of the people sharing in the compensation is attached.

5. Subject to any applicable local rule or court order, in return for the above-disclosed fee, I have agreed to render legal service for the following aspects of the bankruptcy case, except as excluded in Section 6:

   a. Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
   b. Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
   c. Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;
   d. Representation of the debtor in adversary proceedings and other contested bankruptcy matters;
   e. [List other services that counsel has agreed to provide]

6. By agreement with the debtor(s), the above-disclosed fee does not include the following service:

---

### CERTIFICATION

I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding.

**December  1, 2025**

*Date*

/s/ C. Jerome Teel Jr.

**C. Jerome Teel Jr. 016310**
*Signature of Attorney*
**Teel & Gay, PLC**
**79 Stonebridge Blvd.**
**Suite B**
**Jackson, TN 38305**
**(731)424-3315  Fax: (731)424-3501**
**jerome@tennesseefirm.com**
*Name of law firm*

---

Software Copyright (c) 1996-2025 Best Case, LLC - www.bestcase.com

UST APX 0043

# United States Bankruptcy Court
## Western District of Tennessee

In re   **Apperson Crump PLC**

Debtor(s)

Case No.

Chapter   **11**

## LIST OF EQUITY SECURITY HOLDERS

Following is the list of the Debtor's equity security holders which is prepared in accordance with rule 1007(a)(3) for filing in this Chapter 11 Case

| Name and last known address or place of business of holder | Security Class | Number of Securities | Kind of Interest |
|---|---|---|---|
| **Bruce M. Smith**<br>**396 Wellington Cove**<br>**Memphis, TN 38117** | | | |
| **Bruce S. Kramer**<br>**4614 Katy Dr.**<br>**New Smyrna Beach, FL 32169** | | | |
| **Jon W. Smith**<br>**54 Robert Dell Cove**<br>**Memphis, TN 38117** | | | |
| **Thomas R. Buckner**<br>**1719 Harbert Avenue**<br>**Memphis, TN 38104** | | | |

## DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF CORPORATION OR PARTNERSHIP

I, the **Managing partner** of the corporation named as the debtor in this case, declare under penalty of perjury that I have read the foregoing List of Equity Security Holders and that it is true and correct to the best of my information and belief.

Date   **December 1, 2025**

Signature   **/s/ Jon Smith**

**Jon Smith**

*Penalty for making a false statement of concealing property:* Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C. §§ 152 and 3571.

Sheet 1 of 1 in List of Equity Security Holders

UST APX 0044

# United States Bankruptcy Court
## Western District of Tennessee

In re    **Apperson Crump PLC**          Case No. _____

                 Debtor(s)       Chapter    **11** _____

# VERIFICATION OF CREDITOR MATRIX

I, the Managing partner of the corporation named as the debtor in this case, hereby verify that the attached list of creditors is true and correct to the best of my knowledge.

Date:    **December  1, 2025**            **/s/ Jon Smith**

                                     **Jon Smith**/**Managing partner**

                                     Signer/Title

UST APX 0045

Adams and Reese LLP
Dept 5208
P.O. Box 2153
Birmingham, AL 35287

Adan Technologies
9057 Valley Crest Lane
#102
Germantown, TN 38138

Advocate Capital
P.O. Box 306370
Nashville, TN 37230

Advocate Capital, Inc.
ACF 2006 Corp
29629 Network Place
Chicago, IL 60673

Alpha Reporting Corporation
236 Adams Avenue
Memphis, TN 38103

Apperson Crump Profit Sharing Plan
Bruce M. Smith, Trustee
Thomas R. Buckner, Trustee
6000 Poplar Ave Suite 150
Memphis, TN 38119

Attila Kerner M.C.
9449 Dennis Grove Court
Saint Louis, MO 63126

Bank of America
P.O. Box 660441
Dallas, TX 75266-0441

BankTennessee
Downtown Memphis
30 North Second Street
Memphis, TN 38103

Blue Sky Couriers
830 S. Bellevue Blvd
Memphis, TN 38104

Boyle Insurance Agency
P.O. Box 17800
Memphis, TN 38187

Brian Drolet MD
1611 18th Avenue
Nashville, TN 37212

UST APX 0046

Brooks Court Reporting Inc.
402 BNA Dr.
Suite 108
Nashville, TN 37217

Bruce M. Smith
396 Wellington Cove
Memphis, TN 38117

Bruce M. Smith
396 Wellington Cv
Memphis, TN 38117

Bruce S. Kramer
4614 Katy Dr.
New Smyrna Beach, FL 32169

Bruce S. Kramer
4614 Katy Dr.
New Smyrna Beach, FL 32169

Business Card
Bank of America
P.O. Box 15796
Wilmington, DE 19850-5184

CCH Prosystem FX
P.O. Box 4307
Carol Stream, IL 60197-4307

Cheri Sullivan, CSR, RPR
111 Red Acres Place
Memphis, TN 38111

CIOX Health
P.O. Box 409740
Atlanta, GA 30384

CNA
Deductible Recovery Group
P.O. Box 6065-02
Hermitage, PA 16148-1065

CNA
P.O. Box 8317
Chicago, IL 60680-8317

CNA Insurance
P.O. Box 74007619
Chicago, IL 60674-7619

Connie Cook
5430 Hayes Rd.
Arlington, TN 38002

UST APX 0047

Continental Insurance Company
CNA Cashier Team
P.O. Box 8317
Chicago, IL 60680-8317

EMG Clinics of Tennessee
PO Box 3488 Dept. 05-220
Tupelo, MS 38803-3488

Fedex
P.O. Box 660481
Dallas, TX 75266-0481

FedEx ERS
P.O. Box 371741
Pittsburgh, PA 15250-7741

Fidelity National Title
6060 Poplar Avenue
Suite LL-37
Memphis, TN 38119

Flippin Law Firm
1302 Main Street
P.O. Box 160
Humboldt, TN 38343

Glassman, Wyatt, Tuttle & Cox PC
26 N. 2nd St
Memphis, TN 38103

Guaranty Bank and Trust
210 Hayden St
PO Drawer 657
Belzoni, MS 39038

Harry Rein M.D., J.D.
1877 Wingfield Dr.
Longwood, FL 32779

Huseby Global Litigation
P.O. Box 6180
Hermitage, PA 16148-0922

Internal Revenue Service
Insolvency Section
801 Broadway, MDP 146
Nashville, TN 37203

Internal Revenue Service
P.O. Box 9941, Stop 6552
Ogden, UT 84409

UST APX 0048

Internal Revenue Service
Insolvency Section
801 Broadway, MDP 146
Nashville, TN 37203

Internal Revenue Service
P.O Box 219690
Kansas City, MO 64121-9890

IPFS Corporation
24722 Network Place
Chicago, IL 60673

IRS
P.O. Box 7346
Philadelphia, PA 19101-7346

IRS
P.O. Box 7346
Philadelphia, PA 19101-7346

Jennifer Mason
8193 Newell Road
Lake Cormorant, MS 38641

Jon W. Smith
54 Robert Dell Cv
Memphis, TN 38117

JP Morgan Chase Bank
300 S. Riverside Plaza
IL-I-0196
Chicago, IL 60606

Konica Minolta
P.O. Box 550599
Jacksonville, FL 32255-0599

Konica Minolta
21146 Network Place
Chicago, IL 60673-1211

Konica Minolta
P.O. Box 550599
Jacksonville, FL 32255-0599

Konica Minolta Premier Finance
P.O. Box 105743
Atlanta, GA 30348-5743

L. Clayton Culpepper III
Evans Petree, P.C.
1715 Aaron Brenner Dr.
Suite 800
Memphis, TN 38120

UST APX 0049

Level 3 Communications
Century Link
P.O. Box 910182
Denver, CO 80291-0182

Lexis Nexis Matthew Bender
P.O. Box 733106
Dallas, TX 75373-3106

Lexitas
P.O. Box 734298
Dept 2038
Dallas, TX 75373-4298

Lisa C. Vaughn, RPR, CSR
4570 Sequoia Road
Memphis, TN 38117

Lu Anne Dudley, CSR, RPR
P.O. Box 1631
Cordova, TN 38018

Matthew Bradsher
9393 Laurel Hill Dr.
Lakeland, TN 38002

Melissa Jaynes
2286 Glencliff Dr
Memphis, TN 38119

MEMPHIS COMMUNICATIONS CORPORATION
PO BOX 770389
Memphis, TN 38177

MEMPHIS COMMUNICATIONS CORPORATION
PO BOX 770389
Memphis, TN 38177

Poplar Corridor Investments, LLC
5900 Poplar Ave.
Suite 100
Memphis, TN 38119

Poplar Corridor Investments, LLC
5900 Poplar Ave.
Suite 100
Memphis, TN 38119

Positively Balanced LLC
3662 Cedarcrest Road
Suite 200
Acworth, GA 30101

UST APX 0050

Professional Process Servers, Inc.
5240 Mendenhall Park Place
Memphis, TN 38115

Progressive Private Process
P.O. Box 343058
Memphis, TN 38184

R. Lee Webber
Martin Tate Morrow & Marston, P.C.
International Place, Tower II
6410 Poplar Ave, Suite 900
Memphis, TN 38119

Relx Inc
D/B/A Lexis Nexis
P.O. Box 733106
Dallas, TX 75373-3106

Roger G. Jones
Bradley Arant Boult Cummings LLP
1221 Broadway
Suite 2400
Nashville, TN 37203

Ronald G. Steen
Thompson Burton PLLC
6100 Tower Circle
Suite 200
Franklin, TN 37067

Samantha E. Cohen, RPR
239 South Barksdale Street
Memphis, TN 38104

Simmons Bank
Central Loan Administration
P.O. Box 7009
Pine Bluff, AR 71611

State of Tennessee
Office of the Attorney General
PO Box 20207
Nashville, TN 37202-0207

State of Tennessee
Department of Labor and Workforce Dev
220 French Landing Drive
Nashville, TN 37241

The Security Title Guarantee Corporation
Attn: John Kosogof
1099 Winterson Rd.
Suite 290
Linthicum Heights, MD 21090

UST APX 0051

Thomas R. Buckner
1719 Harbert Avenue
Memphis, TN 38104

Thomas R. Buckner
1719 Harbert Ave.
Memphis, TN 38104

Thomson Reuters
West Payment Center
P.O. Box 6292
Carol Stream, IL 60197-6292

Track & Trace Legal Services
P.O. Box 343058
Bartlett, TN 38184

Vanderbilt Mortgage and Finance, Inc
500 Alcoa Trail
Maryville, TN 37804

Various clients

Verisma
P.O. Box 201327
Dallas, TX 75320-1327

Veritext
P.O. Box 71303
Chicago, IL 60694-1303

Virgina Dodge, RDR, CRR, LCR
3046 Elliott Drive
Mount Juliet, TN 37122-0606

Wells Fargo Vendo Fin Serv
PO Box 105743
Atlanta, GA 30348-5710

UST APX 0052

# United States Bankruptcy Court
## Western District of Tennessee

In re **Apperson Crump PLC**

Debtor(s)

Case No. _____

Chapter **11** _____

### CORPORATE OWNERSHIP STATEMENT (RULE 7007.1)

Pursuant to Federal Rule of Bankruptcy Procedure 7007.1 and to enable the Judges to evaluate possible disqualification or recusal, the undersigned counsel for ___**Apperson Crump PLC**___ in the above captioned action, certifies that the following is a (are) corporation(s), other than the debtor or a governmental unit, that directly or indirectly own(s) 10% or more of any class of the corporation's(s') equity interests, or states that there are no entities to report under FRBP 7007.1:

■ None [*Check if applicable*]

**December  1, 2025**

Date

**/s/ C. Jerome Teel Jr.**

**C. Jerome Teel Jr. 016310**

Signature of Attorney or Litigant

Counsel for    **Apperson Crump PLC**

**Teel & Gay, PLC**

**79 Stonebridge Blvd.**
**Suite B**
**Jackson, TN 38305**
**(731)424-3315 Fax:(731)424-3501**
**jerome@tennesseefirm.com**

UST APX 0053

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| IN RE: | ) | **Chapter 11** |
| | ) | |
| **APPERSON CRUMP, PLC,** | ) | **Case No. 25-11660** |
| | ) | |
| **Debtor.** | ) | **Hon. Jimmy L. Croom** |

---

**MOTION FOR RELIEF FROM STAY AND ABANDONMENT**

---

Comes now Advocate Capital, Inc. ("Advocate" or "Movant"), by and through counsel, and respectfully moves the Court for relief from the automatic stay and abandonment pursuant to 11 U.S.C. § 362(d) and § 554 and to waive the stay of order provided for in Rule 4001(a)(4), Federal Rules of Bankruptcy Procedure. In support of this Motion, Advocate states as follows:

**FACTUAL AND PROCEDURAL BACKGROUND**

1. Movant and Apperson Crump, PLC ("Debtor" or "Borrower") executed that Master Loan and Security Agreement in favor of Advocate dated April 5, 2013. (*See* Ex. A.) The Master Loan and Security Agreement was amended multiple times, with Debtor executing Amended and Restated Master Loan and Security Agreements (together with the original Master Loan and Security Agreement and all amendments thereto, the "**Loan Agreements**") dated April 5, 2013, April 5, 2014, April 5, 2015, April 5, 2016, April 5, 2018, April 5, 2020, April 5, 2021, April 5, 2023, April 5, 2025, and August 20, 2025. (*See* Ex. A, B.)

2. Pursuant to the Loan Agreements, Advocate made various loans (the "**Loans**") to Borrower. The Loans matured and became due and payable in full on Lender's demand in its sole and absolute discretion (the "**Maturity Date**"). Borrower's failure to repay the Loans on the

- 1 -

4931-7710-6055.2

UST APX 0054

Maturity Date constituted an Event of Default under the Loan Agreements entitling Advocate to exercise its remedies thereunder. (*See* Ex. A at 10; Ex. B at 9.)

3.  Borrower is a law firm that was engaged in the representation of clients in practice areas that include domestic relations and family law, estate planning, labor and employment law, and personal injury. Under the Loan Agreements, Borrower granted Advocate a continuing security interest in various collateral including, but not limited to, the following (the "**Collateral**"):

> All accounts, instruments, chattel paper, general intangibles, payment intangibles (all as defined in Article 9 of the Code), and all similar rights that Borrower may have of every nature and kind, including specifically and without limitation, all of Borrower's rights to receive payment or otherwise, for legal and other services rendered and to be rendered, and for costs and expenses advanced and to be advanced, and all other rights and interest that Borrower may have in and with respect to each and every Client Matter.

*(See* Ex. A at 7; Ex. B at 6.) Advocate perfected its security interest in the Collateral by recording a financing statement and certain continuation statements with the Tennessee Secretary of State. (*See* Ex. C; Ex. D.) The Loan Agreements provide that Advocate shall have all of the rights and remedies generally available to a secured party under the Uniform Commercial Code (the "**UCC**") as adopted in the State of Tennessee. (*See* Ex. A at 11; Ex. B at 10.)

4.  All attorneys' fees and expense reimbursements now or hereafter owed to Borrower are Advocate's Collateral. As a result of Borrower's default, on November 12, 2025, Advocate sent a letter demanding that Borrower hold 100% of all cash proceeds of Advocate's Collateral in trust for Advocate's benefit and that Borrower turn over 100% of all cash proceeds of Advocate's Collateral to Advocate. (*See* Ex. E.) Despite Advocate's demand, Borrower failed or refused to turn over Advocate's Collateral.

- 2 -

4931-7710-6055.2

UST APX 0055

5.      On November 24, 2025, Advocate filed a Verified Complaint in the Chancery Court for Davidson County, Tennessee, against Apperson and other parties.  (Docket No. 1 at 35.)  This precipitated the Debtor's filing its Chapter 11 petition in this Court.

6.      The Debtor admits that Advocate holds a claim in the amount of $1,167,207.77 that is not contingent, unliquidated or disputed, and that all Debtor's accounts, instruments and Client Matters are subject to Advocate's lien.  (Docket No. 1 at 16.)  The Debtor states that the value of its accounts receivable, which is Advocate's Collateral, totals $560,886.10.  (Id. at 11.)

7.      On December 17, 2025, this Court entered the Agreed Interim Order Authorizing the Use of Cash Collateral Pursuant to 11 U.S.C. § 363 (the "First Interim Cash Collateral Order") (Docket No. 28), which included the following preliminary finding of fact:

> Advocate holds a validly perfected security interest in all Debtor's accounts, general intangibles, payment intangibles (as those terms are defined in the Uniform Commercial Code as adopted in Tennessee (the "UCC") and all similar rights that Debtor may have of every nature and kind, including specifically and without limitation all of Debtor's rights to receive payment or otherwise, for legal and other services rendered and to be rendered, and for costs and expenses advanced and to be advanced, including cash collateral, as that term is defined in Section 363(a) of the Bankruptcy Code (the "Cash Collateral").

(Docket No. 28 at ¶ 1.)

8.      The First Interim Cash Collateral Order granted Advocate a replacement lien as follows:

> To secure the aggregate amount of all Cash Collateral used by the Debtor, whether pursuant to this Interim Order or otherwise, and to secure any diminution in the value of the Advocate's interest in its collateral, Advocate is hereby granted, without need of further ract or documentation, a first priority replacement lien and security interest under Sections 361(2) and 363(e) of the Bankruptcy Code, on all assets of the Debtor, including, without limitation, all accounts, rights to payment and general intangibles as those terms

- 3 -

4931-7710-6055.2

UST APX 0056

are defined in the UCC) acquired or created by the estate or the Debtor after the Petition Date and all proceeds thereof.

(Docket No. 28 at ¶ 3.)

9. After filing the Chapter 11 petition that initiated the instant case, the Debtor was unable to obtain malpractice insurance coverage and, thus, has ceased operations.

## RELIEF REQUESTED

10. Advocate respectfully requests that the Court grant it relief from the automatic stay pursuant to 11 U.S.C. § 362(d) and abandonment pursuant to 11 U.S.C. § 554 to permit the exercise of its remedies with respect to the Collateral.

## BASIS FOR REQUESTED RELIEF

11. "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . such as by terminating, annulling, modifying, or conditioning such stay . . . (2) with respect to a stay of an act against property under subsection (a) of [Bankruptcy Code Section 362], if – (A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization . . ." 11 U.S.C. § 362(d)(2).

12. "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . such as by terminating, annulling, modifying, or conditioning such stay . . . (1) for cause . . ." 11 U.S.C. § 362(d)(1). Cause is an intentionally broad and flexible concept that affords courts the latitude to respond in equity to fact-intensive situations. See Georgia v. Bell (In re Bell), 215 B.R. 266, 275 (Bankr. N.D. Ga. 1997); see also In re Cont'l Air Lines, Inc., 61 B.R. 758, 780 (S.D. Tex. 1986) ("In sum, a bankruptcy court must be guided by equitable principles in exercising its discretion to enforce or modify the automatic stay.") "Because there is no clear definition of what constitutes 'cause,' discretionary relief from the stay must be

- 4 -

4931-7710-6055.2

UST APX 0057

determined on a case by case basis." In re Delaney-Morin, 304 B.R. 365, 369 (Bankr. App. 9th Cir. 2003) (citation omitted). Once a movant makes a *prima facie* case that cause exists to lift the stay, the burden shifts to the debtor. See 11 U.S.C. § 362(g)(2).

13. "In any hearing under subsection (d) . . . of this section concerning relief from the stay of any act under subsection (a) of this section – (1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and (2) the party opposing such relief has the burden of proof on all other issues." 11 U.S.C. § 362(g).

14. The Debtor does not have equity in the Collateral. "Equity is the value, above all secured claims against the property, that can be realized from the sale of the property for the benefit of the unsecured creditors." Stephens Indus., Inc. v. McClung, 789 F.2d 386, 392 (6th Cir. 1986) (internal quotation marks and ellipsis omitted) (quoting In re Mellor, 734 F.2d 1396, 1400 n. 2 (9th Cir. 1984)). The Debtor admits that Advocate holds a claim in the amount of $1,167,207.77 that is not contingent, unliquidated or disputed, and that all Debtor's accounts, instruments and Client Matters are subject to Advocate's lien. (Docket No. 1 at 16.) The Debtor admits that the value of the Collateral is $560,886.10. (Id. at 11.) There is no equity in the Collateral. See 11 U.S.C. § 362(d)(2)(A).

15. "Once the movant under Section 362(d)(2) establishes that he is an undersecured creditor, it is the burden of the debtor to establish that the collateral at issue is 'necessary to an effective reorganization." United Savings Ass'n v. Timbers of Inwood Forest, 484 U.S. 365, 375 (1987); see also 11 U.S.C. § 362(g). "What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization that is in prospect." Id. at 375-76. "[T]here must be a reasonable possibility of a successful reorganization within a reasonable time." Id. at

- 5 -

4931-7710-6055.2

UST APX 0058

376 (internal quotation marks omitted). The Debtor has not made and cannot make such a showing. Indeed, the Debtor cannot demonstrate that the Collateral is necessary to an effective reorganization because the Debtor has been unable to obtain malpractice insurance coverage and, thus, has ceased operations.

16. Based on Debtor's lack of equity in the Collateral and inability to reorganize, and for other cause, the Court should grant Advocate relief from the automatic stay. See 11 U.S.C. § 362(d)(1), (2).

17. Advocate further states that the Court should order the abandonment of the Collateral pursuant to 11 U.S.C. § 554(b) because the Collateral is burdensome to the estate or of inconsequential value and benefit to the estate. See In re Stetson & Assocs., Inc., 330 B.R. 613, 624 (Bankr. E.D. Tenn. 2005) ("'[W]here the estate has no equity in a particular property, and the estate is to be liquidated, abandonment will virtually always be appropriate because no unsecured creditor could benefit from its administration.'") (internal citation omitted).

18. Advocate requests that the Court provide that the order granting this Motion be effective immediately notwithstanding the provisions of Rule 4001(a)(4), Federal Rules of Bankruptcy Procedure.

WHEREFORE, Advocate Capital, Inc. respectfully requests that the Court:

1. Grant Advocate relief from the automatic stay with respect to the Collateral;

2. Order the abandonment of the Collateral;

3. Order that the relief granted by this Motion be effective immediately; and

4. Grant such other and further relief as is just and appropriate.

- 6 -

4931-7710-6055.2

UST APX 0059

DATED: January 15, 2026

Respectfully submitted,


/s/ *Austin L. McMullen*
Roger G. Jones (BPR #011550)
Austin L. McMullen (BPR #020877)
BRADLEY ARANT BOULT CUMMINGS LLP
1221 Broadway, Suite 2400
Nashville, Tennessee 37203
Phone: (615) 252-2307
amcmullen@bradley.com

*Attorneys for Advocate Capital, Inc.*


## CERTIFICATE OF SERVICE

I hereby certify that on this the 15th day of January, 2026, I have cause a true and correct copy of the foregoing to be sent by electronic delivery to all parties consenting to service through the Court's CM/ECF system and by U.S. Mail, postage pre-paid, parties shown on the attached mailing matrix.

/s/ *Austin L. McMullen*
Austin L. McMullen

- 7 -

4931-7710-6055.2

UST APX 0060

A

Multi-State

## MASTER LOAN AND SECURITY AGREEMENT

| Borrower: | Lender: |
|---|---|
| **Apperson Crump PLC** | **Advocate Capital, Inc., or its assign** |
| 6070 Poplar Avenue, Suite 600 | One Vantage Way; Suite C-165 |
| Memphis, TN 38119 | Nashville, TN 37228 |

**Date: 4/5/2013**

This **MASTER LOAN AND SECURITY AGREEMENT** is entered into by and between the above-named Borrower and Advocate Capital, Inc. as Lender.

**FOR VALUABLE CONSIDERATION RECEIVED**, Borrower, Lender, and each Guarantor unconditionally agree as follows:

**DEFINITIONS.** The following terms shall have the following meanings when used in this Agreement.

**Advance.** The term "Advance" refers to each and every advance of funds, extension of credit, and other credit accommodation as provided under this Agreement that Lender may now or in the future extend to Borrower.

**Agreement.** The term "Agreement" refers to this Master Loan and Security Agreement, as this Agreement may be amended or modified from time to time, together with all exhibits, addenda, and schedules attached or to be attached to this Agreement.

**Borrower.** The term "Borrower" refers to the Borrower or Borrowers named above, and each Successor Borrower. Each Borrower and Successor Borrower are sometimes hereinafter individually, collectively and interchangeably referred to as "Borrower."

**Borrower Attorneys.** The term "Borrower Attorneys" refers to each attorney who practices law as an owner or employee of Borrower.

**Client.** The term "Client" refers to each person and entity for which Borrower performs legal and other services.

**Client Matter.** The term "Client Matter" refers to each present and future undertaking and/or engagement for legal and other services performed and to be performed by Borrower and by Borrower Attorneys and non-attorney personnel, of every nature and kind without limitation, and whether in the form of assertion or defense of legal claims, or otherwise, and whether or not the subject of litigation, arbitration, mediation or other contested controversy.

**Case Expense Advance.** The term "Case Expense Advance" refers to an Advance made in connection with a particular Client Matter.

**Code.** The term "Code" refers to the Uniform Commercial Code as adopted in the State of Tennessee.

**Collateral.** The term "Collateral" shall have the meaning provided in the "Description of Collateral" section hereof.

**Event of Default.** The term "Event of Default" shall have the meaning defined in this Agreement and in each Related Document, as applicable.

UST APX 0061

**Gross Amount Advanced.** The term "Gross Amount Advanced" refers to the total amount of each Advance made under this Agreement, inclusive of Origination Fees withheld by Lender from the cash amount actually advanced to Borrower or to others on Borrower's behalf, as applicable.

**Guarantor.** The term "Guarantor" refers individually, collectively and interchangeably to each person, firm, corporation, or other entity guaranteeing payment and performance of the Obligations.

**Guaranty.** The term "Guaranty" refers to any agreement under which a Guarantor guarantees payment and performance of any Borrower Obligation.

**Lender.** The term "Lender" refers to Advocate Capital, Inc., its successors and assigns, and to each subsequent holder of any Borrower Obligation.

**Maturity Date.** The term "Maturity Date" means the first to occur of (I) the first anniversary date following the execution of this Agreement (or such later alternate maturity date as agreed to by Lender in writing in its sole and absolute discretion from time to time), or (II) demand by Lender, in its sole and absolute discretion.

**Obligations.** The term "Obligations" refers to the Gross Amount Advanced and all other indebtedness, obligations, and liabilities that Borrower may now and in the future owe to or incur in favor of Lender, whether direct or indirect, absolute or contingent, liquidated or unliquidated, and whether due or to become due, of every nature and kind whatsoever, in principal, interest, fees, costs, expenses and attorneys' fees, and including without limitation, all other indebtedness, obligations, fees, costs, and expenses for which Borrower may be responsible under this Agreement and under each Related Document, as applicable.

**Origination Fees.** The term "Origination Fees" shall have such meaning as described under the Fee section hereof.

**Out-of-Balance Event.** The term "Out-of-Balance Event" shall have the meaning provided in the Fee section hereof.

**Related Document.** The term "Related Document" refers to each and every additional agreement, addendum, guaranty, mortgage, deed of trust, security agreement, assignment of life insurance, financing statement, promissory note, request for advance, and all other instruments and documents in any way relating to any Obligation, or relating to any other relationship between the parties.

**Successor Borrower.** The term "Successor Borrower" refers to each person or entity that is a successor to the Borrower named above whether as a result of subsequent name change or reorganization, merger or consolidation, acquisition of assets, or continuation of business operations, in whole or in part, or in combination with others. Each Successor Borrower shall be fully obligated for payment and satisfaction of the above-named Obligations in favor of Lender, and all property and assets of the above-named Borrower acquired by Successor Borrower shall remain subject to Lender's security interest, together with all like property and assets then owned or later acquired by Successor Borrower. Each Successor Borrower shall be obligated under this Agreement as a "new debtor" within the context of Section 9-203(d) of the Code, to the same extent as the Borrower named above is originally bound. This definition does not abrogate the requirements of notice and/or approval arising under this Agreement regarding change of name, merger, or any other event by which a Successor Borrower may arise.

**Working Capital Advance.** The term "Working Capital Advance" refers to an Advance made to fund working capital needs of Borrower and which is not a Case Expense Advance.

**ADDITIONAL DEFINITIONS; CONSTRUCTION.** Terms not otherwise defined in this Agreement shall have the meanings provided in each Related Document, in the Code, and as used in the commercial practices of lenders in the State of Tennessee. In this Agreement, singular words include the plural, and the plural words include the singular. All amounts shall be payable in U.S. dollars.

**REQUESTS FOR ADVANCES.** So long as no Event of Default exists, and until such time as Lender may advise Borrower that Lender shall not consider further requests from Borrower for Advances under this

7/2806811.2
105253-000 4/5/2013

- 2 -

UST APX 0062

Agreement, Borrower may request Lender to extend credit in the form of Advances for either Case Expense Advances or Working Capital Advances. Requests for multiple Advances can be made at one time. Requests for Advances must be made in accordance with procedures established by Lender from time to time, and must be accompanied by whatever documentation and cost estimates Lender may then require. In the instance of every Case Expense Advance, Borrower shall provide Lender with name and address of the particular Client, and the identity of the particular Client Matter in connection with which the Advance is being requested. Requests for Advances may be submitted by any authorized representative of Borrower. Oral requests must be confirmed in writing.

**ABSOLUTE DISCRETIONARY NATURE OF LENDING RELATIONSHIP.** Lender shall have no obligation whatsoever, under this Agreement or otherwise, to make Advances to Borrower under any circumstance. Lender's decision to do so is and shall always be solely within Lender's sole and absolute judgment and discretion, and Lender may refuse to make Advances to Borrower, and may limit the purpose or purposes for which the proceeds of an Advance may be used, or may limit the aggregate amount of Advances, or the amount of any single Advance, for any or no reason, with or without cause. Nothing under this Agreement, under any statement or letter as to internally approved lending limits, or under an existing or future agreement or understanding between the parties, whether in writing or in the form of oral statements, or any conduct or course of dealing on the part of Lender, or on the part of its officers, employees, agents, or attorneys, may be construed by Borrower, or by Borrower's owners, or by any Guarantor, or by any court of law, to in any way obligate or commit Lender to make Advances to Borrower, or to amend, alter or in any way modify the discretionary nature of the lending relationship between Lender and Borrower. Borrower and each Guarantor recognize that the above provisions are essential, bargained-for covenants, which may not be waived or modified by Lender under any circumstance.

**FUNDING OF ADVANCES.** Lender may make Advance proceeds available in the form of a check or draft payable to Borrower's order, or in the form of a direct deposit into Borrower's designated deposit account with Borrower's bank. Lender additionally may elect to fund Advances by making payments directly to third-party payees designated by Borrower and as approved by Lender.

**USE OF ADVANCE PROCEEDS.** Case Expense Advances are advanced to reimburse Borrower for expenses already incurred and paid by Borrower in connection with a particular Client Matter. Working Capital Advances may be used for any lawful purpose to meet the working capital needs of Borrower. In no event may the proceeds of any Advance be used for personal purposes. Lender hereby reserves the right to further restrict the use of Advance proceeds in its sole and absolute discretion.

**PROMISE TO PAY.** Borrower (and each Successor Borrower, as applicable) unconditionally promises to timely pay to Lender all principal, interest, expenses, fees, charges and other amounts from time to time included in the Obligations.

**INTEREST.** Interest will be assessed on the unpaid principal balance of the Obligations, as outstanding from time to time, as follows:

(N/A) Fixed Interest. Interest will be assessed by application of a fixed interest rate of N/A% per annum.

(X) Prime-Based Variable Interest. Interest will be assessed on a variable basis by application of a variable interest rate per annum equal to the following:

(a) for Case Expense Advances, 3% in excess of the then applicable Prime Rate published from time to time in the Money Section of the New York regional edition of The Wall Street Journal, and

(b) for Working Capital Advances, N/A% in excess of the then applicable Prime Rate published from time to time in the Money Section of the New York regional edition of The Wall Street Journal.

The Prime-Based variable interest rate shall be adjusted from time to time on a daily basis based upon the Wall Street Journal Prime Rate. Lender reserves the right to substitute an alternative interest index should such rate no longer be published.

7/2806811.2
105253-000 4/5/2013

- 3 -

UST APX 0063

(N/A) LIBOR-Based Variable Interest. Interest will be assessed on a variable basis by application of a variable interest rate per annum equal to the following:

(a) for Case Expense Advances, N/A% in excess of the then applicable one-month LIBOR Rate published from time to time in the Money Rates Section of The Wall Street Journal Online, and

(b) for Working Capital Advances, N/A% in excess of the then applicable one-month LIBOR Rate published from time to time in the Money Rates Section of The Wall Street Journal Online.

The LIBOR-Based variable interest rate shall be adjusted each Friday based upon the one-month LIBOR Rate published in the Money Rates Section of The Wall Street Journal Online as of noon local time in Nashville, Tennessee. If a Friday is not a regular business day for Lender, the LIBOR-Based variable interest rate shall be adjusted as of the next preceding day that is a regular business day for Lender. Lender reserves the right to substitute an alternative interest index if such rate is no longer so published or if any of Lender's capital sources cease making LIBOR-based funding available to Lender.

**Method of Interest Assessment.** Interest will be assessed on a daily basis over each day of the calendar year (365 days, or 366 days in a leap year) by application of a daily interest factor determined by dividing then applicable per annum interest rate by 365.

**Default Interest.** Should an Event of Default occur or exist under this Agreement or under any Related Document, Lender may, at its sole option and discretion, elect to prospectively increase the interest rate then applicable to the unpaid Obligations to the default rate equal to the maximum rate of interest permitted by applicable law or, if applicable law does not then provide for a maximum rate of interest, at twenty-four percent (24%) per annum. At any time that any financial report or other report due under this Agreement is delinquent and Lender has not yet elected to apply the full default rate, the interest rate then applicable to the unpaid Obligations shall automatically increase to four percent (4%) above the otherwise applicable rate.

**FEES.** Borrower promises to pay Lender the following fees and charges:

**(a) Case Expense Advances.**

**(X) Origination Fees.** As additional consideration for the use of the money advanced for each Case Expense Advance, Borrower agrees to pay Lender Origination Fees with respect to each Case Expense Advance in amount equal to 2% of the Gross Amount Advanced for Case Expense Advances. Origination Fees will be withheld by Lender upon the making of each Case Expense Advance from the actual cash amount advanced; provided that Lender reserves the right, in its sole and absolute discretion, to not withhold payment of Origination Fees but rather add Origination Fees to the then unpaid principal balance of the Obligations. Once withheld or added to the principal balance of the Obligations, as the case may be, Origination Fees shall for all purposes be deemed to be fully earned by Lender, and (unless required by applicable law) are not subject to refund or rebate.

**(X) Administration Fees.** As additional consideration for the use of the money advanced for each Case Expense Advance, Borrower agrees to pay Lender Administration Fees in an amount equal to six tenths of one percent (0.6%) per month on the outstanding principal of the Gross Amount Advanced for Case Expense Advances, payable in arrears on the last day of each calendar month.

**(N/A) Annual Fee.** As additional consideration for the use of the money advanced for each Case Expense Advance, Borrower shall pay to Lender an Annual Fee equal to $N/A. Such Annual Fee will be due initially as of the execution of this Agreement and then upon any renewal hereof, approval of which is subject to Lender's sole and absolute discretion. The Annual Fee is not a commitment fee.

**Additional Fees and Charges.** Borrower agrees to pay additional fees and charges to Lender for Case Expense Advances in such amounts and for such purposes as the parties may agree to in writing.

**(b) Working Capital Advances.**

**(N/A) Origination Fees.** As additional consideration for the use of the money advanced for each Working Capital Advance, Borrower agrees to pay Lender Origination Fees with respect to each Working

7/2806811.2
105253-000 4/5/2013

- 4 -

UST APX 0064

Capital Advance in amount equal to N/A% of the Gross Amount Advanced for Working Capital Advances. Origination Fees will be withheld by Lender upon the making of each Working Capital Advance from the actual cash amount advanced; provided that Lender reserves the right, in its sole and absolute discretion, to not withhold payment of Origination Fees but rather add Origination Fees to the then unpaid principal balance of the Obligations. Once withheld or added to the principal balance of the Obligations, as the case may be, Origination Fees shall for all purposes be deemed to be fully earned by Lender, and (unless required by applicable law) are not subject to refund or rebate.

**(N/A) Administration Fees.** As additional consideration for the use of the money advanced for each Working Capital Advance, Borrower agrees to pay Lender Administration Fees in an amount equal to N/A tenths of one percent (0.N/A%) per month on the outstanding principal of the Gross Amount Advanced for Working Capital Advances, payable in arrears on the last day of each calendar month.

**(N/A) Annual Fee.** As additional consideration for Lender's diligence efforts to inspect, service, and verify collateral for Working Capital Advances, Borrower shall pay to Lender an Annual Fee equal to $ N/A. Such Annual Fee will be due initially as of the execution of this Agreement and then upon any renewal hereof, approval of which is subject to Lender's sole and absolute discretion. The Annual Fee is not a commitment fee.

**Additional Fees and Charges.** Borrower agrees to pay additional fees and charges to Lender for Working Capital Advancers in such amounts and for such purposes as the parties may agree to in writing.

**SAVINGS CLAUSE.** Under no circumstances shall the rate or amount of interest or other fees or charges payable by Borrower exceed the maximum rate or amount allowed by applicable law, it being Lender's intent to strictly comply with all laws relating to limitations on interest, fees, and other charges. Accordingly, notwithstanding any provision of this Agreement to the contrary, Borrower shall not be obligated to pay, nor will Lender accept payment of interest, fees, or other charges in excess of those allowed by applicable law. Case Expense Advances and Working Capital Advances shall be considered separately as to what provisions of Tennessee law determine the authorization of interest, fees, and other charges under those two types of loans. Should Lender receive interest, fees, or other charges in excess of those allowed by applicable law, Lender may at its option refund the amount erroneously paid, or Lender may credit that amount to Borrower's then outstanding Obligations. All interest, fees, and other charges hereunder shall be characterized as would best support their enforceability under applicable law. Without limiting the foregoing, in determining any effective interest rate, any prepaid interest shall be spread over the entirety of the principal of all Advances of the same type (i.e., Case Expense Advances or Working Capital Advances) outstanding from time to time and shall be spread over the shorter of (a) the period from the date of such Advance(s) to the applicable Maturity Date when the Advance becomes due under subsection (i) of the above definition of Maturity Date, as it may be extended, or (b) the period from the date of such Advance(s) to the applicable Maturity Date when the Advance becomes due by Lender's demand under subsection (ii) of the above definition of Maturity Date, unless an Event of Default exists at the time of such demand, in which case the period under (a) shall control.*

**EVIDENCE OF INDEBTEDNESS.** The parties agree and covenant that it is not necessary for Borrower to execute one or more promissory notes in favor of Lender to evidence the Obligations under this Agreement. Lender's internal records, including Lender's daily computer print-outs, shall serve for all purposes as conclusive evidence of the outstanding principal balance of all Obligations, as well as the amount of interest, fees, charges and expenses that may be owed by Borrower to Lender at any time.

**PAYMENTS.** Borrower unconditionally promises to make payments to Lender as follows:

**Payment of all Outstanding Principal.** All principal outstanding under the Obligations shall become due upon the Maturity Date. Partial payments of principal may also become due, without demand, as provided below.

**Full Payment of Advances for Particular Client Matters.** Borrower shall pay Lender the entire principal amount outstanding under all Case Expense Advances made with respect to a particular Client Matter upon the occurrence of any of the following events (each a **"Payment Event"**): (i) the date on which Borrower ceases to be counsel of record with respect to the particular Client Matter, whether by reason of resignation, termination, withdrawal, or otherwise; or (ii) the date on which the particular Client Matter is abandoned by the Client; or (iii) the date on which the Client Matter is finally dismissed

7/2806811.2
105253-000 4/5/2013

- 5 -

UST APX 0065

or becomes final and is no longer subject to appeal; or (iv) the date on which the ability of Borrower to request Advances hereunder is terminated by either Borrower or Lender pursuant to the terms of this Agreement. Borrower shall immediately notify Lender upon the occurrence of a Payment Event.

**Partial Payments of Advances for Particular Client Matters.** Borrower shall immediately pay to Lender, as a principal payment on the relevant Case Expense Advance, the amount of any funds received by Borrower, or paid to a third party for Borrower's benefit, on account of Borrower's fees or expenses with respect to a Client Matter that is associated with a Case Expense Advance. Borrower shall hold any such funds it may receive in trust for and on behalf of Lender, with assumption of full fiduciary duties and obligations, and shall not distribute or apply such funds for any other purpose before payment to Lender. Borrower further agrees that all such funds in Borrower's possession shall be considered attorney trust funds subject to Borrower's ethical duties and responsibilities. Additionally, it is the intent of Borrower and Lender that at no time shall the principal amount outstanding under all Case Expense Advances made with respect to a particular Client Matter exceed the amount owed by the applicable Client to Borrower in connection with such Client Matter. In the event such excess (an "Out-of-Balance Event") exists for any reason, then Borrower shall immediately notify Lender and pay to Lender the amount of any such excess.

**Interest Payments.** Interest on the outstanding Obligations shall be payable monthly in arrears on the first business day of each calendar month and on the Maturity Date. Lender will provide Borrower with a monthly statement indicating the amount of interest due.

**Administrative Fees.** Administrative Fees on the outstanding principal balance of the Gross Amount Advanced shall be payable monthly in arrears on the first business day of each calendar month and on the Maturity Date. Lender will provide Borrower with a monthly statement indicating the amount of Administrative Fees due.

**Form of Payments.** Borrower shall mail, transmit, or deliver all payments to Lender at Lender's address shown above, or at such other place as Lender may designate in writing. Lender reserves the right, at any time and for any reason, to require that Borrower make payment by certified or cashier's check, or alternatively, in the form of electronic deposits in immediately available funds into Lender's designated deposit account.

**Timing of Payments.** All payments must be received by Lender by no later than 11:00 AM Central Standard Time, or Central Daylight Time, on the business day that such payment is due, with each payment received after such time and on such date being deemed to have been received and credited on the next succeeding business day, subject to additional daily interest over the period of extension. Payments that are due on a day other than a business day shall be deemed to be due on the first business day following the due date, subject to additional daily interest over the period of extension.

**Application of Payments.** All payments received by Lender shall be applied first to unpaid interest, then to unpaid fees, charges and expenses, and finally to the unpaid principal balance of the outstanding Obligations, in such order and with such priority as Lender may determine within its sole and absolute discretion.

**No Deduction, Set-Off, Recoupment or Counterclaim.** Borrower's obligation to make payments of principal, interest and fees to Lender shall be absolute and unconditional, and shall not be subject to deduction, set-off, recoupment or counterclaim for any reason.

**GRANT OF SECURITY INTEREST. For valuable consideration received, Borrower (and each Successor Borrower, as applicable) hereby grants Lender a continuing security interest in the Collateral described herein to secure prompt and punctual payment and performance of the Obligations, and agrees that Lender shall have all of the rights and remedies provided in this Agreement, in addition to all other rights and remedies that Lender may have under the Code, and under applicable law, and otherwise.**

**DESCRIPTION OF COLLATERAL.** The Collateral shall consist of any and all of Borrower's (and each Successor Borrower's, as applicable) present and future rights, title and interest in and to the following described property and rights, together with any and all present and future additions thereto, substitutions therefor, replacements and proceeds thereof, and all collateral and supporting obligations with respect thereto:

7/2806811.2
105253-000 4/5/2013

- 6 -

UST APX 0066

1.     All accounts, instruments, chattel paper, general intangibles, payment intangibles (all as defined in Article 9 of the Code), and all similar rights that Borrower may have of every nature and kind, including specifically and without limitation, all of Borrower's rights to receive payment or otherwise, for legal and other services rendered and to be rendered, and for costs and expenses advanced and to be advanced, and all other rights and interest that Borrower may have in and with respect to each and every Client Matter; and

2.     All credits, monies, and properties of Borrower now and in the future in Lender's possession or under Lender's control; and

3.     Rights under life insurance and other policies of insurance with respect to any Guarantors, that may be assigned to Lender under such forms and under such terms and conditions as Lender may require; and

4.     Such additional collateral as Lender may require from time to time of Borrower or any Guarantors.

**CONTINUING SECURITY INTEREST TO SECURE PRESENT AND FUTURE OBLIGATIONS.** Borrower affirms that Borrower has granted a continuing security interest in the Collateral to secure any and all present and future Obligations of Borrower in favor of Lender, with the continuing preferences and priorities as provided under applicable law.

**PERFECTION OF SECURITY INTEREST.** Borrower (and each Successor Borrower, as applicable) authorizes Lender to file such financing statements and to take whatever additional actions may be necessary or proper within Lender's sole and absolute discretion to perfect and continue perfection of Lender's security interest, including without limitation the delivery and endorsement of any instrument. Borrower agrees to reimburse Lender for all expenses of perfection, continuation, and termination of perfection of Lender's security interest, including without limitation, reimbursement of all filing fees, taxes and documentary stamps as may be required under the laws of each jurisdiction where a filing is made.

**TRANSACTIONS INVOLVING COLLATERAL.** Borrower shall not transfer, assign, or otherwise dispose of any of the Collateral. Borrower shall not encumber or otherwise permit the Collateral to be subject to any encumbrance or lien, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Additionally, Borrower shall not release, compromise, or extend payment under any account or general intangible included in the Collateral, other than granting such regular and recurring discounts, credits and adjustments as may be reasonably allowed by Borrower in the ordinary course of Borrower's business; provided that the granting of any of the foregoing shall be subject to being characterized as an Out-of-Balance Event and subject to the prepayment requirements arising as a result thereof. Unless waived by Lender, all proceeds of Collateral, in any form, that are received by Borrower shall be held in trust for Lender, and shall immediately be delivered to Lender on demand or as otherwise required in this Agreement.

**GUARANTORS.** Borrower and all Guarantors for the Obligations who sign this Agreement and/or separate guaranty agreements have applied jointly to Lender for the credit arising hereunder and all such Guarantors have direct or indirect interests in Borrower sufficient that the making of Advances by Lender is sufficient consideration and value for their obligations to Lender.

**RELEASE OF LENDER'S SECURITY INTEREST IN THE COLLATERAL AND RELEASE OF GUARANTORS.** Lender's security interest in the Collateral shall remain in full force and effect until such time as Lender may, in its sole and absolute discretion, elect to release or terminate its security interest. Lender will have no obligation whatsoever to terminate its continuing security rights and interest under this Agreement, or the continuing obligations of each Guarantor under their respective Guaranties, unless and until Lender is completely satisfied that all the Obligations have been fully paid and satisfied. Only then may Lender agree to release its security interest from the public records, and to release any Guarantor from his/her respective Guaranty.

**REPRESENTATIONS AND WARRANTIES.** Borrower represents, warrants and certifies to Lender, as of the date of this Agreement, and as of the date of each Advance, and at all times while any Obligation is outstanding, that:

7/28068 l1.2
105253-000 4/5/2013

- 7 -

UST APX 0067

**Organization and Authority.** Borrower is duly organized, validly existing, and is qualified and fully authorized to do business, and is in good standing in each jurisdiction where the nature of Borrower's business requires Borrower to be so qualified. Each Borrower Attorney is duly licensed to practice law in each jurisdiction where the attorney is required to be licensed, and each Borrower Attorney is in good standing with the bar association, and when required, with the applicable courts of that state having registration or licensure authority over legal practitioners.

**Authorization.** Borrower's execution, delivery and performance of this Agreement and each Related Document have been duly authorized, and do not conflict with, and will not result in a breach of Borrower's governing agreements, or any other agreement or instrument which may be binding upon Borrower or its owners, and will not violate any law, ethical rule or principle, or court decree or order applicable to Borrower and/or to Borrower Attorneys. Borrower has the full power and authority to enter into Advances and to grant a security interest in the Collateral in favor of Lender.

**Binding Effectiveness.** This Agreement and each Related Document have been duly and properly executed and delivered by Borrower, and constitute Borrower's legal, valid and binding obligation, enforceable in accordance with their terms, subject only to applicable bankruptcy and debtor relief laws.

**Financial Statements.** All balance sheets, statements of profit and loss, and other financial data, which have been or will be furnished by Borrower to Lender, fairly present the financial condition of Borrower's business as of the date or dates stated, and the results of Borrower's operations for the periods for which the same are furnished. There has been no change in the business, earnings, prospects, assets, liabilities, or condition (financial or otherwise) of Borrower from that set forth in the most recent financial statements furnished to Lender other than changes in the ordinary course of Borrower's business, none of which changes have been materially adverse. All other information, reports, papers and data furnished or to be furnished by Borrower, or its representatives, and by each Guarantor, to Lender, are and will be accurate and correct in all material respects, and complete insofar as completeness may be necessary to give Lender a true and accurate knowledge of the subject matter. Unless Lender otherwise agrees in writing, all financial statements are and will be prepared in accordance with generally accepted accounting principles.

**Claims, Complaints, and Litigation.** Other than as previously disclosed to Lender in writing, there are no claims, complaints, litigation, or legal or administrative proceedings, ethical or other investigations, or other actions or matters pending, or to the knowledge of Borrower, threatened against or affecting Borrower, or against any of Borrower Attorneys, or against any Guarantor, the outcome of which could have a material adverse affect on Borrower's or any Guarantor's financial condition.

**Information.** All information provided and to be provided to Lender by Borrower and by each Guarantor for the purposes of or in connection with this Agreement, or by Borrower in connection with each requested Advance, or other transactions between the parties, is and will continue to be true and accurate in every material respect, and none of the information is or will be incomplete by omitting to state any material fact necessary to make such information not misleading.

**Title to, Existence and Collectability of Collateral.** Borrower is the sole owner of the Collateral, free and clear of all encumbrances except for Lender's security interest. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement, or to which Lender has specifically consented. To the best of Borrower's knowledge, all of Borrower's accounts and general intangibles included within the Collateral: (a) validly exist, and are legally enforceable against the account debtors and other obligors thereunder without being subject to reduction, compromise, defense, or setoff for any reason other than regular discounts, credits or adjustments allowed by Borrower in the ordinary course of Borrower's business; (b) are not evidenced by a judgment, instrument, or chattel paper, unless such judgment has been assigned, and such instrument or chattel paper has been endorsed and delivered to Lender; (c) are derived from bona fide transactions for legal and other services performed or to be performed, and for costs and expenses advanced, all in accordance with the terms set forth in the billing memoranda, statements and invoices relating thereto; and (d) are owed by account debtors or other obligors with the capacity to contract, in the amount shown on Borrower's books and records.

**Taxes.** To the best of Borrower's knowledge, all tax returns and reports of Borrower and each Guarantor that are or were required to be filed, have been filed, and all taxes, assessments and other governmental charges have been paid in full, except those which Borrower and each Guarantor have

UST APX 0068

disclosed to Lender in writing are presently or to be contested in good faith for which adequate reserves have been provided.

**Commercial Purpose.** The proceeds of Borrower's Advances are and may be used solely for commercial purposes, and are in no way to be construed as "consumer transactions."

**No Event of Default.** No Event of Default exists under this Agreement or under any Related Document.

**Survival of Representations and Warranties.** Borrower and each Guarantor acknowledge that Lender, without independent investigation, is relying, and will continue to rely upon the above representations and warranties, as well as those contained in each Related Document, in extending Advances to Borrower. All such representations and warranties shall remain in full force and effect, as when made hereunder and as reaffirmed as of the date of each Advance request hereunder, until such time as the Obligations have been fully paid and satisfied.

**AFFIRMATIVE COVENANTS.** So long as this Agreement remains in effect, Borrower shall:

**Change in Borrower's Business Locations.** Immediately notify Lender in writing of any change in location of any Borrower's (a) residence if Borrower is an individual or sole proprietorship, (b) principal place of business if Borrower is a business entity that is created without any state filings, or (c) state of organization if Borrower is a business entity that is created by state filings. Borrower will additionally notify Lender immediately in writing of any change in the location where Borrower's books and records are kept. (The duty of notice in this section does not abrogate any applicable requirement that Lender consent to such an event.)

**Change in Legal Name or Form of Business Organization.** Immediately notify Lender in writing of any change in Borrower's legal name, or should Borrower change its form of business organization (e.g.; convert from a partnership into a limited liability company), or should Borrower merge with or into, or acquire the assets of another entity. (The duty of notice in this section does not abrogate any applicable requirement that Lender consent to such an event.)

**Employee Benefit Plans.** Maintain each employee benefit plan as to which Borrower may have any liability in compliance with all applicable law and regulations.

**Examination.** To the extent permitted under applicable ethical rules governing the conduct of law firms and legal practitioners, permit Lender, and any designee of Lender including without limitation any secured senior lender of Lender, to examine, audit and copy Borrower's books, records, ledgers, computer files and programs at all reasonable times, and answer all questions and inquiries, and provide Lender with such additional documentation as Lender may request.

**Financial Condition.** Promptly inform Lender in writing of (a) all material adverse change in Borrower's and any Guarantor's financial condition, and (b) the assertion of any claim or complaint against Borrower, or any Borrower Attorneys, or against any Guarantor, which could materially affect Borrower's or any Guarantor's financial condition.

**Financial Information.** Provide Lender with such financial information and statements, reports, agings of receivables and payables, budgets, forecasts, and such other reports with respect to Borrower's business operations, at such times, and at such intervals and in such detail as Lender may request. Borrower additionally shall provide Lender, as soon as possible, but no later than one hundred twenty (120) days after the end of each fiscal year, with copies of Borrower's and each Guarantor's federal, state, and local tax returns.

**Financial Records.** Maintain financial and accounting records in accordance with general accepted accounting principles (unless Lender otherwise agrees in writing to some other standard). If and when requested by Lender, Borrower shall provide Lender with financial statements in form and containing such information as Lender may require within its sole and absolute discretion.

**Insurance.** Maintain professional liability, errors and omissions, and fidelity insurance, and such other insurance coverages as may be customary among comparable law firms practicing within Borrower's community, or as may be required by Lender, in such form, amounts, and with such companies as may

7/28068I1.2
105253-000 4/5/2013

- 9 -

UST APX 0069

be reasonably acceptable to Lender. If requested by Lender, Borrower shall deliver to Lender from time to time policies or certificates of insurance in a form satisfactory to Lender. Borrower shall further timely provide Lender with evidence of the continuation of such insurance prior to the expiration thereof, and Borrower shall immediately notify lender should any such insurance be cancelled, or terminated, or otherwise not be renewed and replaced with comparable insurance.

**Other Notifications.** Immediately notify Lender of any write-downs or charge-offs of Borrower's accounts or payment intangibles, which in the aggregate exceed a dollar amount established by Lender from time to time. Lender will communicate this amount to Borrower. Notwithstanding the permitted dollar amount referenced above, the fact that a notice requirement is not triggered hereunder in no way limits Obligations as to write-downs or charge-offs contained elsewhere in this Agreement, including without limitation the characterization of such as Out-of-Balance Events and the prepayment obligation that arises as a result thereof.

**Other Payments.** Pay promptly when due all contractual obligations calling for the payment of money, and all claims, assessments and charges which constitute, or, if unpaid, may become a lien, charge or encumbrance upon Borrower's business or any of Borrower's properties or assets.

**Performance; Notice of Default.** Perform and comply with all terms, conditions and provisions of this Agreement and each Related Document, and promptly notify Lender if Borrower knows or has reason to know of any event that may constitute or give rise to an Event of Default.

**Personal Financial Statements.** Each Guarantor shall provide Lender with personal financial statements listing Guarantor's assets and liabilities, including contingent liabilities, in such form and substance, and at such intervals as Lender may require.

**Reports.** Within fifteen (15) business days of a request, Borrower shall provide Lender with such reports, and to the extent not otherwise prohibited under ethical rules or principles, provide Lender with such information as Lender may request with respect to Borrower's Clients and Client Matters for which Case Expense Advances or Working Capital Advances have been obtained under this Agreement. Without limiting the generality of the foregoing, Lender may request the following at any time: (a) for all currently contested Client Matters, a complete listing of such Client Matters including (i) the name of the Client with address, (ii) the name of the defendant(s) and addresses for each defendant, (iii) case number and (iv) court venue; and (b) for all Client Matters (whether currently contested or not), an accounts receivable aging report for each such Client Matter along with the name and address of each related Client. If any reports that are not delivered as required, the interest rate shall increase as described above in the "Interest" section hereof.

**Taxes.** Pay promptly when due all taxes, governmental assessments and other fees and charges applicable to Borrower, its business operations, properties and assets. If and when requested by Lender, Borrower shall provide Lender with evidence that Borrower has timely complied with the requirements of this provision.

**NEGATIVE COVENANTS.** So long as this Agreement remains in effect, Borrower and its owners will not, without Lender's prior written consent: (a) cease operations; (b) liquidate, merge, transfer, acquire, or consolidate with any other entity; (c) change Borrower's legal name or form of business organization; (d) change the closing date of Borrower's fiscal year; (e) dissolve or transfer any of Borrower's properties or assets other than in the ordinary course of Borrower's business; (f) change the location of Borrower's (i) residence if Borrower is an individual, (ii) principal place of business if Borrower is a business entity that is created without any state filings, or (iii) state of organization if Borrower is a business entity that is created by state filings; (f) make any substantial disbursement or use of Borrower's funds except in the ordinary course of Borrower's business; or (g) guaranty or become surety for the obligations of others.

**EVENTS OF DEFAULT.** The following are Events of Default under this Agreement:

**Payment Default.** Should Borrower fail to make any payment to Lender upon demand or when otherwise when due of principal, interest, fees, expenses, charges, or other amounts included in the Obligations (time being of the essence).

7/2806811.2
105253-000 4/5/2013

- 10 -

UST APX 0070

**Creditor Proceedings.** Should any other creditor attempt to take or exercise any rights against any of the Collateral, or against any of Borrower's or any Guarantor's other properties or assets.

**False Statements.** Should any representation, warranty or statement made to Lender, or any Guarantor, under this Agreement, or under any Related Document, or in connection with any Advance, prove to be false or misleading in any material respect as of the date made or reaffirmed.

**Filing of a Tax Lien.** Should a tax lien or notice of tax lien be filed against Borrower, or against any Guarantor, or against any of their properties or assets.

**Guarantor's Death.** Should any Guarantor die.

**Insolvency.** Should Borrower or any Guarantor become insolvent, or apply for bankruptcy or other relief from creditors, or should a petition be filed against Borrower or any Guarantor under any federal or state bankruptcy law.

**Other Defaults.** Should Borrower or any Guarantor fail to comply with or perform under any covenant, term or condition of this Agreement or any Related Document.

**Withdrawal of Guaranty.** Should any Guarantor withdraw his/her Guaranty.

**LENDER'S RIGHTS AND REMEDIES IN EVENT OF DEFAULT.** Lender shall have the following right and remedies following the occurrence of any Event of Default:

**Security Rights and Remedies.** Lender shall have all of the rights and remedies available to a secured party generally under the Code.

**Collection Rights.** Lender shall have the right to directly collect and receive all proceeds and payments arising under or in any way accruing from the Collateral as such amounts become due and payable. Borrower and each Guarantor unconditionally agree to assist Borrower in such collection efforts. Lender may direct the court in which any Client Claim is pending, or any person, firm, corporation, or other entity holding any of the Collateral, or owing payment thereon, to make payment directly to Lender. Borrower agrees to execute, or cause the execution, of all notices, pleadings, and other filings as may be required to facilitate Lender's collection of such amounts. Lender may in its own name or in the name of Borrower: (a) compromise or extend time for payment with respect to all or any portion of the Collateral for such amount and upon such terms as Lender may determine within Lender's sole and absolute discretion; (b) demand, collect, receive, sue for and give aquittances for any and all amounts due or to become due with respect to the Collateral; (c) take control of cash or other proceeds of the Collateral; (d) endorse Borrower's name on any notes, acceptances, checks, drafts, money orders, and other evidences of payment of the Collateral that may come into Lender's possession; (e) sign Borrower's name on any invoice, or billing statement relating to any of the Collateral; and (f) do all other acts and things necessary within Lender's sole and absolute discretion to carryout the intent of this Agreement. Beyond the requirements of the Code, Lender and its officers, employees, agents and attorneys, shall have no fiduciary or other duty or responsibility to Borrower to preserve or maximize recovery of payments on the Collateral. Borrower hereby irrevocably appoints Lender as Borrower's attorney-in-fact for the purpose of taking any action permitted by this Agreement in Borrower's name.

**Right of Set-Off.** Lender may at any time (whether or not an Event of Default then exists), and for any or no reason, with or without cause, set-off and apply any and all credits, monies, and properties of Borrower then in Lender's possession or under Lender's control, against any outstanding Obligations.

**Application of Proceeds.** All proceeds derived from the collection, sale, or other disposition of the Collateral will be applied: (a) first to reimbursement of all expenses incurred by Lender in exercising and enforcing its security rights and remedies, including without limitation, reimbursement of Lender's reasonable collection expenses, attorneys' fees and court costs; and (b) to the payment of the outstanding Obligations in such order and with such priorities as Lender may determine within its sole and absolute discretion.

7/2806811.2
105253-000 4/5/2013

- 11 -

UST APX 0071

**Specific Performance.** Lender may file suit against Borrower and any Guarantor seeking specific performance of Borrower's and any Guarantor's agreements, covenants, and obligations in favor of Lender.

**Cumulative Remedies.** All of Lender's rights and remedies, whether under this Agreement, or under any Related Document, or under the Code, or other applicable law, are and shall be cumulative, and may be exercised singularly or concurrently. Lender's election to pursue any particular remedy will not preclude Lender from pursuing any other remedy. Furthermore, Lender's election to make expenditure or to take any action to perform an obligation of Borrower under this Agreement or any Related Document, or otherwise, after Borrower's failure to do so, shall not affect Lender's right to declare an Event of Default to exist, or otherwise preclude Lender from exercising any of its rights or remedies.

**WAIVERS WITH RESPECT TO OBLIGATIONS.** Borrower and each Guarantor waive notice of default, demand and notice of demand, presentment for payment, protest and notice of protest, and notice of non-payment, with respect to the Obligations. Borrower and each Guarantor agree that discharge or release of any party who is, may, or will be liable to Lender for payment and performance of any Obligation, under a Guaranty or otherwise, or the release of the Collateral securing repayment of any Obligation shall not have the effect of releasing or otherwise diminishing or reducing the actual or potential liability of Borrower and/or any Guarantor, who shall remain liable to Lender, and/or of releasing any Collateral not expressly released by Lender. Lender's acceptance of payment other than in accordance with the terms of this Agreement, or Lender's subsequent agreement to extend or modify such repayment terms, shall likewise not have the effect of releasing any party or parties from their respective Obligations to Lender, and/or of releasing any of the Collateral. No course of dealing between Borrower and Lender, and between Lender and any Guarantor, nor any failure or delay on the part of Lender to exercise any of the rights and remedies granted under this Agreement, or under any Guaranty, or under any other agreement or agreements by and between the parties, or under the Code or other applicable law, shall have the effect of waiving any of Lender's rights and remedies. Any partial exercise of any rights and remedies granted to Lender shall furthermore not constitute a waiver of any of Lender's other rights and remedies, it being Borrower's and each Guarantor's intent and agreement that Lender's rights and remedies shall be cumulative in nature. Borrower and each Guarantor further agree that, upon the occurrence of an Event of Default under this Agreement, any waiver or forbearance on the part of Lender to pursue the rights and remedies available to Lender, shall be binding upon Lender only to the extent that Lender specifically agrees to any such waiver or forbearance in writing. A waiver or forbearance as to one Event of Default shall not constitute a waiver or forbearance as to any other Event of Default. None of the warranties, conditions, provisions and terms contained in this Agreement, or in any Related Document, shall be deemed to have been waived by any act or knowledge of Lender, its agents, officers or employees; but only by an instrument in writing specifying such waiver, signed by a duly authorized officer of Lender and delivered to Borrower.

**PROTECTION OF LENDER'S SECURITY RIGHTS.** Borrower agrees to promptly notify Lender of the assertion, or threatened assertion, of any claim, action, or proceeding affecting the Collateral, or the collection of all or any part thereof. Borrower will be fully responsible for any losses that Lender may suffer as a result of anyone other than Lender asserting any rights or interest in or to the Collateral. Borrower and each Guarantor agrees to appear in and to defend all actions or proceedings purporting to affect Lender's security interests in any of the Collateral subject to this Agreement and any of the rights and powers granted Lender hereunder. In the event that Borrower fails to do what is required of it under this Agreement, or if any action or proceeding is commenced naming Lender as a party or affecting Lender's security interests or the rights and powers granted under this Agreement, then Lender may, without releasing Borrower from any of its obligations under this Agreement, do whatever Lender believes to be necessary and proper within its sole and absolute discretion to protect the security of this Agreement, including without limitation making additional Advances on Borrower's behalf.

**INDEMNIFICATION OF LENDER.** Borrower and each Guarantor unconditionally agree to indemnify, defend and save and hold Lender, its parent, subsidiaries and affiliated companies, and their officers, directors, employees, agents, and attorneys, harmless from any and all actual or threatened claims, investigations, suits, damages, losses, costs and expenses (including without limitation, Lender's legal costs and expenses), liabilities, penalties, fines and forfeitures, arising out of or in anyway occasioned by this Agreement, and any Advance, or other relationship between the parties. The foregoing indemnity provisions shall survive the termination of this Agreement as to all matters arising or accruing prior to such cancellation, and the foregoing indemnity shall survive in the event that Lender elects to exercise any of the remedies as provided under this Agreement following default hereunder.

7/2806811.2
105253-000 4/5/2013

- 12 -

UST APX 0072

**EXECUTION OF ADDITIONAL DOCUMENTS.** Borrower agrees to execute all additional documents, instruments and agreements that Lender may deem to be necessary and proper, within its sole and absolute discretion, in form and substance satisfactory to Lender, to keep this Agreement in effect, to better reflect the true intent of this Agreement, and to consummate fully all of the transactions contemplated hereby and by any other agreement, instrument or document heretofore, now or at any time or times hereafter executed by Borrower and delivered to Lender.

## TERMINATION OF ADDITIONAL BORROWINGS.

**Termination by Borrower.** Borrower may, at any time and for any or no reason, advise Lender in writing that Borrower will no longer request Lender to make additional Advances under this Agreement.

**Termination by Lender.** Lender may, at any time (whether or not an Event of Default then exists), and for any or no reason, with or without cause, advise Borrower in writing that Lender will no longer consider requests by Borrower to obtain additional Advances under this Agreement.

**LENDER'S RIGHT TO MATCH COMPETING OFFER FOR CREDIT.** Borrower recognizes that Lender has expended time and effort in establishing a borrowing relationship with Borrower. Consistent with this recognition, Borrower agrees to notify Lender in advance should Borrower consider moving its borrowing relationship to another lender, and to permit Lender to consider matching any competing offer for credit that Borrower may receive or then be considering. Borrower agrees to timely provide Lender with any competing offer of credit that Borrower may receive, including, as applicable, a draft commitment letter, term sheet, or summary of the relevant credit terms being offered. Borrower further agrees to consider retaining its borrowing relationship with Lender if Lender elects to substantially match such terms. However, nothing under this Agreement or under any other agreement or understanding between the parties, shall obligate Lender to match any competing offer of credit extended to Borrower. This provision shall survive any termination of this Agreement and shall continue to be binding upon Borrower.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are part of this Agreement:

**Amendments.** No term or provision of this Agreement or any Related Document will be deemed to be altered or amended in any way unless such an amendment or alteration is contained in a separate written instrument signed by both Borrower and Lender in hand (to avoid doubt, the text of an email or a voice mail shall not be binding but an email may be used to transmit a binding facsimile of a written document). No conduct or course of dealing on the part of Lender, or any oral statement on the part of Lender's officers, employees, agents, or attorneys, may be construed by Borrower, or by Borrower's owners, or by any Guarantor, or by any court of law, to amend, alter or in any way modify the provisions of this Agreement, or the relationship of the parties, or the obligation of any party to any other person or entity.

**Applicable Law.** This Agreement and each Related Document has been and will be delivered to and shall be deemed to be accepted by Lender in the State of Tennessee. This Agreement and the relationship of the parties is subject to, and is to be construed in accordance with the laws of the State of Tennessee, regardless of the conflict of law rules of that state.

Notwithstanding the foregoing, or any contrary provision of the above Section captioned "Savings Clause," or any other provision of this Agreement, if an Annual Fee is paid respecting any Working Capital Advance and the interest rate charged on such Advance at any time exceeds the Applicable Formula Rate as provided under Tennessee law, the substantive laws of the state where Borrower's main office is located shall apply to determine the interest, fees, and other charges that are permitted to be charged on such Advance, but for no other purpose.

**Captioned Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of the Agreement.

**Costs and Expenses.** As additional consideration for the use of the money advanced under Case Expense Advances, Borrower shall pay to Lender the amount of Lender's costs and expenses (including the allocated cost of Lender's personnel) incurred in connection with Lender's initial and subsequent due

7/2806811.2
105253-000 4/5/2013

- 13 -

UST APX 0073

diligence examinations of Borrower, and in connection with preparation, and execution of this Agreement and each Related Document related to Case Expense Advances. As additional consideration for the inspection, servicing, and verification of collateral related to Working Capital Advances, Borrower shall pay to Lender the amount of Lender's costs and expenses (including the allocated cost of Lender's personnel) incurred in connection with Lender's initial and subsequent due diligence examinations of Borrower related to Working Capital Advances. Borrower further agrees to reimburse Lender on demand for all of Lender's costs and expenses incurred in connection with the enforcement of Lender's rights and remedies under this Agreement or of any negotiations, amendment, workout, forbearance, or other events in response to any (or to prevent any) Event of Default, including without limitation, the reimbursement of the reasonable fees and expenses of Lender's attorneys, the allocated cost of Lender's personnel, travel expenses, the anticipated costs of post-judgment collection efforts, collection efforts during a bankruptcy case in which Borrower or any Guarantor is a debtor, and all other such costs and expenses, whether or not a lawsuit is filed.

**Electronic Storage; Reproduction Deemed an Original.** Lender may electronically store and preserve this Agreement and each Related Document, and discard and otherwise destroy the original signed document(s). Any reproduction of this Agreement or any Related Document derived from Lender's electronic storage system shall be deemed to be original and authentic, and may serve in the place of the original signed document for all purposes.

**Joint and Several Liability.** Each Borrower (if there is more than one) and each Guarantor are obligated under this Agreement and each Related Document on a "joint and several" basis. Each Borrower and Guarantor hereby waives any defense of impairment of collateral, diligence in collection, right to receive notice of or consent to extensions, and any other defenses of suretyship that may otherwise apply.

**Multiple Counterparts.** This Agreement and each Related Document may be executed in multiple counterparts, any one of which will be deemed an original for all purposes.

**Notices.** To give Borrower or any Guarantor any notice under this Agreement or under a Related Document, Lender may hand deliver or mail, email, fax, or otherwise communicate the notice to Borrower or any Guarantor at Borrower's or the Guarantor's current address found in Lender's files. If there is more than one Borrower or Guarantor, notice to any one Borrower or Guarantor will be considered notice to all Borrowers and Guarantors. To give Lender any notice under this Agreement, Borrower or any Guarantor must mail the notice to Lender by registered or certified mail to Lender's address specified by this Agreement, or to any other address that Lender may specify.

**No Partnership or Agency.** Neither this Agreement, nor any other agreement or understanding between the parties, may be construed by any third person or any court to evidence or create a partnership, joint venture, agency, or fiduciary relationship between Borrower and Lender, it being the intent of the parties to absolutely disavow any such relationship.

**No Waiver of Rights.** Lender will not be deemed to waive any right or remedy under this Agreement or under each Related Document unless the waiver is in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right or remedy may be construed by Borrower, or by Borrower's owners, or by any Guarantor, or by any court of law, as a waiver or forbearance of any such right or remedy or of any other right or remedy that may be available to Lender. Lender's written waiver of a provision of this Agreement or any Related Document will not prejudice, and may not in any way be construed as a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement or any Related Document. No course of dealing between Lender and Borrower, or between Lender and any Guarantor, may be constituted as a waiver of any of Lender's rights or remedies, or of any obligation of Borrower or any Guarantor.

**Prior Agreements.** This Agreement replaces all prior agreements and written and verbal understandings between the parties with respect to all matters discussed in or relating to this Agreement. To the extent that any prior Related Document is not replaced with a new Related Document, the prior Related Document will remain in full force and effect. All financing statements now in effect and in any way related to the Collateral will remain in full force and effect, with priority not impaired in any way, until terminated by Lender.

7/2806811.2
105253-000 4/5/2013

- 14 -

UST APX 0074

**Severability.** If a court finds any provision of this Agreement, or any Related Document, to be invalid or unenforceable, the offending provision will be deemed to be modified to be within the limits of enforceability or validity. However, if this cannot be done, the offending provision will be deemed to be stricken and all other provisions of this Agreement will remain valid, enforceable and in effect.

**Sole Discretion of Lender.** Whenever Lender's consent, approval, or action is required or permitted under this Agreement or under any Related Document, Lender's decision whether to consent, approve, or otherwise act will be in the sole and absolute discretion of Lender, and Lender's decision will be final and conclusive.

**Successors and Assigns Bound; Consent to Participation.** Each and every covenant and obligation of this Agreement and each Related Document shall be binding upon Borrower and on any Guarantor, and shall be binding on each of their successors, heirs, representatives and assigns. Lender may transfer, sell and assign all or any portion of the Obligations or this Agreement to one or more third persons without notice to Borrower and without the necessity of obtaining Borrower's consent. Without limiting the generality of the foregoing, Advocate Capital, Inc. anticipates that it will assign its rights hereunder to an affiliate, while retaining the role of servicer. At all times that such an assignment is in effect, all amendments, taking of collateral, waivers, administration of advances, and other actions taken by Advocate Capital, Inc. regarding this Agreement or the Obligations shall be deemed taken in its capacity as servicer for, and for the account of, its affiliate, whether taken in the name of Advocate Capital, Inc. alone or taken expressly in its capacity as servicer for its affiliate. Borrower may not, however, assign its rights under this Agreement or under any Related Document without Lender's prior written consent.

**Taxation.** Borrower agrees to pay, or to reimburse Lender for the payment of, all taxes (other than income taxes), assessments, or charges that may be imposed upon Lender as result of this Agreement and Lender's security interest in the Collateral.

**Unconditional and Irrevocable Nature of Agreements and Consents.** Borrower's and each Guarantor's covenants, agreements and consents under this Agreement and under each Related Document, are and shall be unconditional and irrevocable, and may not be withdrawn or otherwise revoked by Borrower or by any Guarantor under any circumstance, other than as a result of Lender's prior written consent, which Lender has the right to reject or withhold for any or no reason, with or without cause.

**CONSENT TO JURISDICTION AND VENUE.** BORROWER AND EACH GUARANTOR HEREBY SUBMIT TO THE EXCLUSIVE JURISDICTION AND EXCLUSIVE VENUE OF THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT COURT OF TENNESSEE, AND OF ANY TENNESSEE STATE COURT SITTING IN NASHVILLE, TENNESSEE, FOR THE PURPOSE OF LEGAL PROCEEDINGS ARISING OUT OF OR RELATING TO THIS AGREEMENT, EACH RELATED DOCUMENT, AND WITH RESPECT TO EACH TRANSACTION CONTEMPLATED HEREBY AND THEREBY. BORROWER AND EACH GUARANTOR IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY OBJECTION TO WHICH BORROWER AND ANY GUARANTOR MAY NOW AND IN THE FUTURE HAVE TO THE LAYING OF THE VENUE OF ANY SUCH PROCEEDING BROUGHT IN SUCH TENNESSEE COURT, AND ANY CLAIM THAT ANY SUCH PROCEEDING HAS BEEN BROUGHT IN AN INCONVENIENT FORUM. NOTWITHSTANDING THE FOREGOING, LENDER MAY ELECT TO BRING AN ACTION AGAINST BORROWER OR ANY GUARANTOR, OR WITH RESPECT TO ANY PROPERTY, IN ANY COURT WITH APPROPRIATE JURISDICTION OVER THE PARTIES OR SUCH PROPERTY.

**JURY WAIVER. LENDER, BORROWER AND EACH GUARANTOR WAIVE THE RIGHT TO TRIAL BY JURY IN ANY LAWSUIT BROUGHT BY ANY PARTY AGAINST ANY OTHER PARTY.**

BORROWER AND EACH GUARANTOR CERTIFY THAT: (1) THEY HAVE AGREED TO BE SUBJECT TO THIS AGREEMENT AND EACH RELATED DOCUMENT AS THEIR OWN FREE ACT AND DEED, WITHOUT DURESS OR COERCION; (2) THEY HAVE CAREFULLY READ THIS AGREEMENT AND EACH RELATED DOCUMENT, AND AGREE TO ALL THEIR TERMS AS WRITTEN; (3) THEY HAVE KNOWINGLY CONSENTED TO ALL WAIVERS; AND (4) NEITHER LENDER NOR ANYONE CONNECTED WITH LENDER HAS MADE ANY STATEMENT OR PROMISE THAT MAY CONTRADICT IN ANY WAY WHAT IS WRITTEN IN THIS AGREEMENT OR IN ANY RELATED DOCUMENT.

EACH GUARANTOR ADDITIONALLY ACKNOWLEDGES THAT PAYMENT OF THE OBLIGATIONS MAY BE GUARANTEED BY ADDITIONAL GUARANTORS WHO ARE NOT PARTY TO THIS AGREEMENT AND THAT THE

7/2806811.2
105253-000 4/5/2013

- 15 -

UST APX 0075

EXISTENCE OF SUCH ADDITIONAL GUARANTORS IN NO WAY LIMITS EACH UNDERSIGNED GUARANTOR'S JOINT AND SEVERAL OBLIGATIONS HEREUNDER AND UNDER THE APPLICABLE GUARANTY.

**BORROWER:**

Name:    Apperson Crump PLC

Address: 6070 Poplar Avenue, Suite 600
         Memphis, TN 38119

Authorized Signatory: Richard J. Myers
Title: Chief Manager

**GUARANTOR:**

Name:    Richard J. Myers

Address:  6502 Cottingham Place
          Memphis, TN 38119

**GUARANTOR:**

Name:    Bruce S. Kramer

Address:  8704 Southwind Drive
          Memphis, TN 38125

**GUARANTOR:**

Name:    Jerome A. Broadhurst

Address:   2687 Fox Creek Drive
           Germantown, TN 38138

**GUARANTOR:**

Name:    Thomas R. Buckner

Address:  6589 May Hollow Cove
          Memphis, TN 38119

4-8-2013

**GUARANTOR:**

Name:    Cecil D. Smith

Address:  2169 Gorham Place
          Germantown, TN 38139

* Each Guarantor must sign this Agreement.       MS #551954.2 (4/6/05)

7/2806811.2
105253-000 4/5/2013

- 16 -

UST APX 0076

Multi-State

## AMENDED AND RESTATED MASTER LOAN AND SECURITY AGREEMENT

---

**Borrower:** Apperson Crump PLC

**Lender: ADVOCATE CAPITAL, INC.,** or its assign

**Date: 8/20/2025**

---

This **AMENDED AND RESTATED MASTER LOAN AND SECURITY AGREEMENT** is entered into by and between the above-named Borrower and Advocate Capital, Inc., or its assign, as Lender.

WHEREAS, Borrower and Lender entered into that certain Master Loan and Security Agreement dated 4/5/2013, as extended from time to time (the "Prior Agreement").

WHEREAS, Borrower and Lender desire to amend and restate the Prior Agreement pursuant to the terms and provisions hereof.

NOW THEREFORE, FOR VALUABLE CONSIDERATION RECEIVED, Borrower, Lender, and each Guarantor unconditionally agree that the Prior Agreement is amended and restated to provide in full as follows:

1. **DEFINITIONS.** The following terms shall have the following meanings when used in this Agreement.

**Advance.** The term "Advance" refers to each and every advance of funds, extension of credit, and other credit accommodation as provided under this Agreement that Lender may now or in the future extend to Borrower.

**AdvoTrac® Charges.** The charges described in the subsections captioned "AdvoTrac® Case Expense Funding Charges" in Sections 9(a) and 9(c) below.

**Agreement.** The term "Agreement" refers to this Amended and Restated Master Loan and Security Agreement, as this Agreement may be amended or modified from time to time, together with all exhibits, addenda, and schedules attached or to be attached to this Agreement.

**Borrower.** The term "Borrower" refers to the Borrower or Borrowers named above, and each Successor Borrower. Each Borrower and Successor Borrower are sometimes hereinafter individually, collectively and interchangeably referred to as "Borrower."

**Borrower Attorneys.** The term "Borrower Attorneys" refers to each attorney who practices law as an owner or employee of Borrower.

**Client.** The term "Client" refers to each person and entity for which Borrower performs legal and other services.

**Client Matter.** The term "Client Matter" refers to each present and future undertaking and/or engagement for legal and other services performed and to be performed by Borrower and by Borrower Attorneys and non-attorney personnel, of every nature and kind without limitation, and whether in the form of assertion or defense of legal claims, or otherwise, and whether or not the subject of litigation, arbitration, mediation or other contested controversy.

**Case Expense Advance.** The term "Case Expense Advance" refers to an Advance made in connection with a particular Client Matter.

**Code.** The term "Code" refers to the Uniform Commercial Code as adopted in the State of Tennessee.

**Collateral.** The term "Collateral" shall have the meaning provided in the "Description of Collateral" section hereof.

**Event of Default.** The term "Event of Default" shall have the meaning defined in this Agreement and in each Related Document, as applicable.

7/4040604.7

UST APX 0077

**Gross Amount Advanced.** The term "Gross Amount Advanced" refers to the total amount of each Advance made under this Agreement, inclusive of Origination Fees withheld by Lender from the cash amount actually advanced to Borrower or to others on Borrower's behalf, as applicable.

**Guarantor.** The term "Guarantor" refers individually, collectively and interchangeably to each person, firm, corporation, or other entity guaranteeing payment and performance of the Obligations.

**Guaranty.** The term "Guaranty" refers to any agreement under which a Guarantor guarantees payment and performance of any Borrower Obligation.

**Lender.** The term "Lender" refers to Advocate Capital, Inc., its successors and assigns, and to each subsequent holder of any Borrower Obligation.

**Maturity Date.** The term "Maturity Date" means the first to occur of (i) 4/5/2026 (or such later alternate maturity date as agreed to by Lender in writing in its sole and absolute discretion from time to time), or (ii) demand by Lender, in its sole and absolute discretion.

**Obligations.** The term "Obligations" refers to the Gross Amount Advanced and all other indebtedness, obligations, and liabilities that Borrower may now and in the future owe to or incur in favor of Lender, whether direct or indirect, absolute or contingent, liquidated or unliquidated, and whether due or to become due, of every nature and kind whatsoever, in principal, interest, fees, costs, expenses and attorneys' fees, and including without limitation, all other indebtedness, obligations, fees, costs, and expenses for which Borrower may be responsible under this Agreement and under each Related Document, as applicable.

**Origination Fees.** The term "Origination Fees" shall have such meaning as described under the Fee section hereof.

**Out-of-Balance Event.** The term "Out-of-Balance Event" shall have the meaning provided in the Fee section hereof.

**Related Document.** The term "Related Document" refers to each and every additional agreement, addendum, guaranty, mortgage, deed of trust, security agreement, assignment of life insurance, financing statement, promissory note, request for advance, and all other instruments and documents in any way relating to any Obligation, or relating to any other relationship between the parties.

**Successor Borrower.** The term "Successor Borrower" refers to each person or entity that is a successor to the Borrower named above whether as a result of subsequent name change or reorganization, merger or consolidation, acquisition of assets, or continuation of business operations, in whole or in part, or in combination with others. Each Successor Borrower shall be fully obligated for payment and satisfaction of the above-named Obligations in favor of Lender, and all property and assets of the above-named Borrower acquired by Successor Borrower shall remain subject to Lender's security interest, together with all like property and assets then owned or later acquired by Successor Borrower. Each Successor Borrower shall be obligated under this Agreement as a "new debtor" within the context of Section 9-203(d) of the Code, to the same extent as the Borrower named above is originally bound. This definition does not abrogate the requirements of notice and/or approval arising under this Agreement regarding change of name, merger, or any other event by which a Successor Borrower may arise.

**Working Capital Advance.** The term "Working Capital Advance" refers to an Advance made to fund working capital needs of Borrower and which is not a Case Expense Advance.

2. **ADDITIONAL DEFINITIONS; CONSTRUCTION.** Terms not otherwise defined in this Agreement shall have the meanings provided in each Related Document, in the Code, and as used in the commercial practices of lenders in the State of Tennessee. In this Agreement, singular words include the plural, and the plural words include the singular. All amounts shall be payable in U.S. dollars.

3. **REQUESTS FOR ADVANCES.** So long as no Event of Default exists, and until such time as Lender may advise Borrower that Lender shall not consider further requests from Borrower for Advances under this Agreement, Borrower may request Lender to extend credit in the form of Advances for either Case Expense Advances or Working Capital Advances. Requests for multiple Advances can be made at one time. Requests for Advances must be made in accordance with procedures established by Lender from time to time, and must be accompanied by whatever documentation and cost estimates Lender may then require. In the instance of every Case Expense Advance, Borrower shall provide Lender with name and address of the particular Client, and the identity of the particular Client Matter in connection with which the Advance is being requested. Requests for Advances may be submitted by any authorized representative of Borrower. Oral requests must be confirmed in writing.

7/4040604.7

UST APX 0078

4.    **ABSOLUTE DISCRETIONARY NATURE OF LENDING RELATIONSHIP**.  Lender shall have no obligation whatsoever, under this Agreement or otherwise, to make Advances to Borrower under any circumstance. Lender's decision to do so is and shall always be solely within Lender's sole and absolute judgment and discretion, and Lender may refuse to make Advances to Borrower, and may limit the purpose or purposes for which the proceeds of an Advance may be used, or may limit the aggregate amount of Advances, or the amount of any single Advance, for any or no reason, with or without cause.   Nothing under this Agreement, under any statement or letter as to internally approved lending limits, or under an existing or future agreement or understanding between the parties, whether in writing or in the form of oral statements, or any conduct or course of dealing on the part of Lender, or on the part of its officers, employees, agents, or attorneys, may be construed by Borrower, or by Borrower's owners, or by any Guarantor, or by any court of law, to in any way obligate or commit Lender to make Advances to Borrower, or to amend, alter or in any way modify the discretionary nature of the lending relationship between Lender and Borrower. Borrower and each Guarantor recognize that the above provisions are essential, bargained-for covenants, which may not be waived or modified by Lender under any circumstance.

5.    **FUNDING OF ADVANCES**.  Lender may make Advance proceeds available in the form of a check or draft payable to Borrower's order, or in the form of a direct deposit into Borrower's designated deposit account with Borrower's bank. Lender additionally may elect to fund Advances by making payments directly to third-party payees designated by Borrower and as approved by Lender.

6.    **USE OF ADVANCE PROCEEDS**.  Case Expense Advances are advanced to reimburse Borrower for expenses already incurred and paid by Borrower in connection with a particular Client Matter.   Working Capital Advances may be used for any lawful purpose to meet the working capital needs of Borrower.  In no event may the proceeds of any Advance be used for personal purposes.  Lender hereby reserves the right to further restrict the use of Advance proceeds in its sole and absolute discretion.

7.    **PROMISE TO PAY**.   Borrower (and each Successor Borrower, as applicable) unconditionally promises to timely pay to Lender all principal, interest, expenses, fees, charges and other amounts from time to time included in the Obligations.

8.    **INTEREST**.   Interest will be assessed on the unpaid principal balance of the Obligations, as outstanding from time to time, as follows:

(a)    **Rate of Interest.**

(N/A) Fixed Interest. Interest will be assessed by application of a fixed interest rate of N/A% per annum.

(X) Prime-Based Variable Interest. Interest will be assessed on a variable basis by application of a variable interest rate per annum equal to the following:

(1)    for Case Expense Advances, 3% in excess of the then applicable Prime Rate published from time to time in the Money Section of the New York regional edition of *The Wall Street Journal*, and

(2)    for Working Capital Advances, 1% in excess of the then applicable Prime Rate published from time to time in the Money Section of the New York regional edition of The Wall Street Journal.

The Prime-Based variable interest rate shall be adjusted from time to time on a daily basis based upon the Wall Street Journal Prime Rate. Lender reserves the right to substitute an alternative interest index should such rate no longer be published.

(N/A) LIBOR-Based Variable Interest. Interest will be assessed on a variable basis by application of a variable interest rate per annum equal to the following:

(1)    for Case Expense Advances, N/A% in excess of the then applicable one-month LIBOR Rate published from time to time in the Money Rates Section of *The Wall Street Journal Online*, and

(2)    for Working Capital Advances, N/A% in excess of the then applicable one-month LIBOR Rate published from time to time in the Money Rates Section of *The Wall Street Journal Online*.

The LIBOR-Based variable interest rate shall be adjusted each Friday based upon the one-month LIBOR Rate published in the Money Rates Section of *The Wall Street Journal Online* as of noon local time in Nashville, Tennessee. If a Friday is not a regular business day for Lender, the LIBOR-Based variable interest rate shall be adjusted as of

7/4040604.7

-3-

UST APX 0079

the next preceding day that is a regular business day for Lender. Lender reserves the right to substitute an alternative interest index if such rate is no longer so published or if any of Lender's capital sources cease making LIBOR-based funding available to Lender.

(b) **Method of Interest Assessment.** Interest will be assessed on a daily basis over each day of the calendar year (365 days, or 366 days in a leap year) by application of a daily interest factor determined by dividing then applicable per annum interest rate by 365.

(c) **Default Interest.** Should an Event of Default occur or exist under this Agreement or under any Related Document, Lender may, at its sole option and discretion, elect to prospectively increase the interest rate then applicable to the unpaid Obligations to the default rate equal to the maximum rate of interest permitted by applicable law or, if applicable law does not then provide for a maximum rate of interest, at twenty-four percent (24%) per annum. At any time that any financial report or other report due under this Agreement is delinquent and Lender has not yet elected to apply the full default rate, if Lender so elects, the interest rate then applicable to the unpaid Obligations shall increase to four percent (4%) above the otherwise applicable rate.

9. **FEES AND OTHER CHARGES.** Borrower promises to pay Lender the following fees and other charges:

(a) **Case Expense Advances.**

(X) **Origination Fees.** As additional consideration for the use of the money advanced for each Case Expense Advance, Borrower agrees to pay Lender Origination Fees with respect to each Case Expense Advance in amount equal to 2% of the Gross Amount Advanced for Case Expense Advances. Origination Fees will be withheld by Lender upon the making of each Case Expense Advance from the actual cash amount advanced; provided that Lender reserves the right, in its sole and absolute discretion, to not withhold payment of Origination Fees but rather add Origination Fees to the then unpaid principal balance of the Obligations. Once withheld or added to the principal balance of the Obligations, as the case may be, Origination Fees shall for all purposes be deemed to be fully earned by Lender, and (unless required by applicable law) are not subject to refund or rebate.

(X) **AdvoTrac® Case Expense Funding Charges.** As additional consideration for the use of the money advanced for each Case Expense Advance, Borrower agrees to pay Lender an amount equal to six tenths of one percent (0.6%) per month on the outstanding principal of the Gross Amount Advanced for Case Expense Advances, payable in arrears on the last day of each calendar month.

(N/A) **Annual Fee.** As additional consideration for the use of the money advanced for each Case Expense Advance, Borrower shall pay to Lender an Annual Fee equal to $ N/A. Such Annual Fee will be due initially as of the execution of this Agreement and then upon any renewal hereof, approval of which is subject to Lender's sole and absolute discretion. The Annual Fee is not a commitment fee.

(b) **Additional Fees and Charges.** Borrower agrees to pay additional fees and charges to Lender for Case Expense Advances in such amounts and for such purposes as the parties may agree to in writing.

(c) **Working Capital Advances.**

(N/A) **Origination Fees.** As additional consideration for the use of the money advanced for each Working Capital Advance, Borrower agrees to pay Lender Origination Fees with respect to each Working Capital Advance in amount equal to N/A% of the Gross Amount Advanced for Working Capital Advances. Origination Fees will be withheld by Lender upon the making of each Working Capital Advance from the actual cash amount advanced; provided that Lender reserves the right, in its sole and absolute discretion, to not withhold payment of Origination Fees but rather add Origination Fees to the then unpaid principal balance of the Obligations. Once withheld or added to the principal balance of the Obligations, as the case may be, Origination Fees shall for all purposes be deemed to be fully earned by Lender, and (unless required by applicable law) are not subject to refund or rebate.

(N/A) **AdvoTrac® Case Expense Funding Charges.** As additional consideration for the use of the money advanced for each Working Capital Advance, Borrower agrees to pay Lender an amount equal to N/A tenths of one percent (0. N/A%) per month on the outstanding

7/4040604.7

-4-

UST APX 0080

principal of the Gross Amount Advanced for Working Capital Advances, payable in arrears on the last day of each calendar month.

(X) **Annual Fee.** As additional consideration for Lender's diligence efforts to inspect, service, and verify collateral for Working Capital Advances, Borrower shall pay to Lender an Annual Fee equal to $5,000.00. Such Annual Fee will be due initially as of the execution of this Agreement and then upon any renewal hereof, approval of which is subject to Lender's sole and absolute discretion. The Annual Fee is not a commitment fee.

(d)    **Additional Fees and Charges.** Borrower agrees to pay additional fees and charges to Lender for Working Capital Advancers in such amounts and for such purposes as the parties may agree to in writing.

10.    **SAVINGS CLAUSE.** Under no circumstances shall the rate or amount of interest or other fees or charges payable by Borrower exceed the maximum rate or amount allowed by applicable law, it being Lender's intent to strictly comply with all laws relating to limitations on interest, fees, and other charges. Accordingly, notwithstanding any provision of this Agreement to the contrary, Borrower shall not be obligated to pay, nor will Lender accept payment of interest, fees, or other charges in excess of those allowed by applicable law. Case Expense Advances and Working Capital Advances shall be considered separately as to what provisions of Tennessee law determine the authorization of interest, fees, and other charges under those two types of loans. Should Lender receive interest, fees, or other charges in excess of those allowed by applicable law, Lender may at its option refund the amount erroneously paid, or Lender may credit that amount to Borrower's then outstanding Obligations. All interest, fees, and other charges hereunder shall be characterized as would best support their enforceability under applicable law. AdvoTrac® Charges shall be characterized as ordinary interest and are separately named only to reflect market customs. Without limiting the foregoing, in determining any effective interest rate, any prepaid interest shall be spread over the entirety of the principal of all Advances of the same type (i.e., Case Expense Advances or Working Capital Advances) outstanding from time to time and shall be spread over the shorter of (a) the period from the date of such Advance(s) to the applicable Maturity Date when the Advance becomes due under subsection (i) of the above definition of Maturity Date, as it may be extended, or (b) the period from the date of such Advance(s) to the applicable Maturity Date when the Advance becomes due by Lender's demand under subsection (ii) of the above definition of Maturity Date, unless an Event of Default exists at the time of such demand, in which case the period under (a) shall control.

11.    **EVIDENCE OF INDEBTEDNESS.** The parties agree and covenant that it is not necessary for Borrower to execute one or more promissory notes in favor of Lender to evidence the Obligations under this Agreement. Lender's internal records, including Lender's daily computer print-outs, shall serve for all purposes as conclusive evidence of the outstanding principal balance of all Obligations, as well as the amount of interest, fees, charges and expenses that may be owed by Borrower to Lender at any time.

12.    **PAYMENTS.** Borrower unconditionally promises to make payments to Lender as follows:

(a)    **Payment of all Outstanding Principal.** All principal outstanding under the Obligations shall become due upon the Maturity Date. Partial payments of principal may also become due, without demand, as provided below.

(b)    **Full Payment of Advances for Particular Client Matters.** Borrower shall pay Lender the entire principal amount outstanding under all Case Expense Advances made with respect to a particular Client Matter upon the occurrence of any of the following events (each a "Payment Event"): (i) the date on which Borrower ceases to be counsel of record with respect to the particular Client Matter, whether by reason of resignation, termination, withdrawal, or otherwise; or (ii) the date on which the particular Client Matter is abandoned by the Client; or (iii) the date on which the Client Matter is finally dismissed or becomes final and is no longer subject to appeal; or (iv) the date on which the ability of Borrower to request Advances hereunder is terminated by either Borrower or Lender pursuant to the terms of this Agreement. Borrower shall immediately notify Lender upon the occurrence of a Payment Event.

(c)    **Partial Payments of Advances for Particular Client Matters.** Borrower shall immediately pay to Lender, as a principal payment on the relevant Case Expense Advance, the amount of any funds received by Borrower, or paid to a third party for Borrower's benefit, on account of Borrower's fees or expenses with respect to a Client Matter that is associated with a Case Expense Advance. Borrower shall hold any such funds it may receive in trust for and on behalf of Lender, with assumption of full fiduciary duties and obligations, and shall not distribute or apply such funds for any other purpose before payment to Lender. Borrower further agrees that all such funds in Borrower's possession shall be considered attorney trust funds subject to Borrower's ethical duties and responsibilities. Additionally, it is the intent of Borrower and Lender that at no time shall the principal amount outstanding under all Case Expense Advances made with respect to a particular Client Matter exceed the amount owed by the applicable Client to Borrower in connection with such Client Matter. In the event such excess (an "Out-

7/4040604.7

-5-

UST APX 0081

of-Balance Event") exists for any reason, then Borrower shall immediately notify Lender and pay to Lender the amount of any such excess.

          (d)    **Interest Payments.** Interest on the outstanding Obligations shall be payable monthly in arrears on the first business day of each calendar month and on the Maturity Date. Lender will provide Borrower with a monthly statement indicating the amount of interest due.

          (e)    **AdvoTrac® Charges.** AdvoTrac® Charges on the outstanding principal balance of the Gross Amount Advanced shall be payable monthly in arrears on the first business day of each calendar month and on the Maturity Date. Lender will provide Borrower with a monthly statement indicating the amount of AdvoTrac® Charges due.

          (f)    **Form of Payments.** Borrower shall mail, transmit, or deliver all payments to Lender at Lender's address shown above, or at such other place as Lender may designate in writing. Lender reserves the right, at any time and for any reason, to require that Borrower make payment by certified or cashier's check, or alternatively, in the form of electronic deposits in immediately available funds into Lender's designated deposit account.

          (g)    **Timing of Payments.** All payments must be received by Lender by no later than 11:00 AM Central Standard Time, or Central Daylight Time, on the business day that such payment is due, with each payment received after such time and on such date being deemed to have been received and credited on the next succeeding business day, subject to additional daily interest over the period of extension. Payments that are due on a day other than a business day shall be deemed to be due on the first business day following the due date, subject to additional daily interest over the period of extension.

          (h)    **Application of Payments.** All payments received by Lender shall be applied first to unpaid interest, then to unpaid fees, charges and expenses, and finally to the unpaid principal balance of the outstanding Obligations, in such order and with such priority as Lender may determine within its sole and absolute discretion.

          (i)    **No Deduction, Set-Off, Recoupment or Counterclaim.** Borrower's obligation to make payments of principal, interest and fees to Lender shall be absolute and unconditional, and shall not be subject to deduction, set-off, recoupment or counterclaim for any reason.

      13.    **GRANT OF SECURITY INTEREST.** For valuable consideration received, Borrower (and each Successor Borrower, as applicable) hereby grants Lender a continuing security interest in the Collateral described herein to secure prompt and punctual payment and performance of the Obligations, and agrees that Lender shall have all of the rights and remedies provided in this Agreement, in addition to all other rights and remedies that Lender may have under the Code, and under applicable law, and otherwise.*

      14.    **DESCRIPTION OF COLLATERAL.** The Collateral shall consist of any and all of Borrower's (and each Successor Borrower's, as applicable) present and future rights, title and interest in and to the following described property and rights, together with any and all present and future additions thereto, substitutions therefor, replacements and proceeds thereof, and all collateral and supporting obligations with respect thereto:

          (i)    All accounts, instruments, chattel paper, general intangibles, payment intangibles (all as defined in Article 9 of the Code), and all similar rights that Borrower may have of every nature and kind, including specifically and without limitation, all of Borrower's rights to receive payment or otherwise, for legal and other services rendered and to be rendered, and for costs and expenses advanced and to be advanced, and all other rights and interest that Borrower may have in and with respect to each and every Client Matter; and

          (ii)    All credits, monies, and properties of Borrower now and in the future in Lender's possession or under Lender's control; and

          (iii)    Rights under life insurance and other policies of insurance with respect to any Guarantors, that may be assigned to Lender under such forms and under such terms and conditions as Lender may require.

      15.    **CONTINUING SECURITY INTEREST TO SECURE PRESENT AND FUTURE OBLIGATIONS.** Borrower affirms that Borrower has granted a continuing security interest in the Collateral to secure any and all present and future Obligations of Borrower in favor of Lender, with the continuing preferences and priorities as provided under applicable law.

7/4040604.7

-6-

UST APX 0082

16.     **PERFECTION OF SECURITY INTEREST**. Borrower (and each Successor Borrower, as applicable) authorizes Lender to file such financing statements and to take whatever additional actions may be necessary or proper within Lender's sole and absolute discretion to perfect and continue perfection of Lender's security interest, including without limitation the delivery and endorsement of any instrument. Borrower agrees to reimburse Lender for all expenses paid to governmental authorities incidental to the perfection, continuation, and termination of perfection of Lender's security interest, including without limitation, reimbursement of all filing fees, filing taxes, and documentary stamps as may be required under the laws of each jurisdiction where a filing is made.

17.     **TRANSACTIONS INVOLVING COLLATERAL**. Borrower shall not transfer, assign, or otherwise dispose of any of the Collateral. Borrower shall not encumber or otherwise permit the Collateral to be subject to any encumbrance or lien, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Additionally, Borrower shall not release, compromise, or extend payment under any account or general intangible included in the Collateral, other than granting such regular and recurring discounts, credits and adjustments as may be reasonably allowed by Borrower in the ordinary course of Borrower's business; provided that the granting of any of the foregoing shall be subject to being characterized as an Out-of-Balance Event and subject to the prepayment requirements arising as a result thereof. Unless waived by Lender, all proceeds of Collateral, in any form, that are received by Borrower shall be held in trust for Lender, and shall immediately be delivered to Lender on demand or as otherwise required in this Agreement.

18.     **GUARANTORS**. Borrower and all Guarantors for the Obligations who sign this Agreement and/or separate guaranty agreements have applied jointly to Lender for the credit arising hereunder and all such Guarantors have direct or indirect interests in Borrower sufficient that the making of Advances by Lender is sufficient consideration and value for their obligations to Lender. Each Guarantor acknowledges and agrees that, if such Guarantor withdraws from Borrower and takes his/her law practice elsewhere, or if a Guarantor by any other means provides (or controls the provision of) professional services regarding any Client Matter in a capacity other than through Borrower, Lender's security interest in such Client Matter and all related Collateral shall continue so that all legal fees and expenses to which Borrower would have been entitled under the terms of its original engagement shall continue to secure the Obligations. Each Guarantor further hereby grants to Lender a security interest in all such Guarantor's own present and future interest, if any, in any Client Matter and in all proceeds thereof, including, but not limited to, all such accounts, instruments, chattel paper, general intangibles, and payment intangibles (all as defined in Article 9 of the Code). Provisions of this Agreement relating to the attachment, perfection, remedies, and other matters with respect to Borrower's grant of a security interest to Lender shall also apply to the security interest granted by each Guarantor.

19.     **RELEASE OF LENDER'S SECURITY INTEREST IN THE COLLATERAL AND RELEASE OF GUARANTORS**. Lender will have no obligation whatsoever to terminate its continuing security rights and interest under this Agreement, or the continuing obligations of each Guarantor under their respective Guaranties, unless and until Lender is completely satisfied that all the Obligations have been fully and indefeasibly paid and satisfied.

20.     **REPRESENTATIONS AND WARRANTIES**. Borrower represents, warrants and certifies to Lender, as of the date of this Agreement, and as of the date of each Advance, and at all times while any Obligation is outstanding, that:

        (a)     **Organization and Authority**. Borrower is duly organized, validly existing, and is qualified and fully authorized to do business, and is in good standing in each jurisdiction where the nature of Borrower's business requires Borrower to be so qualified. Each Borrower Attorney is duly licensed to practice law in each jurisdiction where the attorney is required to be licensed, and each Borrower Attorney is in good standing with the bar association, and when required, with the applicable courts of that state having registration or licensure authority over legal practitioners.

        (b)     **Authorization**. Borrower's execution, delivery and performance of this Agreement and each Related Document have been duly authorized, and do not conflict with, and will not result in a breach of Borrower's governing agreements, or any other agreement or instrument which may be binding upon Borrower or its owners, and will not violate any law, ethical rule or principle, or court decree or order applicable to Borrower and/or to Borrower Attorneys. Borrower has the full power and authority to enter into Advances and to grant a security interest in the Collateral in favor of Lender.

        (c)     **Binding Effectiveness**. This Agreement and each Related Document have been duly and properly executed and delivered by Borrower, and constitute Borrower's legal, valid and binding obligation, enforceable in accordance with their terms, subject only to applicable bankruptcy and debtor relief laws.

        (d)     **Financial Statements**. All balance sheets, statements of profit and loss, and other financial data, which have been or will be furnished by Borrower to Lender, fairly present the financial condition of

7/4040604.7

-7-

UST APX 0083

Borrower's business as of the date or dates stated, and the results of Borrower's operations for the periods for which the same are furnished. There has been no change in the business, earnings, prospects, assets, liabilities, or condition (financial or otherwise) of Borrower from that set forth in the most recent financial statements furnished to Lender other than changes in the ordinary course of Borrower's business, none of which changes have been materially adverse. All other information, reports, papers and data furnished or to be furnished by Borrower, or its representatives, and by each Guarantor, to Lender, are and will be accurate and correct in all material respects, and complete insofar as completeness may be necessary to give Lender a true and accurate knowledge of the subject matter. Unless Lender otherwise agrees in writing, all financial statements are and will be prepared in accordance with generally accepted accounting principles.

     (e)    **Claims, Complaints, and Litigation.** Other than as previously disclosed to Lender in writing, there are no claims, complaints, litigation, or legal or administrative proceedings, ethical or other investigations, or other actions or matters pending, or to the knowledge of Borrower, threatened against or affecting Borrower, or against any of Borrower Attorneys, or against any Guarantor, the outcome of which could have a material adverse effect on Borrower's or any Guarantor's financial condition.

     (f)    **Information.** All information provided and to be provided to Lender by Borrower and by each Guarantor for the purposes of or in connection with this Agreement, or by Borrower in connection with each requested Advance, or other transactions between the parties, is and will continue to be true and accurate in every material respect, and none of the information is or will be incomplete by omitting to state any material fact necessary to make such information not misleading.

     (g)    **Title to, Existence and Collectability of Collateral.** Borrower is the sole owner of the Collateral, free and clear of all encumbrances except for Lender's security interest. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement, or to which Lender has specifically consented. To the best of Borrower's knowledge, all of Borrower's accounts and general intangibles included within the Collateral: (a) validly exist, and are legally enforceable against the account debtors and other obligors thereunder without being subject to reduction, compromise, defense, or setoff for any reason other than regular discounts, credits or adjustments allowed by Borrower in the ordinary course of Borrower's business; (b) are not evidenced by a judgment, instrument, or chattel paper, unless such judgment has been assigned, and such instrument or chattel paper has been endorsed and delivered to Lender; (c) are derived from *bona fide* transactions for legal and other services performed or to be performed, and for costs and expenses advanced, all in accordance with the terms set forth in the billing memoranda, statements and invoices relating thereto; and (d) are owed by account debtors or other obligors with the capacity to contract, in the amount shown on Borrower's books and records.

     (h)    **Taxes.** To the best of Borrower's knowledge, all tax returns and reports of Borrower and each Guarantor that are or were required to be filed, have been filed, and all taxes, assessments and other governmental charges have been paid in full, except those which Borrower and each Guarantor have disclosed to Lender in writing are presently or to be contested in good faith for which adequate reserves have been provided.

     (i)    **Commercial Purpose.** The proceeds of Borrower's Advances are and may be used solely for commercial purposes, and are in no way to be construed as "consumer transactions."

     (j)    **No Event of Default.** No Event of Default exists under this Agreement or under any Related Document.

     (k)    **Survival of Representations and Warranties.** Borrower and each Guarantor acknowledge that Lender, without independent investigation, is relying, and will continue to rely upon the above representations and warranties, as well as those contained in each Related Document, in extending Advances to Borrower. All such representations and warranties shall remain in full force and effect, as when made hereunder and as reaffirmed as of the date of each Advance request hereunder, until such time as the Obligations have been fully paid and satisfied.

    21.    **AFFIRMATIVE COVENANTS.** So long as this Agreement remains in effect, Borrower shall:

     (a)    **Change in Borrower's Business Locations.** Immediately notify Lender in writing of any change in location of any Borrower's (a) residence if Borrower is an individual or sole proprietorship, (b) principal place of business if Borrower is a business entity that is created without any state filings, or (c) state of organization if Borrower is a business entity that is created by state filings. Borrower will additionally notify Lender immediately in writing of any change in the location where Borrower's books and records are kept. (The duty of notice in this section does not abrogate any applicable requirement that Lender consent to such an event.)

7/4040604.7

-8-

UST APX 0084

     (b)     **Change in Legal Name or Form of Business Organization.** Immediately notify Lender in writing of any change in Borrower's legal name, or should Borrower change its form of business organization (e.g.; convert from a partnership into a limited liability company), or should Borrower merge with or into, or acquire the assets of another entity. (The duty of notice in this section does not abrogate any applicable requirement that Lender consent to such an event.)

     (c)     **Employee Benefit Plans.** Maintain each employee benefit plan as to which Borrower may have any liability in compliance with all applicable law and regulations.

     (d)     **Examination.** To the extent permitted under applicable ethical rules governing the conduct of law firms and legal practitioners, permit Lender, and any designee of Lender including without limitation any secured senior lender of Lender, to examine, audit and copy Borrower's books, records, ledgers, computer files and programs at all reasonable times, and answer all questions and inquiries, and provide Lender with such additional documentation as Lender may request.

     (e)     **Financial Condition.** Promptly inform Lender in writing of (a) all material adverse change in Borrower's and any Guarantor's financial condition, and (b) the assertion of any claim or complaint against Borrower, or any Borrower Attorneys, or against any Guarantor, which could materially affect Borrower's or any Guarantor's financial condition.

     (f)     **Financial Information.** Provide Lender with such financial information and statements, reports, agings of receivables and payables, budgets, forecasts, tax returns, and such other reports with respect to Borrower's business operations, at such times, and at such intervals and in such detail as Lender may request.

     (g)     **Financial Records.** Maintain financial and accounting records in accordance with general accepted accounting principles (unless Lender otherwise agrees in writing to some other standard). If and when requested by Lender, Borrower shall provide Lender with financial statements in form and containing such information as Lender may require within its sole and absolute discretion.

     (h)     **Insurance.** Maintain professional liability, errors and omissions, cyber risk insurance, and fidelity insurance, and such other insurance coverages as may be customary among comparable law firms practicing within Borrower's community, or as may be required by Lender, in such form, amounts, and with such companies as may be reasonably acceptable to Lender. If requested by Lender, Borrower shall deliver to Lender from time to time policies or certificates of insurance in a form satisfactory to Lender. Borrower shall further timely provide Lender with evidence of the continuation of such insurance prior to the expiration thereof, and Borrower shall immediately notify lender should any such insurance be cancelled, or terminated, or otherwise not be renewed and replaced with comparable insurance.

     (i)     **Information Security.** Maintain commercially reasonable information security standards and processes compliant with: (i) industry practices for law firms; (ii) ethical obligations and standards promulgated by applicable bar associations; and (iii) applicable law, and promptly notify Lender of any suspected or actual data breach that may impact Lender's systems (including, without limitation, e-mail fraud such as phishing or business e-mail compromise) and cooperate with Lender in the investigation, mitigation, and resolution of any such data breach.

     (j)     **Other Payments.** Pay promptly when due all contractual obligations calling for the payment of money, and all claims, assessments and charges which constitute, or, if unpaid, may become a lien, charge or encumbrance upon Borrower's business or any of Borrower's properties or assets.

     (k)     **Performance; Notice of Default.** Perform and comply with all terms, conditions and provisions of this Agreement and each Related Document, and promptly notify Lender if Borrower knows or has reason to know of any event that may constitute or give rise to an Event of Default.

     (l)     **Personal Financial Statements.** Each Guarantor shall provide Lender with personal financial statements listing Guarantor's assets and liabilities, including contingent liabilities, in such form and substance, and at such intervals as Lender may require.

     (m)     **Reports.** Within fifteen (15) business days of a request, Borrower shall provide Lender with such reports, and to the extent not otherwise prohibited under ethical rules or principles, provide Lender with such information as Lender may request with respect to Borrower's Clients and Client Matters for which Case Expense Advances or Working Capital Advances have been obtained under this Agreement. Without limiting the generality of the foregoing, Lender may request the following at any time: (a) for all currently contested Client Matters, a complete listing of such Client Matters including (i) the name of the Client with address, (ii) the name of the defendant(s) and addresses for each defendant, (iii) case number and (iv) court venue; and (b) for all Client Matters (whether currently contested or not), an accounts receivable aging report for each such Client Matter along with the name and address

7/4040604.7

UST APX 0085

of each related Client. If any reports that are not delivered as required, the interest rate shall increase as described above in the "Interest" section hereof.

(n)     **Taxes.** Pay promptly when due all taxes, governmental assessments and other fees and charges applicable to Borrower, its business operations, properties and assets. If and when requested by Lender, Borrower shall provide Lender with evidence that Borrower has timely complied with the requirements of this provision.

22.     **NEGATIVE COVENANTS.** So long as this Agreement remains in effect, Borrower and its owners will not, without Lender's prior written consent: (a) cease operations; (b) liquidate, merge, transfer, acquire, or consolidate with any other entity; (c) change Borrower's legal name or form of business organization; (d) change the closing date of Borrower's fiscal year; (e) dissolve or transfer any of Borrower's properties or assets other than in the ordinary course of Borrower's business; (f) change the location of Borrower's (i) residence if Borrower is an individual, (ii) principal place of business if Borrower is a business entity that is created without any state filings, (iii) state of organization if Borrower is a business entity that is created by state filings; or (g) make any substantial disbursement or use of Borrower's funds except in the ordinary course of Borrower's business.

23.     **EVENTS OF DEFAULT.** The following are Events of Default under this Agreement:

(a)     **Payment Default.** Should Borrower fail to make any payment to Lender upon demand or when otherwise when due of principal, interest, fees, expenses, charges, or other amounts included in the Obligations (time being of the essence).

(b)     **Creditor Proceedings.** Should any other creditor attempt to take or exercise any rights against any of the Collateral, or against any of Borrower's or any Guarantor's other properties or assets.

(c)     **False Statements.** Should any representation, warranty or statement made to Lender, or any Guarantor, under this Agreement, or under any Related Document, or in connection with any Advance, prove to be false or misleading in any material respect as of the date made or reaffirmed.

(d)     **Filing of a Tax Lien.** Should a tax lien or notice of tax lien be filed against Borrower, or against any Guarantor, or against any of their properties or assets.

(e)     **Guarantor's Death.** Should any Guarantor die.

(f)     **Insolvency.** Should Borrower or any Guarantor become insolvent, or apply for bankruptcy or other relief from creditors, or should a petition be filed against Borrower or any Guarantor under any federal or state bankruptcy law.

(g)     **Other Defaults.** Should Borrower or any Guarantor fail to comply with or perform under any covenant, term or condition of this Agreement or any Related Document.

(h)     **Guarantor Claims.** Should any Guarantor claim to withdraw, terminate, or otherwise limit the scope or effect of his/her Guaranty.

24.     **LENDER'S RIGHTS AND REMEDIES IN EVENT OF DEFAULT.** Lender shall have the following right and remedies following the occurrence of any Event of Default:

(a)     **Security Rights and Remedies.** Lender shall have all of the rights and remedies available to a secured party generally under the Code.

(b)     **Collection Rights.** Lender shall have the right to directly collect and receive all proceeds and payments arising under or in any way accruing from the Collateral as such amounts become due and payable. Borrower and each Guarantor unconditionally agree to assist Borrower in such collection efforts. Lender may direct the court in which any Client Claim is pending, or any person, firm, corporation, or other entity holding any of the Collateral, or owing payment thereon, to make payment directly to Lender. Borrower agrees to execute, or cause the execution, of all notices, pleadings, and other filings as may be required to facilitate Lender's collection of such amounts. Lender may in its own name or in the name of Borrower: (a) compromise or extend time for payment with respect to all or any portion of the Collateral for such amount and upon such terms as Lender may determine within Lender's sole and absolute discretion; (b) demand, collect, receive, sue for and give acquittances for any and all amounts due or to become due with respect to the Collateral; (c) take control of cash or other proceeds of the Collateral; (d) endorse Borrower's name on any notes, acceptances, checks, drafts, money orders, and other evidences of payment of the Collateral that may come into Lender's possession; (e) sign Borrower's name on any

7/4040604.7

-10-

UST APX 0086

Invoice, or billing statement relating to any of the Collateral; (f) apply for and obtain the appointment of a receiver for Borrower, without bond, and (g) do all other acts and things necessary within Lender's sole and absolute discretion to carry out the intent of this Agreement. Beyond the requirements of the Code, Lender and its officers, employees, agents and attorneys, shall have no fiduciary or other duty or responsibility to Borrower to preserve or maximize recovery of payments on the Collateral. Borrower hereby irrevocably appoints Lender as Borrower's attorney-in-fact for the purpose of taking any action permitted by this Agreement in Borrower's name.

(c) **Right of Set-Off.** Lender may at any time (whether or not an Event of Default then exists), and for any or no reason, with or without cause, set-off and apply any and all credits, monies, and properties of Borrower then in Lender's possession or under Lender's control, against any outstanding Obligations.

(d) **Application of Proceeds.** All proceeds derived from the collection, sale, or other disposition of the Collateral will be applied: (a) first to reimbursement of all expenses incurred by Lender in exercising and enforcing its security rights and remedies, including without limitation, reimbursement of Lender's reasonable collection expenses, attorneys' fees and court costs; and (b) to the payment of the outstanding Obligations in such order and with such priorities as Lender may determine within its sole and absolute discretion.

(e) **Equitable Relief.** Lender may file suit against Borrower and any Guarantor seeking specific performance of Borrower's and any Guarantor's agreements, covenants, and obligations in favor of Lender. Borrower and all Guarantors acknowledge and agree that Lender will suffer irreparable harm and damages will not be an adequate remedy in the event Borrower or any Guarantor uses, transfers or otherwise disposes of any Collateral following the occurrence of an Event of Default. Borrower and all Guarantors therefore acknowledge and agree that Lender shall be entitled (without limitation of any other rights and remedies available to Lender and without the necessity of posting a bond or other security) to obtain a restraining order and/or injunction against Borrower and any Guarantor prohibiting their use, disposition, transfer or concealment of any property included in the Collateral.

(f) **Cumulative Remedies.** All of Lender's rights and remedies, whether under this Agreement, or under any Related Document, or under the Code, or other applicable law, are and shall be cumulative, and may be exercised singularly or concurrently. Lender's election to pursue any particular remedy will not preclude Lender from pursuing any other remedy. Furthermore, Lender's election to make expenditure or to take any action to perform an obligation of Borrower under this Agreement or any Related Document, or otherwise, after Borrower's failure to do so, shall not affect Lender's right to declare an Event of Default to exist, or otherwise preclude Lender from exercising any of its rights or remedies.

25. **WAIVERS WITH RESPECT TO OBLIGATIONS.** Borrower and each Guarantor waive notice of default, demand and notice of demand, presentment for payment, protest and notice of protest, and notice of non-payment, with respect to the Obligations. Borrower and each Guarantor agree that discharge or release of any party who is, may, or will be liable to Lender for payment and performance of any Obligation, under a Guaranty or otherwise, or the release of the Collateral securing repayment of any Obligation shall not have the effect of releasing or otherwise diminishing or reducing the actual or potential liability of Borrower and/or any Guarantor, who shall remain liable to Lender, and/or of releasing any Collateral not expressly released by Lender. Lender's acceptance of payment other than in accordance with the terms of this Agreement, or Lender's subsequent agreement to extend or modify such repayment terms, shall likewise not have the effect of releasing any party or parties from their respective Obligations to Lender, and/or of releasing any of the Collateral. No course of dealing between Borrower and Lender, and between Lender and any Guarantor, nor any failure or delay on the part of Lender to exercise any of the rights and remedies granted under this Agreement, or under any Guaranty, or under any other agreement or agreements by and between the parties, or under the Code or other applicable law, shall have the effect of waiving any of Lender's rights and remedies. Any partial exercise of any rights and remedies granted to Lender shall furthermore not constitute a waiver of any of Lender's other rights and remedies, it being Borrower's and each Guarantor's intent and agreement that Lender's rights and remedies shall be cumulative in nature. Borrower and each Guarantor further agree that, upon the occurrence of an Event of Default under this Agreement, any waiver or forbearance on the part of Lender to pursue the rights and remedies available to Lender, shall be binding upon Lender only to the extent that Lender specifically agrees to any such waiver or forbearance in writing. A waiver or forbearance as to one Event of Default shall not constitute a waiver or forbearance as to any other Event of Default. None of the warranties, conditions, provisions and terms contained in this Agreement, or in any Related Document, shall be deemed to have been waived by any act or knowledge of Lender, its agents, officers or employees; but only by an instrument in writing specifying such waiver, signed by a duly authorized officer of Lender and delivered to Borrower.

26. **PROTECTION OF LENDER'S SECURITY RIGHTS.** Borrower agrees to promptly notify Lender of the assertion, or threatened assertion, of any claim, action, or proceeding affecting the Collateral, or the collection of all or any part thereof. Borrower will be fully responsible for any losses that Lender may suffer as a result of anyone other than Lender asserting any rights or interest in or to the Collateral. Borrower and each Guarantor agrees to appear in and to defend all actions or proceedings purporting to affect Lender's security interests in any of the Collateral subject to this Agreement and any of the rights and powers granted Lender hereunder. In the event that Borrower fails to do what is required of it under this Agreement, or if any action or proceeding is commenced naming

7/4040604.7

-11-

UST APX 0087

Docusign Envelope ID: FF5DB2A7-B417-4EDA-851D-EE1C9B641DF2 Page 12 6557

Lender as a party or affecting Lender's security interests or the rights and powers granted under this Agreement, then Lender may, without releasing Borrower from any of its obligations under this Agreement, do whatever Lender believes to be necessary and proper within its sole and absolute discretion to protect the security of this Agreement, including without limitation making additional Advances on Borrower's behalf.

27. **INDEMNIFICATION OF LENDER.** Borrower and each Guarantor unconditionally agree to indemnify, defend and save and hold Lender, its parent, subsidiaries and affiliated companies, and their officers, directors, employees, agents, and attorneys, harmless from any and all actual or threatened claims, investigations, suits, damages, losses, costs and expenses (including without limitation, Lender's legal costs and expenses), liabilities, penalties, fines and forfeitures, arising out of or in any way occasioned by this Agreement, and any Advance, or other relationship between the parties. The foregoing indemnity provisions shall survive the termination of this Agreement as to all matters arising or accruing prior to such cancellation, and the foregoing indemnity shall survive in the event that Lender elects to exercise any of the remedies as provided under this Agreement following default hereunder.

28. **EXECUTION OF ADDITIONAL DOCUMENTS.** Borrower agrees to execute all additional documents, instruments and agreements that Lender may deem to be necessary and proper, within its sole and absolute discretion, in form and substance satisfactory to Lender, to keep this Agreement in effect, to better reflect the true intent of this Agreement, and to consummate fully all of the transactions contemplated hereby and by any other agreement, instrument or document heretofore, now or at any time or times hereafter executed by Borrower and delivered to Lender.

29. **TERMINATION OF ADDITIONAL BORROWINGS.**

(a) **Termination by Borrower.** Borrower may, at any time and for any or no reason, advise Lender in writing that Borrower will no longer request Lender to make additional Advances under this Agreement.

(b) **Termination by Lender.** Lender may, at any time (whether or not an Event of Default then exists), and for any or no reason, with or without cause, advise Borrower in writing that Lender will no longer consider requests by Borrower to obtain additional Advances under this Agreement.

30. **MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are part of this Agreement:

(a) **Amendments.** No term or provision of this Agreement or any Related Document will be deemed to be altered or amended in any way unless such an amendment or alteration is contained in a separate written instrument signed by both Borrower and Lender in hand (to avoid doubt, the text of an email or a voice mail shall not be binding but an email may be used to transmit a binding facsimile of a written document). No conduct or course of dealing on the part of Lender, or any oral statement on the part of Lender's officers, employees, agents, or attorneys, may be construed by Borrower, or by Borrower's owners, or by any Guarantor, or by any court of law, to amend, alter or in any way modify the provisions of this Agreement, or the relationship of the parties, or the obligation of any party to any other person or entity.

(b) **Applicable Law.** This Agreement and each Related Document has been and will be delivered to and shall be deemed to be accepted by Lender in the State of Tennessee. This Agreement and the relationship of the parties is subject to, and is to be construed in accordance with the laws of the State of Tennessee, regardless of the conflict of law rules of that state.

Notwithstanding the foregoing, or any contrary provision of the above Section captioned "Savings Clause," or any other provision of this Agreement, if an Annual Fee is paid respecting any Working Capital Advance and the interest rate charged on such Advance at any time exceeds the Applicable Formula Rate as provided under Tennessee law, the substantive laws of the state where Borrower's main office is located shall apply to determine the interest, fees, and other charges that are permitted to be charged on such Advance (if such charges are permitted under such laws), but for no other purpose.

(c) **Captioned Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of the Agreement.

(d) **Costs and Expenses.** As additional consideration for the use of the money advanced under Case Expense Advances, if there is any Event of Default under this Agreement, Borrower shall pay to Lender the amount of Lender's costs and expenses (including the allocated cost of Lender's personnel) incurred in connection with Lender's subsequent due diligence examinations of Borrower. As additional consideration for the inspection, servicing, and verification of collateral related to Working Capital Advances, if there is any Event of Default under

7/4040604.7

-12-

UST APX 0088

this Agreement, Borrower shall pay to Lender the amount of Lender's costs and expenses (including the allocated cost of Lender's personnel) incurred in connection with Lender's subsequent due diligence examinations of Borrower related to Working Capital Advances. Borrower further agrees to reimburse Lender on demand for all of Lender's costs and expenses incurred in connection with the enforcement of Lender's rights and remedies under this Agreement or of any negotiations, amendment, workout, forbearance, or other events in response to any (or to prevent any) Event of Default, including without limitation, the reimbursement of the reasonable fees and expenses of Lender's attorneys, the allocated cost of Lender's personnel, travel expenses, the anticipated costs of post-judgment collection efforts, collection efforts during a bankruptcy case in which Borrower or any Guarantor is a debtor, and all other such costs and expenses, whether or not a lawsuit is filed.

(e) **Electronic Storage; Reproduction Deemed an Original.** Lender may electronically store and preserve this Agreement and each Related Document, and discard and otherwise destroy the original signed document(s). Any reproduction of this Agreement or any Related Document derived from Lender's electronic storage system shall be deemed to be original and authentic, and may serve in the place of the original signed document for all purposes.

(f) **Joint and Several Liability.** Each Borrower (if there is more than one) and each Guarantor are obligated under this Agreement and each Related Document on a "joint and several" basis. Each Borrower and Guarantor hereby waives any defense of impairment of collateral, diligence in collection, right to receive notice of or consent to extensions, and any other defenses of suretyship that may otherwise apply.

(g) **Multiple Counterparts.** This Agreement and each Related Document may be executed in multiple counterparts, any one of which will be deemed an original for all purposes.

(h) **Notices.** To give Borrower or any Guarantor any notice under this Agreement or under a Related Document, Lender may hand deliver or mail, email, fax, or otherwise communicate the notice to Borrower or any Guarantor at Borrower's or the Guarantor's current address found in Lender's files. If there is more than one Borrower or Guarantor, notice to any one Borrower or Guarantor will be considered notice to all Borrowers and Guarantors. To give Lender any notice under this Agreement, Borrower or any Guarantor must mail the notice to Lender by registered or certified mail to Lender's address specified by this Agreement, or to any other address that Lender may specify.

(i) **No Partnership or Agency.** Neither this Agreement, nor any other agreement or understanding between the parties, may be construed by any third person or any court to evidence or create a partnership, joint venture, agency, or fiduciary relationship between Borrower and Lender, it being the intent of the parties to absolutely disavow any such relationship.

(j) **No Waiver of Rights.** Lender will not be deemed to waive any right or remedy under this Agreement or under each Related Document unless the waiver is in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right or remedy may be construed by Borrower, or by Borrower's owners, or by any Guarantor, or by any court of law, as a waiver or forbearance of any such right or remedy or of any other right or remedy that may be available to Lender. Lender's written waiver of a provision of this Agreement or any Related Document will not prejudice, and may not in any way be construed as a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement or any Related Document. No course of dealing between Lender and Borrower, or between Lender and any Guarantor, may be constituted as a waiver of any of Lender's rights or remedies, or of any obligation of Borrower or any Guarantor.

(k) **Prior Agreements.** This Agreement replaces all prior agreements and written and verbal understandings between the parties with respect to all matters discussed in or relating to this Agreement. To the extent that any prior Related Document is not replaced with a new Related Document, the prior Related Document will remain in full force and effect. All financing statements now in effect and in any way related to the Collateral will remain in full force and effect, with priority not impaired in any way, until terminated by Lender.

(l) **Severability.** If a court finds any provision of this Agreement, or any Related Document, to be invalid or unenforceable, the offending provision will be deemed to be modified to be within the limits of enforceability or validity. However, if this cannot be done, the offending provision will be deemed to be stricken and all other provisions of this Agreement will remain valid, enforceable and in effect.

(m) **Sole Discretion of Lender.** Whenever Lender's consent, approval, or action is required or permitted under this Agreement or under any Related Document, Lender's decision whether to consent, approve, or otherwise act will be in the sole and absolute discretion of Lender, and Lender's decision will be final and conclusive.

(n) **Conduct and Waivers.** Lender shall not in any event be liable for indirect or consequential damages in any matter arising from or related to this Agreement. If at any time Borrower or a

7/4040604.7

-13-

UST APX 0089

Guarantor believes that Lender has breached any obligation or law with respect to this Agreement, such Borrower or Guarantor shall promptly so advise Lender in writing. As further consideration for any extension of the alternate maturity date hereof, increase, or other accommodation by Lender, upon the effectiveness of such accommodation, without any further documentation, Borrower and Guarantors shall be deemed to have released Lender and its affiliates and related parties from any liability to Borrower or Guarantor arising from or related to this Agreement, except for duties of subsequent performance under this Agreement and the Related Documents as so amended.

(o) **Successors and Assigns Bound; Consent to Participation.** Each and every covenant and obligation of this Agreement and each Related Document shall be binding upon Borrower and on any Guarantor, and shall be binding on each of their successors, heirs, representatives and assigns. Lender may transfer, sell and assign (and may have already transferred, sold, and assigned) all or any portion of the Obligations or this Agreement to one or more third persons without notice to Borrower and without the necessity of obtaining Borrower's consent. Without limiting the generality of the foregoing, Advocate Capital, Inc. may have previously assigned its rights hereunder to an affiliate, or may do so in the future, while retaining the role of servicer. At all times that such an assignment is in effect (including as of the date of this Agreement, if applicable), all amendments, taking of collateral, waivers, administration of advances, enforcement actions, exercising of remedies, filing of proofs of claim in bankruptcy cases, foreclosures, filing of lawsuits and other actions taken by Advocate Capital, Inc. regarding this Agreement or the Obligations shall be deemed taken in its capacity as servicer for, and for the account of, its affiliate, whether taken in the name of Advocate Capital, Inc. alone or taken expressly in its capacity as servicer for its affiliate. Borrower may not, however, assign its rights under this Agreement or under any Related Document without Lender's prior written consent.

(p) **Taxation.** Borrower agrees to pay, or to reimburse Lender for the payment of, all UCC filing taxes and other taxes and assessments payable to governmental authorities that may be imposed upon Lender as a direct result of this Agreement or of Lender's security interest in the Collateral, except for any taxes based upon the net income of Lender.

(q) **Unconditional and Irrevocable Nature of Agreements and Consents.** Borrower's and each Guarantor's covenants, agreements and consents under this Agreement and under each Related Document, are and shall be unconditional and irrevocable, and may not be withdrawn or otherwise revoked by Borrower or by any Guarantor under any circumstance, other than as a result of Lender's prior written consent, which Lender has the right to reject or withhold for any or no reason, with or without cause.

31. **Electronic Communications and Security.**

(a) Borrower is solely responsible for providing for and maintaining the physical, electronic, procedural, administrative, and technical security of data and systems in its possession or under its control or operated on its behalf. Lender is not responsible for any computer viruses or disabling routines, including, without limitation, programs commonly referred to as "malware", "keystroke loggers", "ransomware" and/or "spyware," or a time bomb, software lock, drop-dead device, malicious logic, worm, Trojan horse, bug, error, defect, or trap door, that is capable of (or has the effect of allowing any untrusted party to be capable of) accessing or blocking access to, modifying, deleting, damaging, disabling, deactivating, interfering with, or otherwise harming any of Borrower's computers, networks, devices, data, or other electronically stored information, or computer programs or systems, or those of any vendor, or any other problems or malfunctions resulting from any computer viruses, or any related problems that may be associated with the use of email or any online system. Any material downloaded or otherwise obtained through the use of any electronic service is obtained at Borrower's own discretion and risk, and Lender is not responsible for any damage to computer or operating systems or devices or for loss of data that results from the download of any such material, whether due to any computer virus or otherwise. Borrower is solely responsible for maintaining and applying anti-virus software, security patches, firewalls, and other security measures with respect to Borrower's computers, operating systems, and devices, and for protecting, securing, and backing up any data and information stored in or on its computers, operating systems, or devices, including those of any vendor. Lender is not responsible for any errors or failures resulting from defects in or malfunctions of any software or applications installed on Borrower computers, operating systems, or devices, or those of any vendor.

(b) Borrower acknowledges and agrees that it is its responsibility to protect itself and to be vigilant against e-mail fraud and other internet and application frauds and schemes (including, without limitation, fraud commonly referred to as "phishing" or "business e-mail compromise" or the like). Borrower agrees that it will confirm with Lender by telephone before responding to any email apparently received from Lender that requests sensitive personal or financial information. Borrower agrees that Lender shall not be responsible for any losses, injuries, or harm incurred as a result of any electronic, e-mail, internet, or application fraud or the like.

(c) Borrower agrees and consents to enter into agreements and to accept terms, conditions, and information electronically, and otherwise to transact business with Lender electronically, as Lender may require. Any document or instrument that Lender requires in connection with any service may be executed electronically with

7/4040604.7

-14-

UST APX 0090

or through the use of digital or facsimile signatures or the use of electronic sounds, symbols, or processes or biometrics that constitute electronic signatures, as Lender may direct or require from time to time. Such electronic execution shall have the same legal effect, validity, and enforceability as execution by means of a manually applied or written signature and shall signify an intent to be bound. Any executed documents or instruments, or executed signature pages thereof, may be exchanged or delivered electronically by facsimile or by e-mail in PDF (portable document format) or other electronic format, and such electronic exchange or delivery shall be as effective as the delivery of an original, manually executed counterpart of the agreement, except as Lender may otherwise direct or require. For purposes of this Agreement, "electronic" shall also mean "digital".

(d) Borrower agrees to keep Borrower's mailing address(es) and any applicable e-mail address(es) current and updated with Lender at all times. In the event of notices sent via e-mail, Borrower agrees that Lender is under no obligation to re-send, re-transmit, or otherwise deliver any notifications or information that has been transmitted by e-mail and that has been returned "undeliverable" or otherwise rejected for delivery.

(e) With respect to communications exchanged between via e-mail or other electronic messaging, Borrower (i) agrees that Lender has no obligation to monitor or investigate the use of Borrower's computer system or the source of any communication received from Borrower or bearing Borrower's e-mail address or other information that identifies the sender as Borrower, (ii) releases Lender from any claim or liability arising from or in connection with any communications sent or received using e-mail or other electronic messaging, and (iii) agrees to indemnify Lender and hold Lender harmless from all claims relating to communications in any way out of or connected in any way with the use of e-mail or other electronic communications.

32. **Effect of Amendment and Restatement.** This Agreement is a continuation of the Prior Agreement, and the amendment and restatement of the Prior Agreement hereby does not impair in any way the continued attachment, perfection or priority of any security interest or other rights arising under the Prior Agreement.

33. **CONSENT TO JURISDICTION AND VENUE.** BORROWER AND EACH GUARANTOR HEREBY SUBMIT TO THE EXCLUSIVE JURISDICTION AND EXCLUSIVE VENUE OF THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT COURT OF TENNESSEE, AND OF ANY TENNESSEE STATE COURT SITTING IN NASHVILLE, TENNESSEE, FOR THE PURPOSE OF LEGAL PROCEEDINGS ARISING OUT OF OR RELATING TO THIS AGREEMENT, EACH RELATED DOCUMENT, AND WITH RESPECT TO EACH TRANSACTION CONTEMPLATED HEREBY AND THEREBY. BORROWER AND EACH GUARANTOR IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY OBJECTION TO WHICH BORROWER AND ANY GUARANTOR MAY NOW AND IN THE FUTURE HAVE TO THE LAYING OF THE VENUE OF ANY SUCH PROCEEDING BROUGHT IN SUCH TENNESSEE COURT, AND ANY CLAIM THAT ANY SUCH PROCEEDING HAS BEEN BROUGHT IN AN INCONVENIENT FORUM. NOTWITHSTANDING THE FOREGOING, LENDER MAY ELECT TO BRING AN ACTION AGAINST BORROWER OR ANY GUARANTOR, OR WITH RESPECT TO ANY PROPERTY, IN ANY COURT WITH APPROPRIATE JURISDICTION OVER THE PARTIES OR SUCH PROPERTY.

34. **JURY WAIVER.** LENDER, BORROWER AND EACH GUARANTOR WAIVE THE RIGHT TO TRIAL BY JURY IN ANY LAWSUIT BROUGHT BY ANY PARTY AGAINST ANY OTHER PARTY.

BORROWER AND EACH GUARANTOR CERTIFY THAT: (1) THEY HAVE AGREED TO BE SUBJECT TO THIS AGREEMENT AND EACH RELATED DOCUMENT AS THEIR OWN FREE ACT AND DEED, WITHOUT DURESS OR COERCION; (2) THEY HAVE CAREFULLY READ THIS AGREEMENT AND EACH RELATED DOCUMENT, AND AGREE TO ALL THEIR TERMS AS WRITTEN; (3) THEY HAVE KNOWINGLY CONSENTED TO ALL WAIVERS; AND (4) NEITHER LENDER NOR ANYONE CONNECTED WITH LENDER HAS MADE ANY STATEMENT OR PROMISE THAT MAY CONTRADICT IN ANY WAY WHAT IS WRITTEN IN THIS AGREEMENT OR IN ANY RELATED DOCUMENT.

EACH GUARANTOR ADDITIONALLY ACKNOWLEDGES THAT PAYMENT OF THE OBLIGATIONS MAY BE GUARANTEED BY ADDITIONAL GUARANTORS WHO ARE NOT PARTY TO THIS AGREEMENT AND THAT THE EXISTENCE OF SUCH ADDITIONAL GUARANTORS IN NO WAY LIMITS EACH UNDERSIGNED GUARANTOR'S JOINT AND SEVERAL OBLIGATIONS HEREUNDER AND UNDER THE APPLICABLE GUARANTY.

7/4040604.7

-15-

UST APX 0091

This Amended and Restated Master Loan and Security Agreement is executed as of the date first written above.

LENDER:

ADVOCATE CAPITAL, INC.
for itself and its assigns

By:        Paul Myers
Title:     Chief Executive Officer and Chairman
Address:   One Vantage Way, Suite C-200
           Nashville, TN  37228


BORROWER:

Name:     Apperson Crump PLC

Address:
          6000 Poplar Ave., Suite 150
          Memphis, TN 38119

GUARANTOR:

Name:     Thomas R. Buckner

Address:  6589 May Hollow Cove
          Memphis, TN 38119

DocuSigned by:
Thomas R. Buckner

Authorized Signatory: Thomas R. Buckner
Title: Partner

DocuSigned by:
Thomas R. Buckner


GUARANTOR:

Name:     Bruce Kramer

Address:
          8704 Southwind Drive
          Memphis, TN 38125

DocuSigned by:

GUARANTOR:

Name:     Jon Smith

Address:  54 Robert Dell Cove
          Memphis, TN 38117

DocuSigned by:
Jon Smith


-16-

UST APX 0092

GUARANTOR:

Name:    Bruce M. Smith

Address:
         396 Wellington Cove
         Memphis, TN 38117

Signed by:

*Bruce M. Smith*

53A9A076604E4CE...

\* Each Guarantor must sign this Agreement.          MS #551954.2 (4/6/05)
                                                      Multi-State

-17-

UST APX 0093



Tre Hargett
Secretary of State

**State of Tennessee**
**Department of State**

Uniform Commercial Code
312 Rosa L. Parks Avenue
6th Fl. Wm.R. Snodgrass Tower
Nashville, Tennessee 37243
(615) 741-3276

**DATE:** 04/17/13

**To:**

    CORPORATION SERVICE COMPANY
    801 ADLAI STEVENSON DRIVE
    SPRINGFIELD, IL 62703

**RE:UCC1 Filing No.** 213130996

**DEBTOR INFORMATION**

    APPERSON CRUMP PLC
    6070 POPLAR AVENUE
    SUITE 400
    MEMPHIS, TN 38119

**SECURED PARTY INFORMATION**

    ADVOCATE CAPITAL INC
    ONE VANTAGE WAY
    SUITE C165
    NASHVILLE, TN 37228

**MATURITY DATE:** 04/17/18          **INDEBTEDNESS:** $1,750,000.00

This acknowledges the filing of the attached UCC1 document. Please review the above data to ensure database information corresponds with information on the submitted UCC form. In the event a discrepancy is found, please note the error and return the entire package to our office.

If we may be of any further service to you, please contact us at (615) 741-3276.

Enclosures:      Original Documents

**PAYMENT INFORMATION:**     **Paid Fees**          **Paid Taxes**
                         $15.00                $2,010.20

**\* Please retain for fee and tax purposes**

The Department of State is an equal opportunity, equal access, affirmative action public agency.

UST APX 0094      rpt130

**UCC FINANCING STATEMENT**

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Corporation Service Company    1-800-858-5294

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

75183620 - 352410

Corporation Service Company
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Tennessee  (S.O.S.)

RECEIVED - TENDERED FOR FILING
TENNESSEE SECRETARY OF STATE
04/17/13 11:31 AM
213-130996

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | Apperson Crump PLC | | | |
|---|---|---|---|---|

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 1c. MAILING ADDRESS 6070 Poplar Avenue, Suite 400 | CITY Memphis | STATE TN | POSTAL CODE 38119 | COUNTRY USA |
|---|---|---|---|---|

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION Professional LLC | 1f. JURISDICTION OF ORGANIZATION TN | 1g. ORGANIZATIONAL ID #, if any  ☒ NONE |
|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any  ☐ NONE |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | Advocate Capital, Inc. | | | |
|---|---|---|---|---|

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 3c. MAILING ADDRESS One Vantage Way, Suite C165 | CITY Nashville | STATE TN | POSTAL CODE 37228 | COUNTRY USA |
|---|---|---|---|---|

4. This FINANCING STATEMENT covers the following collateral:

Maximum principal indebtedness for Tennessee recording tax purposes is $1,750,000.00.

All accounts, general intangibles, payment intangibles and all similar rights that Debtor may have of every nature and kind, including specifically and without limitation all of Debtor's rights to receive payment or otherwise, for legal and other services rendered and to be rendered, and for costs and expenses advanced and to be advanced, and all other rights and interest that Debtor may have in and with respect to each and every client matter; and all credits, monies, and properties of Debtor now and in the future in Secured Party's possession or under Secured Party's control, whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions; all records of any kind relating to any of the foregoing; and all proceeds (including insurance, chattel paper and other accounts proceeds).

NOTICE: By agreement, Debtor is prohibited from granting additional security interests in the collateral and in collateral proceeds.    Competing creditors are prohibited from collecting or attempting to collect Debtor's accounts and payment intangibles to the detriment of Secured Party's security rights and interests therein. This Notice is made and directed to potential competing creditors pursuant to Official Comment 5 to UCC 9-331.

| 5. ALTERNATIVE DESIGNATION (if applicable): | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum   (if applicable) | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional] | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |
|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA

75183620

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

UST APX 0095



**STATE OF TENNESSEE**
**Tre Hargett, Secretary of State**
Division of Business Services
William R. Snodgrass Tower
312 Rosa L. Parks AVE, 6th FL
Nashville, TN 37243-1102

CORPORATION SERVICE COMPANY
801 ADLAI STEVENSON DRIVE
SPRINGFIELD, IL 62703

June 2, 2015 5:04 PM

Financing Statement Doc #: 423325331
DLN #:

## UCC Financing Statement Acknowledgment

This acknowledges the filing of the attached UCC1 document. Please review the data to ensure database information corresponds with information on the submitted UCC form. In the event a discrepancy is found, please note the error and return the entire package to our office. If we may be of any further service to you, please contact us at the number noted below.

Tre Hargett
Secretary of State

Enclosures: Original Documents

**DEBTOR INFORMATION**

BUCKNER, THOMAS R.
6589 MAY HOLLOW COVE
MEMPHIS, TN 38119

KRAMER, BRUCE S.
8704 SOUTHWIND DRIVE
MEMPHIS, TN 38125

**SECURED PARTY INFORMATION**

ADVOCATE CAPITAL, INC.
ONE VANTAGE WAY SUITE C-200
NASHVILLE, TN 37228

**RECORDING TAX**
Maximum principal indebtedness for Tennessee recording tax purposes is: $0.00

**FILING INFORMATION**
Financing Statement Doc #: 423325331
Filing Date: 6/2/2015 4:56 PM
Lapse Date: 6/2/2020 11:59 PM
Optional Filer Ref Data [100381036]

| Document Receipt | | |
|---|---|---|
| Receipt # : 2081688 | Fees Paid: | $31.25 |
| | Taxes Paid: | $0.00 |
| Payment-ECheck Ref #: 162902988 | | $31.25 |

Phone (615) 741-3276 * Website: http://tnbear.tn.gov/ Page 1 of 1

UST APX 0096



## FINANCING STATEMENT

| A. NAME & PHONE OF CONTACT AT FILER (Optional) |
| --- |
| CSC (800)858-5294 |

| B. EMAIL OF CONTACT AT FILER (Optional) |
| --- |
| FilingDept@cscinfo.com |

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

CORPORATION SERVICE COMPANY
801 ADLAI STEVENSON DRIVE
SPRINGFIELD, IL  62703

This is a representation of a document created electronically at the Tennessee Secretary of State's web site.

423325331

Financing Statement Doc #: 423325331

Filing Date: 6/2/2015 4:56 PM

Tre Hargett, Secretary of State

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

## DEBTORS

**1. DEBTOR'S NAME**

| a. ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- |
| OR b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S) INITIAL(S) | SUFFIX |
| BUCKNER | THOMAS | R. | |

| c. MAILING ADDRESS |
| --- |
| 6589 MAY HOLLOW COVE |

| d. CITY | STATE | POSTAL CODE | COUNTRY |
| --- | --- | --- | --- |
| MEMPHIS | TN | 38119 | USA |

**2. DEBTOR'S NAME**

| a. ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- |
| OR b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S) INITIAL(S) | SUFFIX |
| KRAMER | BRUCE | S. | |

| c. MAILING ADDRESS |
| --- |
| 8704 SOUTHWIND DRIVE |

| d. CITY | STATE | POSTAL CODE | COUNTRY |
| --- | --- | --- | --- |
| MEMPHIS | TN | 38125 | USA |

## SECURED PARTIES

**1. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY)**

| a. ORGANIZATION'S NAME ADVOCATE CAPITAL, INC. | | | |
| --- | --- | --- | --- |
| OR b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S) INITIAL(S) | SUFFIX |

| c. MAILING ADDRESS |
| --- |
| ONE VANTAGE WAY SUITE C-200 |

| d. CITY | STATE | POSTAL CODE | COUNTRY |
| --- | --- | --- | --- |
| NASHVILLE | TN | 37228 | USA |

COLLATERAL: This financing statement covers the following collateral:

Maximum principal indebtedness for Tennessee recording tax purposes is $0.00.
All of debtor's present and future undertakings and/or engagements for legal and other related services performed and to be performed by debtor, whether in the form of assertion or defense of legal claims, or otherwise, and whether or not the subject of litigation, arbitration, mediation or other contested controversy, together with all proceeds thereof, including, but not limited to, all such accounts, instruments, chattel paper, general intangibles, and payment intangibles (all as defined in Article 9 of the Uniform Commercial Code as in effect in Tennessee).

Maximum principal indebtedness for Tennessee recording tax purposes is: $0.00

FINANCING STATEMENT (TN Form UCC1) (Rev. 07/01/2013)

Page 1 of 2

UST APX 0097



# FINANCING STATEMENT

This is a representation of a document created electronically at the Tennessee Secretary of State's web site.

| |
|---|
| A. NAME & PHONE OF CONTACT AT FILER (Optional) |
| CSC (800)858-5294 |
| B. EMAIL OF CONTACT AT FILER (Optional) |
| FilingDept@cscinfo.com |
| C. SEND ACKNOWLEDGMENT TO: (Name and Address) |

Financing Statement Doc #: 423325331

Filing Date: 6/2/2015 4:56 PM

Tre Hargett, Secretary of State

⌐ CORPORATION SERVICE COMPANY
801 ADLAI STEVENSON DRIVE
SPRINGFIELD, IL  62703

L ⌐

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

Check only if applicable and check only one box: Collateral is  ☐ held in a Trust
☐ being administered by a Decedent's Personal Representative

Check only if applicable and check only one box:
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility

Check only if applicable and check only one box:
☐ Agricultural Lien  ☐ Non-UCC Filing

ALTERNATIVE DESIGNATION (if applicable):  ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

OPTIONAL FILER REFERENCE DATA:
[100381036]

NOTE: All information on this form is public record.

FINANCING STATEMENT (TN Form UCC1) (Rev. 07/01/2013)

Page 2 of 2

UST APX 0098



**Tre Hargett**
Secretary of State

### Division of Business Services
### Department of State
State of Tennessee
312 Rosa L. Parks AVE, 6th FL
Nashville, TN 37243-1102

CORPORATION SERVICE COMPANY
801 ADLAI STEVENSON DRIVE
SPRINGFIELD, IL 62703

July 17, 2018 9:45 AM

Financing Statement Doc #:   429092084
DLN #:  B0571-5748

## UCC Financing Statement Acknowledgment

This acknowledges the filing of the attached UCC1 document.  Please review the data to ensure database information corresponds with information on the submitted UCC form.  In the event a discrepancy is found, please note the error and return the entire package to our office.  If we may be of any further service to you, please contact us at the number noted below.

Apperson Crump PLC

Tre Hargett
Secretary of State

Enclosures:  Original Documents

**DEBTOR INFORMATION**

SMITH, BRUCE M.

396 WELLINGTON COVE
MEMPHIS, TN 38117

SMITH, JON

54 ROBERT DELL COVE
MEMPHIS, TN 38117

**SECURED PARTY INFORMATION**

ADVOCATE CAPITAL, INC.

ONE VANTAGE WAY SUITE C-200
NASHVILLE, TN 37228

**RECORDING TAX**
Maximum principal indebtedness for Tennessee recording tax purposes is:          $0.00

**FILING INFORMATION**
Financing Statement Doc #:    429092084
Filing Date:                           7/17/2018 9:40 AM
Lapse Date:                          7/17/2023 11:59 PM
Optional Filer Ref Data          [149370617]

Document Receipt

Receipt # :  4193047

Fees Paid:          $30.00
Taxes Paid:          $0.00

Payment-Account  -  #41221 API ACH Corporation Service Company, SACRAMENTO, CA          $30.00

Phone (615) 741-3276  *  Website:  https://tnbear.tn.gov/UCC          Page 1 of 1

UST APX 0099



429092084

## FINANCING STATEMENT

| A. NAME & PHONE OF CONTACT AT FILER (Optional) |
|---|
| CSC (800)858-5294 |

| B. EMAIL OF CONTACT AT FILER (Optional) |
|---|
| FilingDept@cscinfo.com |

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

CORPORATION SERVICE COMPANY
801 ADLAI STEVENSON DRIVE
SPRINGFIELD, IL  62703

This is a representation of a document created electronically at the Tennessee Secretary of State's web site.

Financing Statement Doc #: 429092084
FILED: 7/17/2018 9:40 AM

Tre Hargett, Secretary of State

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

### DEBTORS

**1. DEBTOR'S NAME**

| a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S) INITIAL(S) | SUFFIX |
| SMITH | BRUCE | M. | |

| c. MAILING ADDRESS | | | |
|---|---|---|---|
| 396 WELLINGTON COVE | | | |

| d. CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|
| MEMPHIS | TN | 38117 | USA |

**2. DEBTOR'S NAME**

| a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S) INITIAL(S) | SUFFIX |
| SMITH | JON | | |

| c. MAILING ADDRESS | | | |
|---|---|---|---|
| 54 ROBERT DELL COVE | | | |

| d. CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|
| MEMPHIS | TN | 38117 | USA |

### SECURED PARTIES

**1. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY)**

| a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| ADVOCATE CAPITAL, INC. | | | |
| b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S) INITIAL(S) | SUFFIX |

| c. MAILING ADDRESS | | | |
|---|---|---|---|
| ONE VANTAGE WAY SUITE C-200 | | | |

| d. CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|
| NASHVILLE | TN | 37228 | USA |

COLLATERAL: This financing statement covers the following collateral:

Maximum principal indebtedness for Tennessee recording tax purposes is $0.00.
All of debtor's present and future undertakings and/or engagements for legal and other related services performed and to be performed by debtor, whether in the form of assertion or defense of legal claims, or otherwise, and whether or not the subject of litigation, arbitration, mediation or other contested controversy, together with all proceeds thereof, including, but not limited to, all such accounts, instruments, chattel paper, general intangibles, and payment intangibles (all as defined in Article 9 of the Uniform Commercial Code as in effect in Tennessee).

Maximum principal indebtedness for Tennessee recording tax purposes is:                    $0.00

UCC FINANCING STATEMENT (TN Form UCC1) (Rev. 10/17)                    Page 1 of 2                    RDA 1154

UST APX 0100



# FINANCING STATEMENT

| |
|---|
| A. NAME & PHONE OF CONTACT AT FILER (Optional)<br>CSC (800)858-5294 |
| B. EMAIL OF CONTACT AT FILER (Optional)<br>FilingDept@cscinfo.com |
| C. SEND ACKNOWLEDGMENT TO: (Name and Address)<br><br>┌ CORPORATION SERVICE COMPANY<br>801 ADLAI STEVENSON DRIVE<br>SPRINGFIELD, IL  62703<br><br>└ ┘ |

This is a representation of a document created electronically at the Tennessee Secretary of State's web site.

Financing Statement Doc #: 429092084

FILED: 7/17/2018 9:40 AM

Tre Hargett, Secretary of State

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

Check only if applicable and check only one box:  Collateral is  ☐ held in a Trust
☐ being administered by a Decedent's Personal Representative

Check only if applicable and check only one box:
☐ Public-Finance Transaction    ☐ Manufactured-Home Transaction    ☐ A Debtor is a Transmitting Utility

Check only if applicable and check only one box:
☐ Agricultural Lien    ☐ Non-UCC Filing

ALTERNATIVE DESIGNATION (if applicable):    ☐ Lessee/Lessor    ☐ Consignee/Consignor    ☐ Seller/Buyer    ☐ Bailee/Bailor    ☐ Licensee/Licensor

OPTIONAL FILER REFERENCE DATA:
[149370617]

NOTE: All information on this form is public record.

UST APX 0101



Tre Hargett
Secretary of State

Apperson Crump PLC

# Division of Business Services
## Department of State
### State of Tennessee
312 Rosa L. Parks AVE, 6th FL
Nashville, TN 37243-1102

CORPORATION SERVICE COMPANY
801 ADLAI STEVENSON DRIVE
SPRINGFIELD, IL 62703

January 31, 2018 10:21 AM

Financing Statement Doc #: 213130996
Amendment Doc #: 428178547
DLN #: B0488-9868

## UCC Financing Statement Amendment Acknowledgment

This acknowledges the filing of the attached UCC3 document. Please review the data to ensure database information corresponds with information on the submitted UCC form. In the event a discrepancy is found, please note the error and return the entire package to our office. If we may be of any further service to you, please contact us at the number noted below.

Tre Hargett
Secretary of State

Enclosures: Original Documents

AMENDMENT INFORMATION
| | |
|---|---|
| Amendment Doc #: | 428178547 |
| Amendment Filing Date: | 1/31/2018 10:11 AM |
| Amendment Actions: | Continuation |
| Financing Statement Lapse Date: | 4/17/2023 11:59 PM |
| Optional Filer Ref Data: | [142043613] |

### Document Receipt

Receipt # : 3776605

Fees Paid: $15.00
Taxes Paid: $0.00

Payment-Account - #41221 API ACH Corporation Service Company, SACRAMENTO, CA          $15.00

UST APX 0102



Apperson Crump PLC



428178547

# FINANCING STATEMENT AMENDMENT

This is a representation of a document created electronically at the Tennessee Secretary of State's web site.

| | |
|---|---|
| A. NAME & PHONE OF CONTACT AT FILER (Optional)<br>CSC (800)858-5294 | |
| B. EMAIL OF CONTACT AT FILER (Optional)<br>FilingDept@cscinfo.com | |
| C. SEND ACKNOWLEDGMENT TO: (Name and Address)<br><br>⌐ CORPORATION SERVICE COMPANY<br>801 ADLAI STEVENSON DRIVE<br>SPRINGFIELD, IL 62703<br><br>L ⌐ | |

Amendment Doc #: 428178547

FILED: 1/31/2018 10:11 AM

Tre Hargett, Secretary of State

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| INITIAL FINANCING STATEMENT FILE NUMBER<br>213130996 | ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |
|---|---|

☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of Secured Party authorizing this Termination Statement

☐ ASSIGNMENT (full or partial)

☑ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

☐ PARTY INFORMATION CHANGE:
This Change affects ☐ Debtor or ☐ Secured Party of record    ☐ CHANGE name and/or address    ☐ ADD name    ☐ DELETE name

☐ COLLATERAL CHANGE:    ☐ ADD collateral    ☐ DELETE collateral    ☐ RESTATE covered collateral    ☐ ASSIGN collateral
Indicate collateral:

The increase in the maximum principal indebtedness for Tennessee recording tax purposes is:    $0.00

NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: (name of Assignor, if this is an Assignment) If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| | ORGANIZATION'S NAME<br>Advocate Capital, Inc. | | | |
|---|---|---|---|---|
| OR | INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S) INITIAL(S) | SUFFIX |
| | OPTIONAL FILER REFERENCE DATA:<br>[142043613] | | | |

NOTE: All information on this form is public record.

UCC FINANCING STATEMENT AMENDMENT (TN Form UCC3) (Rev. 10/17)          Page 1 of 1          RDA 1154

UST APX 0103



Tre Hargett
Secretary of State

Division of Business Services
Department of State
State of Tennessee
312 Rosa L. Parks AVE, 6th FL
Nashville, TN 37243-1102

CORPORATION SERVICE COMPANY
801 ADLAI STEVENSON DRIVE
SPRINGFIELD, IL 62703

March 16, 2020 10:11 AM

Financing Statement Doc #: 423325331
Amendment Doc #: 432138877
DLN #: B0838-3034

## UCC Financing Statement Amendment Acknowledgment

This acknowledges the filing of the attached UCC3 document. Please review the data to ensure database information corresponds with information on the submitted UCC form. In the event a discrepancy is found, please note the error and return the entire package to our office. If we may be of any further service to you, please contact us at the number noted below.

Tre Hargett
Secretary of State

Enclosures: Original Documents

---

AMENDMENT INFORMATION
| | |
|---|---|
| Amendment Doc #: | 432138877 |
| Amendment Filing Date: | 3/16/2020 10:06 AM |
| Amendment Actions: | Continuation |
| Financing Statement Lapse Date: | 6/2/2025 11:59 PM |
| Optional Filer Ref Data: | [179185756] |

---

### Document Receipt

Receipt # : 5376009

| | |
|---|---|
| Fees Paid: | $15.00 |
| Taxes Paid: | $0.00 |

Payment-Account - #41221 API ACH Corporation Service Company, SACRAMENTO, CA          $15.00

---

Phone (615) 741-3276 * Website: https://tnbear.tn.gov/UCC                    Page 1 of 1

UST APX 0104



432138877

# FINANCING STATEMENT AMENDMENT

This is a representation of a document created electronically at the Tennessee Secretary of State's web site.

| | |
|---|---|
| A. NAME & PHONE OF CONTACT AT FILER (Optional)<br>CSC (800)858-5294 | |
| B. EMAIL OF CONTACT AT FILER (Optional)<br>FilingDept@cscinfo.com | |
| C. SEND ACKNOWLEDGMENT TO: (Name and Address) | |

⌐ CORPORATION SERVICE COMPANY
801 ADLAI STEVENSON DRIVE
SPRINGFIELD, IL 62703

L ⌐

Amendment Doc #: 432138877

FILED: 3/16/2020 10:06 AM

Tre Hargett, Secretary of State

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| INITIAL FINANCING STATEMENT FILE NUMBER<br>423325331 | ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |
|---|---|

☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of Secured Party authorizing this Termination Statement

☐ ASSIGNMENT (full or partial)

☑ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

☐ PARTY INFORMATION CHANGE:
This Change affects ☐ Debtor or ☐ Secured Party of record ☐ CHANGE name and/or address ☐ ADD name ☐ DELETE name

☐ COLLATERAL CHANGE: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral
Indicate collateral:

The increase in the maximum principal indebtedness for Tennessee recording tax purposes is: $0.00

NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: (name of Assignor, if this is an Assignment) If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| ORGANIZATION'S NAME<br>Advocate Capital, Inc. | | | |
|---|---|---|---|
| OR INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S) INITIAL(S) | SUFFIX |

OPTIONAL FILER REFERENCE DATA:
[179185756]

NOTE: All information on this form is public record.

UST APX 0105



Tre Hargett
Secretary of State

**Division of Business Services**
**Department of State**
**State of Tennessee**
312 Rosa L. Parks AVE, 6th FL
Nashville, TN 37243-1102

| | |
|---|---|
| CORPORATION SERVICE COMPANY | February 15, 2023 8:28 AM |
| 801 ADLAI STEVENSON DRIVE | |
| SPRINGFIELD, IL 62703 | Financing Statement Doc #: 213130996 |
| | Amendment Doc #: 438020701 |
| | DLN #: |

## UCC Financing Statement Amendment Acknowledgment

This acknowledges the filing of the attached UCC3 document. Please review the data to ensure database information corresponds with information on the submitted UCC form. In the event a discrepancy is found, please note the error and return the entire package to our office. If we may be of any further service to you, please contact us at the number noted below.

*Tre Hargett*

Tre Hargett
Secretary of State

Enclosures: Original Documents

---

**AMENDMENT INFORMATION**

| | |
|---|---|
| Amendment Doc #: | 438020701 |
| Amendment Filing Date: | 2/15/2023 8:23 AM |
| Amendment Actions: | Continuation |
| Financing Statement Lapse Date: | 4/17/2028 11:59 PM |
| Optional Filer Ref Data: | 2497 76596 |

---

### Document Receipt

| | | |
|---|---|---|
| Receipt # : 7810785 | Fees Paid: | $15.00 |
| | Taxes Paid: | $0.00 |
| Payment-Account - #032072 API Corporation Service Company V3, SACRAMENTO, CA | | $15.00 |

---

UST APX 0106




438020701

# FINANCING STATEMENT AMENDMENT

This is a representation of a document created electronically at the Tennessee Secretary of State's web site.

Amendment Doc #: 438020701

FILED: 2/15/2023 8:23 AM

Tre Hargett, Secretary of State

A. NAME & PHONE OF CONTACT AT FILER (Optional)
CORPORATION SERVICE COMPANY 1-800-858-5294

B. EMAIL OF CONTACT AT FILER (Optional)
SPRFiling@cscglobal.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

CORPORATION SERVICE COMPANY
801 ADLAI STEVENSON DRIVE
SPRINGFIELD, IL  62703

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

INITIAL FINANCING STATEMENT FILE NUMBER
213130996

☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of Secured Party authorizing this Termination Statement

☐ ASSIGNMENT (full or partial)

☑ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

☐ PARTY INFORMATION CHANGE:
This Change affects ☐ Debtor  or  ☐ Secured Party of record    ☐ CHANGE name and/or address    ☐ ADD name    ☐ DELETE name

☐ COLLATERAL CHANGE:    ☐ ADD collateral    ☐ DELETE collateral    ☐ RESTATE covered collateral    ☐ ASSIGN collateral
Indicate collateral:

The increase in the maximum principal indebtedness for Tennessee recording tax purposes is:    $0.00

NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:  (name of Assignor, if this is an Assignment) If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| | ORGANIZATION'S NAME |  |  |  |
|---|---|---|---|---|
| OR | Advocate Capital, Inc. | | | |
| | INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S) INITIAL(S) | SUFFIX |
| | OPTIONAL FILER REFERENCE DATA: 2497 76596 | | | |

NOTE: All information on this form is public record.

UST APX 0107



**Tre Hargett**
Secretary of State

**Division of Business Services**
**Department of State**
**State of Tennessee**
312 Rosa L. Parks AVE, 6th FL
Nashville, TN 37243-1102

CORPORATION SERVICE COMPANY
801 ADLAI STEVENSON DRIVE
SPRINGFIELD, IL 62703

April 27, 2023 6:03 AM

Financing Statement Doc #: 429092084
Amendment Doc #: 438376029
DLN #: B1385-3171

## UCC Financing Statement Amendment Acknowledgment

This acknowledges the filing of the attached UCC3 document. Please review the data to ensure database information corresponds with information on the submitted UCC form. In the event a discrepancy is found, please note the error and return the entire package to our office. If we may be of any further service to you, please contact us at the number noted below.

Tre Hargett
Secretary of State

Enclosures: Original Documents

---

AMENDMENT INFORMATION

| | |
|---|---|
| Amendment Doc #: | 438376029 |
| Amendment Filing Date: | 4/27/2023 12:04 AM |
| Amendment Actions: | Continuation |
| Financing Statement Lapse Date: | 7/17/2028 11:59 PM |
| Optional Filer Ref Data: | 2542 53624 |

---

### Document Receipt

Receipt # : 8077281

Fees Paid: $15.00
Taxes Paid: $0.00

Payment-Account - #032072 API Corporation Service Company V3, SACRAMENTO, CA    $15.00

---

UST APX 0108



This is a representation of a document created electronically at the Tennessee Secretary of State's web site.

438376029

# FINANCING STATEMENT AMENDMENT

Amendment Doc #: 438376029

FILED: 4/27/2023 12:04 AM

Tre Hargett, Secretary of State

| A. NAME & PHONE OF CONTACT AT FILER (Optional) |
| --- |
| CORPORATION SERVICE COMPANY 1-800-858-5294 |
| B. EMAIL OF CONTACT AT FILER (Optional) |
| SPRFiling@cscglobal.com |
| C. SEND ACKNOWLEDGMENT TO: (Name and Address) |

CORPORATION SERVICE COMPANY
801 ADLAI STEVENSON DRIVE
SPRINGFIELD, IL  62703

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| INITIAL FINANCING STATEMENT FILE NUMBER | ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |
| --- | --- |
| 429092084 | |

☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of Secured Party authorizing this Termination Statement

☐ ASSIGNMENT (full or partial)

☑ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

☐ PARTY INFORMATION CHANGE:
This Change affects ☐ Debtor  or  ☐ Secured Party of record      ☐ CHANGE name and/or address      ☐ ADD name      ☐ DELETE name

☐ COLLATERAL CHANGE:      ☐ ADD collateral      ☐ DELETE collateral      ☐ RESTATE covered collateral      ☐ ASSIGN collateral
Indicate collateral:

The increase in the maximum principal indebtedness for Tennessee recording tax purposes is:      $0.00

NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:  (name of Assignor, if this is an Assignment) If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| | ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- | --- |
| | Advocate Capital, Inc. | | | |
| OR | INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S) INITIAL(S) | SUFFIX |
| | OPTIONAL FILER REFERENCE DATA: 2542 53624 | | | |

NOTE: All information on this form is public record.

UCC FINANCING STATEMENT AMENDMENT (TN Form UCC3) (Rev. 10/17)          Page 1 of 1          RDA 1154

UST APX 0109



**Tre Hargett**
Secretary of State

**Division of Business and Charitable Organizations**
**Department of State**
State of Tennessee
312 Rosa L. Parks Avenue, 6th Floor
Nashville, Tennessee 37243
Phone: (615) 741-3276
sos.tn.gov/

CSC
801 ADLAI STEVENSON DRIVE
SPRINGFIELD, IL 62703

March 24, 2025

Financing Statement Doc #:     423325331
Amendment #:    U2025017625
Tracking Number:    U2025017625

## UCC Financing Statement Amendment Acknowledgment

This acknowledges the filing of the attached UCC3 document. Please review the data to ensure database information corresponds with information on the submitted UCC form. In the event a discrepancy is found, please note the error and return the entire package to our office. If we may be of any further service to you, please contact us at the number noted above.

Tre Hargett
Secretary of State

Enclosures: Original Documents

## AMENDMENT INFORMATION

| | |
|---|---|
| Amendment Doc #: | U2025017625 |
| Amendment Filing Date: | 03/24/2025 10:11 AM |
| Amendment Actions: | Continuation |
| Financing Statement Lapse Date: | 06/02/2030 11:59 PM |

### Document Receipt

Receipt # : 2025-155299

Fees Paid:     $15.00
Taxes Paid:     $0.00
    $15.00

Payment - ACH

UST APX 0110

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) | |
|---|---|
| CORPORATION SERVICE COMPANY | 1-800-858-5294 |

B. EMAIL CONTACT AT FILER (optional)
SPRFILING@CSCGLOBAL.COM

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

```
┌                                          ┐


   CSC
   801 ADLAI STEVENSON DRIVE
   SPRINGFIELD, IL 62703

└                                          ┘
```

This is a representation of a document created electronically at the Tennessee Secretary of State's web site.

**UCC Doc #: U2025017625**
**Filed: 03/24/2025 10:11 AM**
**Tre Hargett**
**Secretary of State**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

---

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER:<br>423325331 | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. From attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |
|---|---|

2. ☐ **TERMINATION** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT** (full or partial) Provide name of Assignee in item 7a or 7b and address of Assignee in item 7c and name of Assignor in item 9 For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8.

4. ☑ **CONTINUATION**: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE**

Check one of these two boxes     AND Check one of these three boxes to

This Change affects ☐ Debtor or ☐ Secured Party of record    ☐ CHANGE name and/or address. Complete item 6a or 6b and item 7a or 7b and item 7c    ☐ ADD name Complete item 7a or 7b and item 7c    ☐ DELETE name Give record name to be referred in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change provide only one name (6a or 6b)

| | 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION: Complete to Assignment or Party Information Change provide only one name (7a or 7b) (use exact full name or modify appreciate any part of the Debtors name

| | 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 7b. INDIVIDUAL'S SURNAME | | | |
| | INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| | INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

8. ☐ COLLATERAL CHANGE: Also check one of these four boxes ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral

Indicate collateral:

**The increase in maximum principal indebtedness for Tennessee recording tax purposes is    $0.00**

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT. Provide only one name (9a or 9b)(name of Assignor, if this is an Assignment) If this is an Amendment authorized by a DEBTOR, check here ☐ and provide the name of authorizing Debtor

| | 9a. ORGANIZATION NAME<br>ADVOCATE CAPITAL, INC. | | | |
|---|---|---|---|---|
| OR | 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:
1892286

NOTE: All information on this form is public record.

UCC FINANCING STATEMENT AMENDMENT (TN FORM UCC3) (REV. 12/1/2016)

UST APX 0111



**Roger G. Jones**
rjones@bradley.com
615.252.2323 direct
615.252.6323 fax

November 12, 2025

*VIA FEDERAL EXPRESS AND*
*ELECTRONIC TRANSMISSION*

Apperson Crump PLC
6000 Poplar Ave., Suite 150
Memphis, TN 38119
Attn: Thomas R. Buckner

> **Re:** *Notice of Default and Demand for Payment*

Dear Mr. Buckner:

This firm represents Advocate Capital, Inc. ("Lender"), which extended a line of credit (the "Loan") to Apperson Crump PLC ("Borrower"). The Loan is evidenced, governed and secured by various loan documents including, but not limited to, the following (the "Loan Documents"): (i) that Amended and Restated Master Loan and Security Agreement dated as of August 20, 2025, executed by Borrower in favor of Lender (the "Loan Agreement"); (ii) that Guaranty dated April 5, 2013, executed by Thomas R. Buckner ("Buckner") in favor of Lender, that Guaranty dated April 5, 2013, executed by Bruce S. Kramer ("Kramer") in favor of Lender, that Guaranty dated April 5, 2018, executed by Bruce M. Smith ("B. Smith") in favor of Lender, and that Guaranty dated April 5, 2018, executed by Jon W. Smith ("J. Smith," and together with Buckner, Kramer and B. Smith, collectively "Guarantors") in favor of Lender; and (iii) the Related Documents (as defined in the Loan Agreement). All capitalized terms used herein, but not otherwise defined herein, shall have the meanings assigned in the Loan Agreement.

In our Notice of Default and Demand for Payment dated September 25, 2025, we informed you that an Event of Default existed and was continuing under the Loan Agreement as the result of Borrower's failure to make the payment due September 15, 2025. Further, we informed you that Lender had accelerated the maturity of the Loan and all other amounts due Lender under the Loan Documents, such that all amounts of principal, interest, fees, and expenses arising thereunder were due and payable in full. Finally, we demanded that Borrower and Guarantors immediately pay to Lender all the Obligations under the Loan Documents.

Despite Lender's demand, Borrower and Guarantors have refused or failed to make payment. Lender is presently entitled to exercise any and/or all its rights and remedies under the Loan Documents and applicable law, including, but not limited to, commencing foreclosure of the Collateral (as defined in the Loan Documents) and collection actions against Borrower and Guarantors. Pursuant to the Loan Documents, Borrower and Guarantors shall be responsible for all costs of collection including the fees and expenses of Lender's counsel.

The unpaid principal balance outstanding under the Loan shall bear interest at the default rate of interest set forth in the Loan Documents.

4920-3537-9577.1

UST APX 0112

Apperson Crump, PLC
November 12, 2025
Page 2

     As you know, Lender's Collateral includes, but is not limited to, all legal fees and expense reimbursements now or hereafter received by Borrower. Lender has the present right to immediate possession of all the Collateral. Lender demands that Borrower and Guarantors hold all Collateral (as defined in the Loan Documents) and all proceeds thereof in trust for Lender's benefit. Effective immediately, no Collateral may be used or disposed of in any way for any purpose without Lender's prior written consent. Any use of the Collateral in violation of these requirements shall be deemed a conversion of Lender's Collateral, and Lender shall hold responsible all persons participating in this conversion, including, but not limited to, any recipient of such funds from Borrower.

     The Loan Documents shall remain in full force and effect in accordance with their respective terms, and this letter shall not be construed to (i) impair the validity, perfection, or priority of any lien or security interest granted therein, or (ii) waive or impair any rights, powers, or remedies of Lender thereunder. Lender shall have no obligation to agree to any forbearance, extension, consent, or waiver. Pursuant to the Loan Documents, all amendments and waivers of the terms thereof must be made in a statement in writing signed by the party to be charged and may not be made orally or by email.

     If you have any questions regarding this letter, please contact Paul Myers at 615-577-5445 or me.

Very truly yours,

BRADLEY ARANT BOULT CUMMINGS LLP

By: _Roger G. Jones_
                Roger G. Jones

cc:    Advocate Capital, Inc. (via email)
       Thomas R. Buckner (via Federal Express)
       Bruce Kramer (via Federal Express)
       Jon Smith (via Federal Express)
       Bruce M. Smith (via Federal Express)

RGJ/mf

4920-3537-9577.1

UST APX 0113

# Transaction Record



| TRACKING NO.: | SHIP DATE: | ESTIMATED SHIPPING CHARGES: |
|---|---|---|
| 885985215908 | Nov 12, 2025 | 24.32 USD |

### From address

Roger Jones
Bradley
1221 Broadway
Suite 2400
37203 TN NASHVILLE
US
Phone: 6152523578
mflanagan@bradley.com

### To address

Thomas R. Buckner
Apperson Crump PLC
6000 Poplar Avenue, Suite 150
38119 TN MEMPHIS
US
Phone: 6152523578

## Package information

| Pieces | Weight | Dimensions (LxWxH) | Carriage value | Package options |
|---|---|---|---|---|
| 1 x | 1.00 lb | | | n/a |

| Packaging type: | Service: | Pickup / drop-off type: |
|---|---|---|
| FedEx Envelope | FedEx Priority Overnight | I have already scheduled a pickup at my location |

## Billing information

| | | |
|---|---|---|
| Bill transportation cost to: | ******378 | P.O. No.: |
| Bill duties, taxes and fees to: | | Invoice No.: |
| Your reference: | 105253-401012 | Department No.: |

**Please note:** This transaction record is neither a statement nor an invoice, and does not confirm shipment tendered to FedEx or payment. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $1000, e.g., jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits; Consult the applicable FedEx Service Guide for details. The estimated shipping charge may be different than the actual charges for your shipment. Differences may occur based on actual weight, dimensions, and other factors. Consult the applicable FedEx Service Guide or the FedEx Rate Sheets for details on how shipping charges are calculated.

UST APX 0114

# Transaction Record



| TRACKING NO.: | SHIP DATE: | ESTIMATED SHIPPING CHARGES: |
|---|---|---|
| 885985278832 | Nov 12, 2025 | 24.32 USD |

## From address

Roger Jones
Bradley
1221 Broadway
Suite 2400
37203 TN NASHVILLE
US
Phone: 6152523578
mflanagan@bradley.com

## To address

Thomas R. Buckner
6589 May Hollow Cove
38119 TN MEMPHIS
US
Phone: 6152523578

## Package information

| Pieces | Weight | Dimensions (LxWxH) | Carriage value | Package options |
|---|---|---|---|---|
| 1 x | 1.00 lb | | | n/a |

| Packaging type: | Service: | Pickup / drop-off type: |
|---|---|---|
| FedEx Envelope | FedEx Priority Overnight | I have already scheduled a pickup at my location |

## Billing information

| | | | |
|---|---|---|---|
| Bill transportation cost to: | ******378 | P.O. No.: | |
| Bill duties, taxes and fees to: | | Invoice No.: | |
| Your reference: | 105253-401012 | Department No.: | |

**Please note:** This transaction record is neither a statement nor an invoice, and does not confirm shipment tendered to FedEx or payment. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $1000, e.g., jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits; Consult the applicable FedEx Service Guide for details. The estimated shipping charge may be different than the actual charges for your shipment. Differences may occur based on actual weight, dimensions, and other factors. Consult the applicable FedEx Service Guide or the FedEx Rate Sheets for details on how shipping charges are calculated.

UST APX 0115

# Transaction Record



| TRACKING NO.: | SHIP DATE: | ESTIMATED SHIPPING CHARGES: |
|---|---|---|
| 885985318748 | Nov 12, 2025 | 24.32 USD |

## From address

Roger Jones
Bradley
1221 Broadway
Suite 2400
37203 TN NASHVILLE
US
Phone: 6152523578
mflanagan@bradley.com

## To address

Bruce Kramer
8704 Southwind Drive
38125 TN MEMPHIS
US
Phone: 6152523578

## Package Information

| Pieces | Weight | Dimensions (LxWxH) | Carriage value | Package options |
|---|---|---|---|---|
| 1 x | 1.00 lb | | | n/a |

| Packaging type: | Service: | Pickup / drop-off type: |
|---|---|---|
| FedEx Envelope | FedEx Priority Overnight | I have already scheduled a pickup at my location |

## Billing Information

| | | | |
|---|---|---|---|
| Bill transportation cost to: | ******378 | P.O. No.: | |
| Bill duties, taxes and fees to: | | Invoice No.: | |
| Your reference: | 105253-401012 | Department No.: | |

**Please note:** This transaction record is neither a statement nor an invoice, and does not confirm shipment tendered to FedEx or payment. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $1000, e.g., jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits; Consult the applicable FedEx Service Guide for details. The estimated shipping charge may be different than the actual charges for your shipment. Differences may occur based on actual weight, dimensions, and other factors. Consult the applicable FedEx Service Guide or the FedEx Rate Sheets for details on how shipping charges are calculated.

UST APX 0116

# Transaction Record



| TRACKING NO.: | SHIP DATE: | ESTIMATED SHIPPING CHARGES: |
|---|---|---|
| 885985357171 | Nov 12, 2025 | 24.32 USD |

**From address**

Roger Jones
Bradley
1221 Broadway
Suite 2400
37203 TN NASHVILLE
US
Phone: 6152523578
mflanagan@bradley.com

**To address**

Jon Smith
54 Robert Dell Cove
38117 TN MEMPHIS
US
Phone: 6152523578

## Package information

| Pieces | Weight | Dimensions (LxWxH) | Carriage value | Package options |
|---|---|---|---|---|
| 1 x | 1.00 lb | | | n/a |

| Packaging type: | Service: | Pickup / drop-off type: |
|---|---|---|
| FedEx Envelope | FedEx Priority Overnight | I have already scheduled a pickup at my location |

## Billing information

| | | | |
|---|---|---|---|
| Bill transportation cost to: | ******378 | P.O. No.: | |
| Bill duties, taxes and fees to: | | Invoice No.: | |
| Your reference: | 105253-401012 | Department No.: | |

**Please note:** This transaction record is neither a statement nor an invoice, and does not confirm shipment tendered to FedEx or payment. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $1000, e.g., jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits; Consult the applicable FedEx Service Guide for details. The estimated shipping charge may be different than the actual charges for your shipment. Differences may occur based on actual weight, dimensions, and other factors. Consult the applicable FedEx Service Guide or the FedEx Rate Sheets for details on how shipping charges are calculated.

UST APX 0117

# Transaction Record



| TRACKING NO.: | SHIP DATE: | ESTIMATED SHIPPING CHARGES: |
|---|---|---|
| 885985399097 | Nov 12, 2025 | 24.32 USD |

### From address

Roger Jones
Bradley
1221 Broadway
Suite 2400
37203 TN NASHVILLE
US
Phone: 6152523578
mflanagan@bradley.com

### To address

Bruce M. Smith
396 Wellington Cove
38117 TN MEMPHIS
US
Phone: 6152523578

## Package Information

| Pieces | Weight | Dimensions (LxWxH) | Carriage value | Package options |
|---|---|---|---|---|
| 1 x | 1.00 lb | | | n/a |

| Packaging type: | Service: | Pickup / drop-off type: |
|---|---|---|
| FedEx Envelope | FedEx Priority Overnight | I have already scheduled a pickup at my location |

## Billing information

| | | | |
|---|---|---|---|
| Bill transportation cost to: | ******378 | P.O. No.: | |
| Bill duties, taxes and fees to: | | Invoice No.: | |
| Your reference: | 105253-401012 | Department No.: | |

**Please note:** This transaction record is neither a statement nor an invoice, and does not confirm shipment tendered to FedEx or payment. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $1000, e.g., jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits; Consult the applicable FedEx Service Guide for details. The estimated shipping charge may be different than the actual charges for your shipment. Differences may occur based on actual weight, dimensions, and other factors. Consult the applicable FedEx Service Guide or the FedEx Rate Sheets for details on how shipping charges are calculated.

UST APX 0118

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| APPERSON CRUMP, PLC, | ) | Case No. 25-11660 |
| | ) | |
| Debtor. | ) | Hon. Jimmy L. Croom |

---

**ORDER GRANTING MOTION FOR RELIEF FROM STAY AND ABANDONMENT**

---

This matter is before the Court on the Motion (the "<u>Motion</u>") of Advocate Capital, Inc. ("<u>Advocate</u>" or "<u>Movant</u>"), for relief from the automatic stay and abandonment pursuant to 11 U.S.C. § 362(d) and § 554. The Court having reviewed the Motion, and it appearing to the Court that proper and sufficient notice of the Motion has been provided, that there is no opposition to the Motion or that any opposition has been withdrawn or overruled, and that cause exists to grant the relief requested in the Motion, it is hereby ORDERED:

1.      The Motion is GRANTED.

2.      Advocate is hereby granted relief from the automatic stay with respect to the Collateral pursuant to 11 U.S.C. § 362(d).

3.      The Collateral is hereby abandoned pursuant to 11 U.S.C. § 554.

- 1 -

4921-7186-4456.1

UST APX 0119

4.      The relief granted by this Order shall be effective immediately notwithstanding the

provisions of Rule 4001(a)(4), Federal Rules of Bankruptcy Procedure.

IT IS SO ORDERED.

Respectfully submitted for entry,

/s/ *Austin L. McMullen*
Roger G. Jones (BPR #011550)
Austin L. McMullen (BPR #020877)
BRADLEY ARANT BOULT CUMMINGS LLP
1221 Broadway, Suite 2400
Nashville, Tennessee 37203
Phone: (615) 252-2307
amcmullen@bradley.com

*Attorneys for Advocate Capital, Inc.*

4921-7186-4456.1

UST APX 0120

Label Matrix for local noticing
0651-1
Case 25-11660
Western District of Tennessee
Jackson
Thu Jan 15 08:20:44 CST 2026

Apperson Crump PLC
6000 Poplar Ave
Suite 150
Memphis, TN 38119-3971

BankTennessee
1125 W. Poplar
Collierville, TN 38017-3102

First Citizens Bank & Trust Company
c/o Weltman, Weinberg & Reis Co., LPA
5990 West Creek Rd, Suite 200
Independence, OH 44131-2191

Guaranty Bank and Trust Company
4894 Poplar Avenue
Memphis, TN 38117-5145

Poplar Corridor Investments, LLC
1715 Aaron Brenner Dr., Suite 800
Memphis, TN 38120-1445

111 S Highland, Room 107
Jackson, TN 38301-6101

AUSA/IRS
Attn: Monica M. Simmons-Jones
167 N. Main, Suite 800
Memphis, TN 38103-1827

20 Adan Technologies
9057 Valley Crest Lane
#102
Germantown, TN 38138-7863

20 Apperson Crump Profit Sharing Plan
Bruce M. Smith, Trustee
Thomas R. Buckner, Trustee
6000 Poplar Ave Suite 150
Memphis, TN 38119-3971

20 BankTennessee
Downtown Memphis
30 North Second Street
Memphis, TN 38103-2602

20 Boyle Insurance Agency
P.O. Box 17800
Memphis, TN 38187-0800

20 CCH Prosystem FX
P.O. Box 4307
Carol Stream, IL 60197-4307

20 CNA
Deductible Recovery Group
P.O. Box 6065-02
Hermitage, PA 16148-1065

20 Connie Cook
5430 Hayes Rd.
Arlington, TN 38002-3856

20 Continental Insurance Company
CNA Cashier Team
P.O. Box 8317
Chicago, IL 60680-8317

20 FedEx ERS
P.O. Box 371741
Pittsburgh, PA 15250-7741

20 Fidelity National Title
6060 Poplar Avenue
Suite LL-37
Memphis, TN 38119-0912

20 Glassman, Wyatt, Tuttle & Cox PC
26 N. 2nd St
Memphis, TN 38103-2602

20 IPFS Corporation
24722 Network Place
Chicago, IL 60673-1247

20 Level 3 Communications
Century Link
P.O. Box 910182
Denver, CO 80291-0182

20 Matthew Bradsher
9393 Laurel Hill Dr.
Lakeland, TN 38002-4911

20 Melissa Jaynes
2286 Glencliff Dr
Memphis, TN 38119-7224

20 Poplar Corridor Investments, LLC
5900 Poplar Ave.
Suite 100
Memphis, TN 38119-3900

20 The Security Title Guarantee Corporation
Attn: John Kosogof
1099 Winterson Rd.
Suite 290
Linthicum Heights, MD 21090-2223

20 Thomas R. Buckner
1719 Harbert Avenue
Memphis, TN 38104-5113

20 Thomson Reuters
West Payment Center
P.O. Box 6292
Carol Stream, IL 60197-6292

20 Veritext
P.O. Box 71303
Chicago, IL 60694-1303

Adams and Reese LLP
Dept 5208
P.O. Box 2153
Birmingham, AL 35287-0002

Adan Tech, LLC
Brandon F. McNary
Dinkelspiel Rasmussen & Mink, PLLC
1669 Kirby Parkway, Suite 106
Memphis, Tennessee 38120-4397

UST APX 0121

Adan Tech, LLC
Dinkelspiel Rasmussen & Mink PLLC
1669 Kirby Pkwy, Suite 106
Memphis, TN 38120-4397

Advocate Capital, Inc.
P.O. Box 306370
Nashville, TN 37230-6370

Advocate Capital, Inc.
ACF 2006 Corp
29629 Network Place
Chicago, IL 60673-1296

Alpha Reporting Corporation
236 Adams Avenue
Memphis, TN 38103-1922

Attila Kerner M.C.
9449 Dennis Grove Court
Saint Louis, MO 63126-3063

Bank of America
P.O. Box 660441
Dallas, TX 75266-0441

BankTennessee
1125 W. Poplar Avenue
Collierville, TN 38017-3102

Bertis Echols, Esq.
Evans Petree, PC
1715 Aaron Brenner Drive, Suite 800
Memphis, TN 38120-1445

Blue Sky Couriers
830 S. Bellevue Blvd
Memphis, TN 38104-4645

Brian Drolet MD
1611 18th Avenue
Nashville, TN 37212-3115

Brooks Court Reporting Inc.
402 BNA Dr.
Suite 108
Nashville, TN 37217-2524

Bruce M. Smith
396 Wellington Cove
Memphis, TN 38117-4000

Bruce M. Smith
396 Wellington Cv
Memphis, TN 38117-4000

Bruce N. Smith
c/o Marianna Williams
Arnold, Willis & Conway
PO Box H
Dyersburg, Tennessee 38025-2008

Bruce S. Kramer
4614 Katy Dr.
New Smyrna Beach, FL 32169-4306

Business Card
Bank of America
P.O. Box 15796
Wilmington, DE 19850-5796

CIOX Health
P.O. Box 409740
Atlanta, GA 30384-9740

CNA
P.O. Box 8317
Chicago, IL 60680-8317

CNA Insurance
P.O. Box 74007619
Chicago, IL 60674-7619

Cheri Sullivan, CSR, RPR
111 Red Acres Place
Memphis, TN 38111-6821

EMG Clinics of Tennessee
PO Box 3488 Dept. 05-220
Tupelo, MS 38803-3488

Fedex
P.O. Box 660481
Dallas, TX 75266-0481

First Citizens Bank & Trust Company
c/o Weltman, Weinberg and Reis Co., LPA
5990 West Creek Rd, Suite 200
Cleveland, OH 44131-2191

Flippin Law Firm
1302 Main Street
P.O. Box 160
Humboldt, TN 38343-0160

Guaranty Bank and Trust
C/O R. Lee Webber
MARTIN, TATE, MORROW & MARSTON, P.C.
6410 Poplar Avenue, Suite 900
Memphis, TN 38119-4841

Guaranty Bank and Trust Company
R. Lee Webber
6410 Poplar Ave Ste 900
Memphis TN 38119-4841

Harry Rein M.D., J.D.
1877 Wingfield Dr.
Longwood, FL 32779-2770

Huseby Global Litigation
P.O. Box 6180
Hermitage, PA 16148-0922

IRS
P.O. Box 7346
Philadelphia, PA 19101-7346

Internal Revenue Service
Insolvency Section
801 Broadway, MDP 146
Nashville, TN 37203-3811

UST APX 0122

Internal Revenue Service
P.O Box 219690
Kansas City, MO 64121-9690

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346

Internal Revenue Service
TN Atty General's Office
Bankruptcy Division
P.O. Box 20207
Nashville, TN 37202-4015

JP Morgan Chase Bank
300 S. Riverside Plaza
IL-I-0196
Chicago, IL 60606-6613

Jennifer Mason
8193 Newell Road
Lake Cormorant, MS 38641-9008

Jon W. Smith
54 Robert Dell Cv
Memphis, TN 38117-2716

Konica Minolta
21146 Network Place
Chicago, IL 60673-1211

Konica Minolta
P.O. Box 550599
Jacksonville, FL 32255-0599

Konica Minolta Premier Finance
P.O. Box 105743
Atlanta, GA 30348-5743

L. Clayton Culpepper III
Evans Petree, P.C.
1715 Aaron Brenner Dr.
Suite 800
Memphis, TN 38120-1445

Lexis Nexis Matthew Bender
P.O. Box 733106
Dallas, TX 75373-3106

Lexitas
P.O. Box 734298
Dept 2038
Dallas, TX 75373-4298

Lisa C. Vaughn, RPR, CSR
4570 Sequoia Road
Memphis, TN 38117-1720

Lu Anne Dudley, CSR, RPR
P.O. Box 1631
Cordova, TN 38088-1631

MEMPHIS COMMUNICATIONS CORPORATION
PO BOX 770389
Memphis, TN 38177-0389

Poplar Corridor Investments, LLC
5900 Poplar Ave.
Suite 100
Memphis, TN 38119-3900

Positively Balanced LLC
3662 Cedarcrest Road
Suite 200
Acworth, GA 30101-8940

Professional Process Servers, Inc.
5240 Mendenhall Park Place
Memphis, TN 38115-5904

Progressive Private Process
P.O. Box 343058
Memphis, TN 38184-3058

R. Lee Webber
Martin Tate Morrow & Marston, P.C.
International Place, Tower II
6410 Poplar Ave, Suite 900
Memphis, TN 38119-4841

Randel Edward Page Jr.
3504 Milfrord Cove
Collierville, TN 38017-3606

Relx Inc
D/B/A Lexis Nexis
P.O. Box 733106
Dallas, TX 75373-3106

Roger G. Jones
Bradley Arant Boult Cummings LLP
1221 Broadway
Suite 2400
Nashville, TN 37203-7238

Ronald G. Steen
Thompson Burton PLLC
6100 Tower Circle
Suite 200
Franklin, TN 37067-1465

Samantha E. Cohen, RPR
239 South Barksdale Street
Memphis, TN 38104-4019

Securities & Exchange Commission
Office of Reorganization
950 East Paces Ferry Rd., N.E.
Suite 900
Atlanta, GA 30326-1382

(p)SIMMONS BANK
POST OFFICE BOX 733
UNION CITY TN 38281-0733

Simmons Bank
Ronald G. Steen, Jr.
THOMPSON BURTON PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067-1465

State of Tennessee
Department of Labor and Workforce Dev
220 French Landing Drive
Nashville, TN 37241-0001

UST APX 0123

State of Tennessee
Office of the Attorney General
PO Box 20207
Nashville, TN 37202-4015

State of Tennessee
TN Atty General's Office
Bankruptcy Division
P.O. Box 20207
Nashville, TN 37202-4015

Thomas R. Buckner
1719 Harbert Ave.
Memphis, TN 38104-5113


Track & Trace Legal Services
P.O. Box 343058
Bartlett, TN 38184-3058

U.S. Attorney - AUSA
Attn: Monica M. Simmons-Jones
167 N. Main, Suite 800
Memphis, TN 38103-1827

(p)U S  DEPARTMENT OF JUSTICE TAX DIVISION
CIVIL TRIAL SECTION EASTERN REGION
P O BOX 227
BEN FRANKLIN STATION
WASHINGTON DC 20044-0227


U.S. Trustee
Office of the U.S. Trustee
One Memphis Place
200 Jefferson Avenue, Suite 400
Memphis, TN 38103-2383

United States Trustee for Region 8
c/o Carrie Ann Rohrscheib
United States Department of Justice
200 Jefferson Avenue, Suite 400
Memphis, TN 38103-2374

(p)VANDERBILT MORTGAGE AND FINANCE INC
P O BOX 9800
MARYVILLE TN 37802-9800


Verisma
P.O. Box 201327
Dallas, TX 75320-1327

Virgina Dodge, RDR, CRR, LCR
3046 Elliott Drive
Mount Juliet, TN 37122-0606

Wells Fargo Vendo Fin Serv
PO Box 105743
Atlanta, GA 30348-5743


Wendy Geurin Smith
Attorney at Law
EVANS PETREE, PC
1715 Aaron Brenner Drive, Suite 800
Memphis, TN 38120-1445

Wilmington Savings Fund Society, FSB
Brian K Jordan
Six Piedmont Center
3525 Piedmont Road, N.E., Suite 700
Atlanta, GA 30305-1608

C. Jerome Teel Jr.
Teel & Gay, PLC
79 Stonebridge Blvd.
Ste B
Jackson, TN 38305-2162


Randel Edward Page Jr.
3504 Milford Cove
Collierville, TN 38017-3606


The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).


Internal Revenue Service
P.O. Box 9941, Stop 6552
Ogden, UT 84409

Simmons Bank
Central Loan Administration
P.O. Box 7009
Pine Bluff, AR 71611

U.S. Dept. of Justice/Tax Division
Civil Trial Section, Eastern Region
P.O. Box 227
Ben Franklin Station
Washington, DC 20044


Vanderbilt Mortgage and Finance, Inc
500 Alcoa Trail
Maryville, TN 37804


The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

UST APX 0124

(u)Adan Tech, LLC

(u)Simmons Bank

(u)Wilmington Savings Fund Society. FSB, not

(d)First Citizens Bank & Trust Company
c/o Weltman, Weinberg & Reis Co., LPA
5990 West Creek Rd, Suite 200
Independence, OH 44131-2191

(u)Various clients

(u)Bruce M. Smith

**End of Label Matrix**
**Mailable recipients**    105
**Bypassed recipients**      6
**Total**                 111

UST APX 0125

**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**EASTERN DIVISION**

---

In re:         **APPERSON CRUMP PLC,**         **Case No. 25-11660**

        **Debtor.**         **Chapter 11**

---

**UNITED STATES TRUSTEE'S MOTION TO DISMISS**
**OR CONVERT CASE PURSUANT TO 11 U.S.C. § 1112(b)**

---

COMES NOW, Paul A. Randolph, the Acting United States Trustee for Region 8 ("U.S. Trustee"), in furtherance of his administrative responsibility, and hereby moves this court for an order dismissing or converting to Chapter 7 the above numbered and captioned Chapter 11 cases under 11 U.S.C. § 1112(b) because Apperson Crump PLC has failed to comply with the Bankruptcy Code and the guidelines of the Office of the U.S. Trustee and this Court. In support of his motion, the U.S. Trustee respectfully states and represents as follows:

1. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1334, 157(a), and the standing order of reference. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). The predicate for the relief requested herein is Bankruptcy Code section 1112(b).

2. Pursuant to 28 U.S.C. § 586, the U. S. Trustee is charged with the administrative oversight of cases commenced pursuant to Title 11 of the United States Bankruptcy Code. This duty is part of the U. S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U. S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir.

UST APX 0126

1990) (describing the U. S. Trustee as a "watchdog"). Pursuant to 11 U.S.C. § 307, the U. S. Trustee has standing to bring the instant Motion to Dismiss.

3.      On December 1, 2025, Apperson Crump PLC ("Debtor") filed a voluntary petition under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code").  The Debtor is a law firm.

4.      Section 1112 (b) provides:

> . . . the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interest of creditors and the estate.

Under section 1112(b), the Court determines whether dismissal or conversion is in "the best interest of creditors."  The U.S. Trustee urges the Court to dismiss the instant case, or in the alternative, convert the case to a case under Chapter 7.

5.      The Debtor is required to file monthly operating reports under 11 U.S.C. §§ 704(a)(8), 1107(a), and 1106(a)(1).  The Debtor has failed to file a monthly operating report for December 2025.  Failure to file monthly operating reports constitutes "cause" as contemplated by 11 U.S.C. § 1112(b)(4)(F) to dismiss or, in the alternative, convert the instant Chapter 11 case to one under Chapter 7.

6.      Without timely operating reports, the U.S. Trustee likewise has no way to tell whether post-petition obligations, including, *inter alia*, any tax obligations or required liability insurance premiums, are being met; and whether the Debtor is otherwise acting in compliance with bankruptcy law and rules.

7.      Operating Reports "are much more than busy work . . . They are the means by which creditors can monitor a debtor's post-petition operations." *In re Citi-Toledo Partners*, 170 B.R. 602 (Bankr. N.D. Ohio 1994) (quotation omitted).  "A debtor's failure to make required

UST APX 0127

financial disclosures, or otherwise to comply with orders of the court, may constitute valid cause for dismissal." *Gribbins v. Farm Credit Servs. of Mid-Am.*, 43 F. App'x 861,863 (6th Cir. 2002) (unreported) (finding "cause" under an analogous provision in a chapter 12 case). "[N]either the Court nor the creditors should have to coerce or implore the Debtor as a fiduciary into filing timely, accurate and complete monthly operating statements while at the same time the Debtor is asking for the pervasive protection afforded by the Bankruptcy Code." *Id.* at 863-64 (quotation omitted).

8.     Debtors are required to maintain appropriate insurance to protect the bankruptcy estate from the risk of loss. As a law firm, the Debtor is required to maintain malpractice insurance. The Certificate of Insurance provided to the U.S. Trustee has expired. The Debtor has informed the U.S. Trustee that it has been unable to obtain malpractice insurance. Failure to maintain appropriate insurance that poses a risk to the estate constitutes "cause" to dismiss or convert the Debtor's case pursuant to 11 U.S.C. § 1112(b)(4)(C).

9.     The Debtor has informed the U.S. Trustee that due to the inability to obtain malpractice insurance it is no longer accepting clients and has begun to windup its practice. The Debtor's accounts receivable are security for a loan from Advocate Capital, Inc. and Advocate Capital, Inc. has sought relief from the stay to collect on the accounts receivable. (ECF No. 47). Without ability to collect on accounts receivables for its own benefit or any ongoing operations generating new accounts receivables, the Debtor has no income and no likelihood of reorganization. Additionally, the Debtor continues to accrue chapter 11 administrative expenses, including U.S. Trustee fees, attorney fees, and rent so long as it occupies the rental premises, placing the Debtor in a negative cash-flow position. A "negative cash flow situation alone is sufficient to establish 'continuing loss to or diminution of the estate.'" *Loop Corp. v. U.S. Trustee*,

3

UST APX 0128

379 F.3d 511, 515-16 (8th Cir. 2004). Continuing losses and diminution and absence of a reasonable likelihood of rehabilitation constitutes "cause" to dismiss or convert the Debtor's case pursuant to 11 U.S.C. § 1112(b)(4)(A).

10. It is well established that debtors who fail to perform their functions may not utilize Chapter 11 to prolong control over their estate when there is no benefit to the public or creditors. *In re Hi-Toc Development Corp.*, 159 B.R. 691, 693 (S.D.N.Y. 1993). *See also, In re Trident Associates Ltd. Partnership*, 52 F.3d 127, 132 (6th Cir 1995) (case can be dismissed for bad faith).

11. Therefore, based upon the foregoing, the U.S. Trustee asserts that cause exists to dismiss the Debtor's Chapter 11 case, or in the alternative, convert the Debtor's Chapter 11 case to a case under Chapter 7.

WHEREFORE, THE ABOVE PREMISES CONSIDERED, the United States Trustee prays that:

1. The Court dismiss the instant Chapter 11 case.

2. In the alternative, the Court convert the instant Chapter 11 case to a case under Chapter 7.

3. The Court grant the United States Trustee such additional general relief to which the United States Trustee may be entitled.

PAUL A. RANDOLPH
ACTING UNITED STATES
TRUSTEE, REGION 8

/s/ Carrie Ann Rohrscheib, Trial Attorney (#022991)
United States Department of Justice
Office of United States Trustee
200 Jefferson Avenue, Suite 400
Memphis, TN 38103
(901) 544-3303

4

UST APX 0129

## <u>CERTIFICATE OF SERVICE</u>

I, Carrie Ann Rohrscheib, hereby certify this 20th day of January, 2026 service of a true and accurate copy of the foregoing by electronic means and/or via regular U.S. Mail, postage prepaid, to the following persons in accordance with Guideline 19B of the Amended Guidelines for Electronic Filing.

<u>/s/ Carrie Ann Rohrscheib, Trial Attorney</u>

All parties listed on the matrix

UST APX 0130

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TENNESSEE

In re

Case No.   25–11660   jlc
Chapter   11

Adversary No.

Apperson Crump PLC

Debtor(s).

### NOTICE OF HEARING COMBINED WITH RELATED INFORMATION
### RE FORM, MANNER AND SERVING OF NOTICE
### (APPLICABLE TO CHAPTER 7, 11, AND 12)

53 – Motion to Dismiss Case , or in the alternative Motion to Convert Chapter 11 Case to Chapter 7 , Filed by Carrie Ann Rohrscheib on behalf of U.S. Trustee (Rohrscheib, Carrie Ann) on January 20, 2026 .

**NOTICE IS HEREBY GIVEN THAT:**

1.   The Hearing to consider the above
shall be held on **February 19, 2026 at  09:30 AM , 111 S Highland, Room 342, Jackson, TN 38301 , BUT ONLY IF an objection to such relief requested is filed by February 10, 2026 and served as required pursuant to L.B.R. 9013–1.**

At the time of hearing, it may be continued or adjourned from time to time by oral announcement of the continued or adjourned date and time, without further written notice.

2.   **A copy of this Notice of Hearing has been served by the Bankruptcy Noticing Center to the following entities:**
   **All Parties on Servicing List**

**Service upon any party other than those who received service by the Bankruptcy Noticing Center as noted above shall be the responsibility of the moving party within seven (7) days of receipt of this order pursuant to FED. R. BANKR. P. 2002, 9007, 9013, or 9014, and in the manner provided for service of a summons and complaint by FED. R. BANKR. P. 7004. The moving party herein (or attorney for moving party) within three (3) days after service shall file a certificate of service with the Bankruptcy Court Clerk, certifying notice of this order, motion, application, or Notice of Proposed Intent pursuant to FED. R. BANKR. P. 6004(a) and 6007(a).**

3.   If no objection is filed by any creditor or interested party, including the debtor, by the date stated above in paragraph one, the movant shall promptly file a certificate in compliance with L.B.R. 9013–1 and the proposed order on such matter with the Bankruptcy Court for entry thereof, and there will not be a hearing conducted on the date stated in paragraph one above.

**Travis D. Green**
**CLERK OF COURT**

**BY:  Melissa Beacham**

_____
   **Deputy Clerk**
**DATE:  January 23, 2026**
[combrelcco30]Order/Notice combined Rel 11–03

UST APX 0131

**Dated: February 03, 2026**
**The following is ORDERED:**

_____
**M. Ruthie Hagan**
**UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

IN RE:          **APPERSON CRUMP, PLC**          **CHAPTER 11 CASE NO. 25-11660**

**DEBTOR(S)**
_____

**FINAL ORDER AUTHORIZING THE USE OF CASH COLLATERAL**
**PURSUANT TO 11 U.S.C. §363**
_____

THIS MATTER came on before the Court on January 22, 2026, on the Debtor's Motion

for a final order to authorize the Debtor to use cash collateral and providing adequate protection

[Docket # 6].  The Court has previously entered an Agreed Interim Order Authorizing the Use of

Cash Collateral [Docket # 28] and a Second Interim Order Authorizing the Use of Cash

Collateral [Docket # 48] . The Court's prior orders remain in effect except as modified herein.

Based on the stipulation of the parties, the Court enters this final interim order authorizing the

Debtor to use cash collateral as follows:

1.      The Debtor is authorized to use cash collateral for the limited purpose of funding

its January 31, 2026, payroll in the amount of $21,968.30 plus applicable payroll

UST APX 0132

taxes.

2.      The Debtor is authorized to use cash collateral to pay up to $6,500.00 for migration of the Debtor's server that hosts the Debtor's billing records and to provide access to Advocate Capital, Inc. to the billing records and software.

3.      All funds remaining in the Debtor's bank account after January 31, 2026, will be paid over to Advocate Capital, Inc.

4.      The Debtor will provide Advocate Capital, Inc. an account receivables aging report as of January 31, 2026.


APPROVED FOR ENTRY:

/s/ C. Jerome Teel, Jr.
C. Jerome Teel, Jr. BPR 016310
Attorney for the Debtor
79 Stonebridge Blvd, Suite B
Jackson, TN 38305
731-424-3315
731-424-3501 (fax)
bankruptcy@tennesseefirm.com

/s/ Roger G. Jones
Roger G. Jones BPR 011550
Attorney for Advocate Capital, Inc.
Bradley Arant Boult Cummings, LLP
1221 Broadway, Suite 2400
Nashville TN 37203
615-252-2323
Rjones@Bradley.com

UST APX 0133

**Dated: February 10, 2026**
**The following is SO ORDERED:**

_____
**Jimmy L. Croom**
**UNITED STATES BANKRUPTCY JUDGE**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| APPERSON CRUMP, PLC, | ) | Case No. 25-11660 |
| | ) | |
| Debtor. | ) | Hon. Jimmy L. Croom |

---

### ORDER GRANTING MOTION FOR RELIEF FROM STAY AND ABANDONMENT

---

This matter is before the Court on the Motion (the "Motion") of Advocate Capital, Inc. ("Advocate" or "Movant"), for relief from the automatic stay and abandonment pursuant to 11 U.S.C. § 362(d) and § 554, with respect to the following collateral (the "Collateral") as provided in the Movant's loan documents with the Debtor:

> All accounts, instruments, chattel paper, general intangibles, payment intangibles (all as defined in Article 9 of the Code), and all similar rights that Borrower may have of every nature and kind, including specifically and without limitation, all of Borrower's rights to receive payment or otherwise, for legal and other services rendered and to be rendered, and for costs and expenses advanced and to be advanced, and all other rights and interest that Borrower may have in and with respect to each and every Client Matter.

- 1 -

4921-7186-4456.2

UST APX 0134

The Court having reviewed the Motion, and it appearing to the Court that proper and sufficient notice of the Motion has been provided, that there is no opposition to the Motion or that any opposition has been withdrawn or overruled, and that cause exists to grant the relief requested in the Motion, it is hereby ORDERED:

1.      The Motion is GRANTED.

2.      Advocate is hereby granted relief from the automatic stay with respect to the Collateral pursuant to 11 U.S.C. § 362(d).

3.      The Collateral is hereby abandoned pursuant to 11 U.S.C. § 554.

4.      The relief granted by this Order shall be effective immediately notwithstanding the provisions of Rule 4001(a)(4), Federal Rules of Bankruptcy Procedure.

IT IS SO ORDERED.

Respectfully submitted for entry,


/s/ *Austin L. McMullen*
Roger G. Jones (BPR #011550)
Austin L. McMullen (BPR #020877)
BRADLEY ARANT BOULT CUMMINGS LLP
1221 Broadway, Suite 2400
Nashville, Tennessee 37203
Phone: (615) 252-2307
amcmullen@bradley.com

*Attorneys for Advocate Capital, Inc.*

- 2 -

4921-7186-4456.2

UST APX 0135

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

In re:

**APPERSON CRUMP PLC**                    CASE NO.  25-11660-JLC

Debtor.                                    **Chapter 11**

### CERTIFICATE OF COMPLIANCE WITH L.B.R. 9013-1

I, the undersigned, hereby certify compliance with L.B.R. 9013-1 of the United States Bankruptcy Court for the Western District of Tennessee.  Further to the best of my information and belief upon search and/or inquiry with the Bankruptcy Clerk's Office, no party in interest has filed an objection to the pleading or order styled **UNITED STATES TRUSTEE'S MOTION TO DISMISS OR CONVERT CASE PURSUANT TO 11 U.S.C. § 1112(b)** (ECF No. 53) that was filed on January 20, 2026.

PAUL A. RANDOLPH,
ACTING UNITED STATES TRUSTEE, REGION 8

/s/ Carrie Ann Rohrscheib, Trial Attorney (#22991)
United States Department of Justice
Office of the United States Trustee, Region 8
200 Jefferson Avenue, Suite 400
Memphis, Tennessee 38103-2374
(901) 544-3303 / fax (901) 544-4138
carrie.a.rohrscheib@usdoj.gov

UST APX 0136

**UNITED STATES BANKRUPTCY COURT**

**WESTERN DISTRICT OF TENNESSEE**

**EASTERN DIVISION**

In re:

**APPERSON CRUMP, PLC,**

Debtor.

UNITED STATES BANKRUPTCY COURT
WESTERN DIVISION
RECEIVED

FEB 13 2026

TRAVIS D. GREEN
CLERK OF COURT
WESTERN DISTRICT OF TENN.

Case No. 25-11660

Chapter 11

Hon. Jimmy L. Croom

## CREDITOR RANDEL EDWARD PAGE, JR.'S RESPONSE
## IN SUPPORT OF UNITED STATES TRUSTEE'S
## MOTION TO DISMISS OR CONVERT CASE
## AND REQUEST FOR TRUSTEE INVESTIGATION

COMES NOW Randel Edward Page, Jr. ("Creditor"), proceeding pro se, a creditor in the above-captioned bankruptcy case, and hereby files this Response in Support of the United States Trustee's Motion to Dismiss or Convert Case Pursuant to 11 U.S.C. § 1112(b) (ECF No. 53), and respectfully states as follows:

## I. INTRODUCTION

1. Creditor filed Proof of Claim No. 4-2 on January 8, 2026, asserting a claim against Debtor in the amount of Nine Hundred Million Dollars ($900,000,000) based on fraud, civil rights violations, conspiracy, theft of property, and willful and malicious injury.

2. The 30-day objection period for Proof of Claim No. 4-2 expired on February 7, 2026, without any objection being filed by any party. Accordingly, Creditor's claim is deemed allowed under Federal Rule of Bankruptcy Procedure 3001(f).

3. On January 12, 2026, Creditor sent a letter to United States Trustee Carrie Ann Rohrscheib requesting a meeting to present evidence of Debtor's fraudulent conduct and requesting that the Trustee investigate Debtor's participation in a criminal conspiracy to defraud federal Medicare programs and cover up the theft of Creditor's intellectual property.

4. On January 20, 2026 — eight days after receiving Creditor's letter — the United States Trustee filed the instant Motion to Dismiss or Convert Case (ECF No. 53), citing four independent grounds constituting "cause" under 11 U.S.C. § 1112(b).

5. Creditor hereby supports the United States Trustee's Motion and requests that this Court convert this case to Chapter 7 rather than dismiss it, as conversion to Chapter 7 will

UST APX 0137

enable a trustee to investigate Debtor's fraudulent conduct, pursue estate causes of action, and maximize recovery for creditors.

# II. STATEMENT OF FACTS

## A. Creditor's Deemed-Allowed $900 Million Claim

6. Creditor's $900 million claim arises from Debtor's submission of a fraudulent billing statement to Creditor dated June 7, 2021, for legal services that were either not performed, performed in furtherance of a criminal conspiracy, or manufactured entirely to create false debt against Creditor.

7. The fraudulent billing statement is attached as Exhibit A to Creditor's Affidavit in Support of Proof of Claim No. 4-2, executed January 22, 2026, and served on the United States Trustee.

8. Debtor's fraudulent billing was part of a broader RICO enterprise involving Evans Petree PC, Butler Snow LLP, and Debtor, all of whom conspired to steal Creditor's $900 million in intellectual property (Monorail healthcare analytics technology) and use it to defraud federal MIPS and BPCI Advanced Medicare programs.

9. The purpose of the fraudulent billing statement was to convert Creditor from a creditor to a debtor, enabling the conspirators to make claims against federal programs using Creditor's stolen intellectual property.

10. Creditor thwarted this scheme by representing his entity pro se in this bankruptcy proceeding and establishing himself as a creditor rather than a debtor.

## B. Advocate Capital's Abandonment of All Collateral

11. On February 10, 2026, this Court entered an Order Granting Motion for Relief from Stay and Abandonment (ECF Doc 65), whereby Advocate Capital, Inc. abandoned ALL collateral under 11 U.S.C. § 554.

12. The abandoned collateral included "all accounts, instruments, chattel paper, general intangibles, payment intangibles ... all of Borrower's rights to receive payment or otherwise, for legal and other services rendered and to be rendered ... and all other rights and interest that Borrower may have in and with respect to each and every Client Matter."

13. In plain language, Advocate Capital abandoned the entire value of Debtor's law practice, including all client matter receivables, removing itself as a secured creditor and returning all such assets to the bankruptcy estate.

14. The timing of this abandonment — immediately after Creditor's $900 million claim became deemed allowed — strongly suggests Advocate Capital recognized the collateral was tainted by fraud or that the estate had become too compromised to justify continued involvement.

## C. Debtor's Inability to Obtain Malpractice Insurance

UST APX 0138

15. Paragraph 8 of the United States Trustee's Motion states that Debtor "has informed the U.S. Trustee that it has been unable to obtain malpractice insurance."

16. A law firm's inability to obtain malpractice insurance is an extraordinary circumstance that strongly suggests insurance carriers have investigated and discovered fraudulent or uninsurable conduct.

17. Creditor submits that Debtor's inability to obtain insurance is directly related to the fraudulent conduct documented in Creditor's Proof of Claim and the evidence submitted to the United States Trustee on January 12, 2026.

# III. ARGUMENT

## A. Conversion to Chapter 7 Is in the Best Interests of Creditors and the Estate

18. Under 11 U.S.C. § 1112(b), when cause exists for dismissal or conversion, the Court must determine "whichever is in the best interests of creditors and the estate."

19. Conversion to Chapter 7 is superior to dismissal for the following reasons:

- A Chapter 7 trustee has a statutory duty to investigate the financial affairs of the debtor under 11 U.S.C. § 704(a)(4);
- A Chapter 7 trustee can pursue fraudulent transfers, estate causes of action, and claims against third parties who participated in misconduct;
- The fraudulent billing statement and the broader conspiracy documented by Creditor present substantial estate causes of action that could benefit all creditors;
- With Advocate Capital having abandoned all collateral, the estate now contains unencumbered receivables that a Chapter 7 trustee can collect and distribute;
- Dismissal would leave creditors without recourse and would allow Debtor's fraudulent conduct to go uninvestigated.

## B. The United States Trustee's Four Grounds for Cause Are Well-Founded

20. Creditor agrees with and supports each of the four grounds for cause identified by the United States Trustee in ECF No. 53:

21. Failure to File Monthly Operating Reports (¶5 of Motion): Without operating reports, creditors cannot monitor Debtor's post-petition operations or determine whether post-petition obligations are being met. This failure constitutes cause under § 1112(b)(4)(F).

22. Inability to Obtain Malpractice Insurance (¶8 of Motion): As a law firm, Debtor's inability to obtain malpractice insurance poses unacceptable risk to the estate and constitutes cause under § 1112(b)(4)(C). Creditor submits that this inability likely stems from insurance carriers discovering the fraudulent conduct documented in Creditor's filings.

23. No Ongoing Operations / Negative Cash Flow (¶9 of Motion): Debtor has stopped accepting clients, is winding down operations, cannot collect on receivables (which were secured by Advocate Capital and have now been abandoned), has no income, and

UST APX 0139

continues to accrue administrative expenses. This negative cash flow and absence of operations constitutes cause under § 1112(b)(4)(A).

24. No Likelihood of Reorganization (¶¶9-10 of Motion): Without income, insurance, or ongoing operations, there is no reasonable likelihood of rehabilitation. Debtor is using Chapter 11 to prolong control with no benefit to creditors, which constitutes cause for conversion.

## C. A Chapter 7 Trustee Should Investigate Debtor's Fraudulent Conduct

25. Creditor respectfully requests that upon conversion to Chapter 7, this Court direct the Chapter 7 trustee to investigate the following matters:

- **The fraudulent billing statement dated June 7, 2021, attached as Exhibit A to Creditor's Affidavit in Support of Proof of Claim No. 4-2;**
- **Debtor's participation in a conspiracy with Evans Petree PC and Butler Snow LLP to steal Creditor's $900 million in intellectual property;**
- **Debtor's use of stolen intellectual property to generate fraudulent claims against federal MIPS and BPCI Advanced Medicare programs;**
- Potential fraudulent transfers or preferential payments made by Debtor;
- **Estate causes of action against co-conspirators including Evans Petree PC, Butler Snow LLP, and others;**
- The reasons Debtor has been unable to obtain malpractice insurance, including communications with insurance carriers regarding coverage denials.

## D. Creditor Has Provided Extensive Evidence to the United States Trustee

26. On January 12, 2026, Creditor sent a detailed letter to United States Trustee Carrie Ann Rohrscheib requesting a meeting and providing extensive documentation of Debtor's fraudulent conduct.

27. Creditor's Affidavit in Support of Proof of Claim No. 4-2, executed January 22, 2026, contains 74 numbered paragraphs and 17 sections of evidence, including:

- Exhibit A: Fraudulent billing statement from Debtor dated June 7, 2021;
- Evidence of conspiracy involving multiple law firms;
- Evidence of Medicare fraud involving federal programs;
- Correspondence with the FBI and Department of Justice;
- Federal Tort Claims Act claim documentation.

28. Creditor has also provided the FBI a comprehensive evidence directory documenting the criminal enterprise of which Debtor is a member.

29. All of this evidence is available to the Chapter 7 trustee and demonstrates substantial estate causes of action that could benefit all creditors.

UST APX 0140

## IV. PRAYER FOR RELIEF

WHEREFORE, Creditor Randel Edward Page, Jr. respectfully requests that this Court:

- GRANT the United States Trustee's Motion to Dismiss or Convert Case (ECF No. 53);
- CONVERT this case to Chapter 7 pursuant to 11 U.S.C. § 1112(b), as conversion is in the best interests of creditors and the estate;
- DIRECT the Chapter 7 trustee to investigate Debtor's fraudulent billing statement, participation in criminal conspiracy, and potential estate causes of action against co-conspirators;
- DIRECT the Chapter 7 trustee to review the evidence provided by Creditor to the United States Trustee and in Creditor's Affidavit in Support of Proof of Claim No. 4-2;
- Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

_____

**Randel Edward Page, Jr., Pro Se**

Creditor

3504 Milford Cove

Collierville, Tennessee 38017

Telephone: (901) 351-6060

Email: randelpage@gmail.com

Dated: February 13th, 2026

UST APX 0141

**Dated: February 17, 2026**
**The following is SO ORDERED:**

_____
**Jimmy L. Croom**
**UNITED STATES BANKRUPTCY JUDGE**

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| **IN RE:**    **APPERSON CRUMP PLC** | **CASE NO. 25-11660-JLC** |
| **Debtor.** | **Chapter 11** |

**ORDER GRANTING UNITED STATES TRUSTEE'S MOTION TO DISMISS**
**OR CONVERT CASE PURSUANT TO 11 U.S.C. § 1112(b)**
**AND DISMISSING DEBTOR'S CHAPTER 11 CASE**

This matter came before the Court on the Motion to Dismiss or Convert Case Pursuant to 11 U.S.C. §1112(b) ("Motion") (ECF No. 53) filed by the United States Trustee for Region 8 ("U.S. Trustee") and upon the entire record herein.

It appears to the Court that based upon the grounds for dismissal or conversion as stated in the Motion and the record in this case, cause exists to dismiss or convert the Debtor's chapter 11 case. It further appears to the Court that there are insufficient assets available for distribution to creditors in a chapter 7, accordingly dismissal is appropriate and in the best interest of creditors and the estate.

UST APX 0142

ACCORDINGLY, for good cause found, IT IS ORDERED, that the U.S. Trustee's Motion

to Dismiss is GRANTED and the instant Chapter 11 case shall be and is hereby **DISMISSED**,

without prejudice.

IT IS FURTHER ORDERED, that within thirty (30) days of entry of this order any

professionals may file final applications for compensation under 11 U.S.C. §330 and the Court

shall retain jurisdiction to hear same.

**APPROVED FOR ENTRY:**

PAUL A. RANDOLPH
ACTING U.S. TRUSTEE REGION 8

/s/ Carrie Ann Rohrscheib (#022991)
Carrie Ann Rohrscheib
Trial Attorney
United States Department of Justice
Office of the U.S. Trustee
200 Jefferson Avenue, Suite 400
Memphis, Tennessee 38103
(901) 544-3303

**AGREED AS TO FORM:**

/s/ C. Jerome Teel, Jr.
C. Jerome Teel, Jr. (TN #01630)
Teel & Gay, PLC
79 Stonebridge Blvd., Suite B
Jackson, TN 38305
Phone: (731) 424-3315
Jerome@tennesseefirm.com

**PERSONS TO BE SERVED WITH FINAL ORDER:**
Debtor
Debtor's Counsel
All Parties on the Matrix

2

UST APX 0143

Form ntcdsm

## UNITED STATES BANKRUPTCY COURT

Western District of Tennessee

Case No.:  25−11660
Chapter:  11

In Re: Debtor(s) (name(s) used by the debtor(s) in the last 8 years, including married, maiden, trade, and address):
  Apperson Crump PLC
  6000 Poplar Ave
  Suite 150
  Memphis, TN 38119

Social Security / Individual Taxpayer ID No.:

Employer Tax ID / Other nos.:
  62−0292839

## NOTICE OF DISMISSAL

You are hereby notified that an Order Dismissing the above case was entered on 2/17/26.

Dated: 2/17/26

Travis D. Green
Clerk, U.S. Bankruptcy Court

BY: Melissa Beacham
Deputy Clerk

UST APX 0144

UNITED STATES BANKRUPTCY COURT
WESTERN DIVISION
RECEIVED

FEB 2 5 2026

TRAVIS D. GREEN
CLERK OF COURT
WESTERN DISTRICT OF TENN.

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

In re:

APPERSON CRUMP, PLC,                      Case No. 25-11660-JLC

                Debtor.         Chapter 11

                                        Hon. Jimmy L. Croom

NOTICE OF APPEAL

TO THE CLERK OF THE BANKRUPTCY COURT AND TO ALL PARTIES IN INTEREST:

NOTICE IS HEREBY GIVEN that Randel Edward Page, Jr. ("Appellant"), a creditor in the above-captioned bankruptcy case, hereby appeals to the United States Court of Appeals for the Sixth Circuit from the Order Dismissing Case entered by this Court on February 17, 2026 (Doc. 69), subject to resolution of Appellant's pending Motion to Vacate.

## 1. APPELLANT INFORMATION

| | |
|---|---|
| Name: | Randel Edward Page, Jr. |
| Status: | Creditor (Proof of Claim No. 4-2) |
| Claim Amount: | $900,000,000 (deemed allowed February 7, 2026) |
| Address: | 3504 Milford Cove |
| | Collierville, Tennessee 38017 |
| Telephone: | (901) 351-6060 |
| Email: | randelpage@gmail.com |
| Pro Se: | Yes |

## 2. ORDER BEING APPEALED

Appellant appeals from the entirety of the following order:

Order:               Order Granting United States Trustee's Motion to Dismiss
                      or Convert Case Pursuant to 11 U.S.C. § 1112(b)
                      and Dismissing Debtor's Chapter 11 Case

Date Entered:     February 17, 2026

Docket Number:  Doc. 69

## 3. NOTICE REGARDING PENDING MOTIONS

Appellant advises the Court and all parties that shortly after filing this Notice of Appeal, Appellant is filing:

A. A Motion to Vacate Dismissal Order Under Fed. R. Civ. P. 60(b)(3), 60(b)(6), and 60(d)(3) in this Court, alleging fraud on the court; and

## 4. ISSUES PRESENTED ON APPEAL
Subject to resolution of the pending Rule 60(b) motion, Appellant presents the following issues for appellate review:

A. Whether the bankruptcy court committed clear error in finding "insufficient assets available for distribution to creditors in a chapter 7" when:

    (1) Advocate Capital, Inc. abandoned ALL collateral to the bankruptcy estate on February 10, 2026, just seven (7) days before dismissal (Doc. 65), including all client matters, accounts receivable, payment intangibles, and rights to

UST-APX 0145

(2) Appellant's Proof of Claim No. 4-2 in the amount of $900,000,000 was deemed allowed on February 7, 2026, creating substantial estate causes of action against co-conspirators worth tens or hundreds of millions of dollars;

(3) Appellant documented estate causes of action against Evans Petree PC, Butler Snow LLP, and other co-conspirators in comprehensive letter to U.S. Trustee dated January 12, 2026, and in Appellant's Response in Support of United States Trustee's Motion to Dismiss or Convert filed February 13, 2026 (ECF No. 68), in which Appellant explicitly requested conversion to Chapter 7 and trustee investigation; and

(4) The estate possessed valuable avoidance actions, fraudulent transfer claims, and other causes of action that a Chapter 7 trustee could pursue for the benefit of creditors.

B. Whether the bankruptcy court abused its discretion in dismissing the case rather than converting to Chapter 7 as requested by Appellant, when:

(1) Appellant filed Response in Support of United States Trustee's Motion to Dismiss or Convert on February 13, 2026 (ECF No. 68), explicitly advocating for conversion to Chapter 7 rather than dismissal;

(2) Appellant's Response documented substantial estate assets, causes of action, and reasons why conversion would serve the best interests of creditors;

(3) Appellant specifically requested that the Court direct a Chapter 7 trustee to investigate Debtor's fraudulent conduct, pursue estate causes of action against Evans Petree PC, Butler Snow LLP and others, and collect the substantial abandoned receivables;

(4) The Court dismissed the case without addressing Appellant's arguments for conversion or explaining why dismissal was chosen over conversion; and

(5) Dismissal ignored a creditor's specific, reasoned request for conversion supported by documentary evidence.
C. Whether the bankruptcy court abused its discretion in dismissing the case without:

(1) Conducting a hearing at which Appellant could present evidence of estate assets and argue for conversion to Chapter 7;

(2) Considering Appellant's comprehensive evidence submitted in Response in Support of Conversion (ECF No. 68), which documented:

- Advocate Capital's abandonment of ALL collateral including all client matters and receivables
- Appellant's $900,000,000 deemed-allowed claim
- Estate causes of action against Evans Petree PC, Butler Snow LLP and others
- Fraudulent conduct requiring trustee investigation
- Reasons why conversion serves creditors' best interests;

(3) Addressing Appellant's specific arguments against dismissal;

(4) Investigating the suspicious timing of dismissal, which occurred within four (4) days of Appellant filing Response advocating for conversion and confirmation of Appellant's communication with the Federal Bureau of Investigation regarding the fraud on the court and racketeering.

D. Whether the bankruptcy court's dismissal violated Appellant's constitutional due process rights as a creditor with a substantial, deemed-allowed claim who specifically requested conversion and trustee investigation, by:

(1) Failing to hold a hearing on the critical question of conversion versus dismissal;
(2) Dismissing without considering Appellant's documented evidence and arguments;
(3) Extinguishing Appellant's bankruptcy remedies without meaningful opportunity to be heard; and
(4) Denying Appellant's request for trustee investigation without explanation.

UST APX 0146

(1) Section 1112(b) requires the court to "convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate";

(2) Appellant, a major creditor, specifically requested conversion and documented why conversion would serve creditors' best interests;

(3) Conversion to Chapter 7 would have enabled a trustee to:
- Investigate Debtor's fraudulent conduct under § 704(a)(4)
- Collect the substantial abandoned receivables and client matters
- Pursue estate causes of action against co-conspirators
- Coordinate with FBI criminal investigation
- Maximize recovery for all creditors;

(4) The estate possessed substantial assets that a Chapter 7 trustee could administer for creditor benefit;

(5) Dismissal served no legitimate creditor interest and benefited only the debtor in fleeing accountability;

(6) The Court failed to explain why dismissal was "in the best interests of creditors" when a creditor holding a $900,000,000 claim explicitly argued the opposite; and

(7) A federal criminal investigation would benefit from continued bankruptcy proceedings enabling discovery and asset tracing.

F. Whether the dismissal constitutes fraud on the court under Federal Rule of Civil Procedure 60(d)(3) based on:

(1) Pretextual finding of "insufficient assets" contradicted by record evidence including Advocate Capital abandonment of substantially all assets and Appellant's documented estate causes of action;

(2) Suspicious timing suggesting coordination between debtor and U.S. Trustee to obtain dismissal rather than conversion:

- U.S. Trustee filed motion to dismiss OR convert (giving Court discretion)
- Appellant filed Response advocating conversion (Feb 13, 2026)
- Court dismissed (Feb 17, 2026) - 4 days later, without hearing
- Court ignored creditor's request for conversion;

(3) Timing suggesting coordination to obstruct an FBI criminal investigation:
- Debtor ceased operations immediately after dismissal;

(4) Failure to conduct hearing or consider Appellant's evidence despite major creditor's specific request for conversion;

(5) Dismissal obtained by ignoring creditor input and record evidence of substantial estate assets;

(6) U.S. Trustee's signature "APPROVED FOR ENTRY" on dismissal order (Doc. 69 at 2) despite U.S. Trustee having received Appellant's comprehensive evidence of fraud and substantial estate assets on January 12, 2026 (35 days before approving dismissal);

(7) Coordination evidenced by all parties (Court, U.S. Trustee, Debtor's counsel) obtaining their preferred outcome (dismissal without prejudice) despite contrary evidence and creditor objection.

G. Whether the bankruptcy court erred in dismissing the case without prejudice despite evidence that Appellant's claim arose from "conspiracy against civil rights and fraud on the court" (as reflected in the official Claims Register), when:

(1) Dismissal "with prejudice" is a severe sanction specifically reserved for cases involving egregious misconduct including proven fraud;

CST APX 0147

rights and fraud on the court" going unchallenged and not denied by the debtor proves the egregious misconduct; and a pattern of repeated racketeering acts to cover up the theft of the Appellant's property.

(3) The Court's decision to dismiss without prejudice—thereby preserving Debtor's ability to obtain a "fresh start" and potentially refile bankruptcy—is fundamentally inconsistent when fraud is proven and contrary to the principle that fraudulent debtors should not receive bankruptcy's protections;

(4) The Court's treatment (fraud proven yet imposing no sanction) suggests the dismissal was designed to facilitate Debtor's escape from accountability rather than to serve creditors or the integrity of the bankruptcy system;

(5) Debtor's immediate cessation of all operations following dismissal demonstrates that Debtor understood the dismissal as facilitating flight from liability, not as a determination that reorganization was impossible; and

(6) By dismissing without prejudice despite documented fraud, the Court enabled precisely the type of abuse of the bankruptcy system that dismissal with prejudice is designed to prevent.

## 5. RELIEF SOUGHT ON APPEAL

Appellant respectfully requests that the United States Court of Appeals for the Sixth Circuit:

A. REVERSE the bankruptcy court's Order Dismissing Case entered February 17, 2026 (Doc. 69);

B. REMAND the case to the bankruptcy court with instructions to convert the case to Chapter 7 under 11 U.S.C. § 1112(b) as specifically requested by Appellant in Appellant's Response filed February 13, 2026 (ECF No. 68);

C. ORDER the bankruptcy court to appoint a Chapter 7 trustee to:
   (i) Investigate the debtor's fraudulent affairs under 11 U.S.C. § 704(a)(4);
   (ii) Collect estate assets including the substantial abandoned receivables and client matters;
   (iii) Pursue causes of action against Evans Petree PC, Butler Snow LLP, and other co-conspirators identified by Appellant;
   (iv) Coordinate with FBI criminal investigation;
   (v) Maximize recovery for creditors;

D. PRESERVE Appellant's Proof of Claim No. 4-2 and its deemed-allowed status;

E. FIND that the dismissal violated Appellant's due process rights by failing to conduct hearing or consider Appellant's evidence and arguments;

F. Grant such other and further relief as the Court deems just and equitable.

## 6. JURISDICTION

The bankruptcy court had jurisdiction over this case pursuant to 28 U.S.C. §§ 1334 and 157.
The United States Court of Appeals for the Sixth Circuit has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(d). This appeal is timely filed within fourteen (14) days after entry of the Order Dismissing Case, as required by Federal Rule of Bankruptcy Procedure 8002(a)(1).

## 7. STATEMENT OF FINALITY

The Order Dismissing Case entered February 17, 2026, is a final order disposing of the entire bankruptcy case and is immediately appealable under 28 U.S.C. § 158(a)(1).

## 8. NOTICE REGARDING JUDGE KEVIN RITZ

Appellant respectfully advises the Court that a potential conflict of interest exists regarding Hon. Kevin Ritz, United States Circuit Judge for the Sixth Circuit.
Judge Ritz previously served as United States Attorney for the Western District of Tennessee. In that capacity, Appellant

UST APX 0148

investigate despite being contacted regarding the evidence of clear federal crimes.

Appellant has named Judge Ritz as a defendant in a Federal Tort Claims Act claim filed with the Department of Justice for his refusal to investigate, which Appellant alleges constitutes obstruction of justice and deprivation of rights under color of law.

The outcome of this bankruptcy appeal could substantially affect Judge Ritz's personal and legal interests in the FTCA proceeding. Specifically, if this Court reverses the dismissal and finds that substantial estate assets existed (contrary to the bankruptcy court's finding), such finding would support Appellant's FTCA claim that federal officials, including Judge Ritz, obstructed justice by refusing to investigate a case with substantial merit.

Under 28 U.S.C. § 455(a), "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

Under 28 U.S.C. § 455(b)(5)(iii), a judge must disqualify himself where he "has any other interest that could be substantially affected by the outcome of the proceeding."

Accordingly, if Judge Ritz is assigned to the panel hearing this appeal, Appellant respectfully requests that Judge Ritz recuse himself pursuant to 28 U.S.C. § 455.

Appellant will file a formal Motion for Recusal if Judge Ritz is assigned to this appeal.

9. PARTIES TO BE SERVED

Appellant will serve copies of this Notice of Appeal on the following parties:

United States Trustee
Carrie Ann Rohrscheib
Office of the United States Trustee, Region 8
200 Jefferson Avenue, Suite 400
Memphis, Tennessee 38103-2374
Email: carrie.a.rohrscheib@usdoj.gov

Apperson Crump PLC
c/o C. Jerome Teel, Jr.
Teel & Gay, PLC
79 Stonebridge Blvd., Suite B
Jackson, TN 38305
Email: Jerome@tennesseefirm.com

10. DESIGNATION OF CONTENTS OF RECORD AND TRANSCRIPT ORDER

Pursuant to Federal Rule of Bankruptcy Procedure 8009, Appellant will file a designation of the contents of the record and a statement regarding transcripts within fourteen (14) days of filing this Notice of Appeal.
Appellant advises that no hearing transcript is necessary because the bankruptcy court dismissed the case without holding a hearing—a fact that itself supports reversal under Issue D above.

11. CERTIFICATION

Appellant certifies that:

A. A copy of this Notice of Appeal is being filed with the Clerk of the Bankruptcy Court;

B. Service will be made on the parties as set forth above;

C. The appeal is taken in good faith and not for purposes of delay;

UST APX 0149

E. Appellant is proceeding pro se due to documented conflicts of interest affecting all Tennessee-licensed attorneys arising from corruption of the Tennessee Board of Professional Responsibility, which dismissed Appellant's ethics complaints against the law firms involved in this matter without investigation;

F. Appellant is simultaneously pursuing alternative remedies (Rule 60(b) motion and withdrawal of reference) which may render this appeal moot; and

G. Appellant will promptly notify this Court and the Court of Appeals of any developments in the pending motions that affect the status of this appeal.

H. Appellant has submitted a comprehensive criminal referral to the Federal Bureau of Investigation regarding this appeal.

WHEREFORE, Appellant respectfully requests that the Clerk of the Bankruptcy Court transmit this Notice of Appeal to the United States Court of Appeals for the Sixth Circuit in accordance with Federal Rule of Bankruptcy Procedure 8003.
Dated: March 25th, 2026
Respectfully submitted,

Randel Edward Page, Jr., Pro Se
Appellant/Creditor
Proof of Claim No. 4-2
3504 Milford Cove
Collierville, Tennessee 38017
Telephone: (901) 351-6060
Email: randelpage@gmail.com


CERTIFICATE OF SERVICE

I hereby certify that on March 25th, 2026, a true and correct copy of the foregoing Notice of Appeal was served via [first class mail / email] on the following parties:

United States Trustee
Carrie Ann Rohrscheib
Office of the United States Trustee, Region 8
200 Jefferson Avenue, Suite 400
Memphis, Tennessee 38103-2374
Email: carrie.a.rohrscheib@usdoj.gov


C. Jerome Teel, Jr.
Teel & Gay, PLC
79 Stonebridge Blvd., Suite B
Jackson, TN 38305
Email: Jerome@tennesseefirm.com

Randel Edward Page, Jr., Pro Se

UST APX 0150